AO 91 (Rev. 08/09) Criminal Complaint

FILED by _____ D.C.

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

DEC 14 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

United States of America )
v. )
MACKENLEY DESIR ) Case No. 12-6489-Snow
and )
GENET REMBERT )
)
_____ )
Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 2012__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a)(1) and 2. | Knowing, in and affecting interstate or foreign commerce, recruiting, enticing, harboring, transporting, providing, and maintaining by any means a person knowing and in reckless disregarad that means of force, threats of force, fraud and coercion, and any combination of such means will be used to cause the person to engage in a commercial sex act. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

Susan Funk, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 12/14/2012

_____
Judge's signature

City and state: Ft. Lauderdale, Florida       Lurana S. Snow, UnitedStates Magistrate Judge
Printed name and title

## **AFFIDAVIT**

I, Susan Funk, being first duly sworn, do hereby depose and state the following:

1.  I am a Special Agent of the Federal Bureau of Investigation (hereinafter "FBI") and have been so employed since 2009. Upon graduation from the FBI Academy in Quantico, Virginia, I was assigned to the Miami Division. I am currently assigned to a Public Corruption/Civil Rights Squad that handles, among other things, human trafficking investigations. In addition to receiving other trainings, I have received training in identifying victims of human trafficking and handling human trafficking cases. This affidavit is being submitted for the limited purpose of supporting a complaint and arrest warrant, and does not include every fact known to your affiant. The facts in this affidavit are based upon my personal knowledge, information provided by other law enforcement agencies, and the complainants set forth in this affidavit.

2.  This affidavit sets forth probable cause to believe that Mackenley DESIR (hereinafter "DESIR") and Genet REMBERT (hereinafter "REMBERT") knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means a person knowing or in reckless disregard of the fact, that means of force, threats of force, fraud and coercion, and any combination of such means would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1) . Additionally, this affidavit sets forth probable cause to believe that DESIR and REMBERT aided and abetted each other to knowingly recruit, entice, harbor, transported, provide, obtain or maintain by any means a person knowing or in reckless disregard of the fact, that means of force, threats of force, fraud and coercion, and any combination of such means would be used to cause the person to engage in a commercial sex act in violation of Title 18, United States Code, Section 2.

1

**Victim B.V.**

3. From in or about December 2007, B.V., a female who was seventeen years of age at the time, ran away from foster care in Vero Beach, Florida and was introduced to DESIR, also known as "Zoe", through her friends in West Palm Beach, Florida. B.V. began to have a romantic relationship with DESIR, and after a few weeks of dating, she moved into DESIR's residence. B.V. told DESIR that she was seventeen years old and had ran away from foster care.

4. Shortly after B.V. began living with DESIR, he told B.V. that she had to have sex with other men in order to help pay the rent. DESIR would either drive B.V. to meet with clients at hotels that service out-of-state travelers, including the Super 8 Motel in Palm Beach County, or he would make her walk the streets and prostitute herself. DESIR took B.V. to Hollywood, Miami, and South Beach to prostitute herself. B.V. also recalled that DESIR took nude photographs of her and then advertised her in the adult escort section of a classifieds website, Backpage.com.

5. Clients would respond to the backpage.com advertisements for B.V. by calling DESIR's Metro PCS cellular phone. B.V. was forced to have sex with approximately two to three men per day. DESIR instructed B.V. to charge the men between $60 and $100 for approximately thirty minutes with her. After B.V. would have sex with the client, DESIR would take all of the money.

6. B.V. attempted to leave DESIR but he broke her cellular telephones so that she could not contact her family. DESIR also tore up her identification documents, including her birth certificate and social security card. DESIR would frequently beat B.V. if she attempted to escape or disobey him. Additionally, DESIR held a gun to B.V.'s head on at least one occasion. DESIR would also take her clothing and keep it in his personal vehicle when he went to work so that B.V. would not have anything to wear but her undergarments. Occasionally, DESIR would leave the house and wait around the corner to see if B.V. would attempt to escape. When B.V. tried to leave, DESIR would beat her.

7.  B.V. was interviewed by FBI agents and she positively identified DESIR in a photographic line-up.

**Victim C.J.**

8.  In July 2012, the FBI received information from Hollywood Police Department (hereinafter "HPD") regarding a potential adult sex trafficking investigation in Hollywood, Florida. The potential victim, C.J., was a twenty year-old female from Vermont.

9.  C.J. traveled to Florida from Vermont in April 2012 to enter a drug recovery program in Boca Raton. She participated in the program for approximately one month and then she was removed from the program because she started to use drugs again. In or around June 2012, while she was out of the program and searching for a drug supply, C.J. encountered a black male known to her as "Daddy" or "Zoe." C.J. later positively identified this male as DESIR. Although C.J. believed that she was going to be making a drug deal with DESIR, DESIR instead took her to the Beach and Town motel in Hollywood, Florida. At the hotel, DESIR confiscated C.J.'s identification documents and her cellular phone. Shortly thereafter, DESIR began prostituting C.J. and continuously gave her drugs, which included prescription pills and crack cocaine. On one occasion, C.J. awoke to DESIR injecting her with a narcotic substance.

10. DESIR maintained control of C.J.'s identification documents, including her driver's license and social security card. DESIR told her that she could not call anyone or leave the motel room. DESIR maintained control of C.J. by keeping her under the influence of drugs at all times. At one point, DESIR pointed a gun at C.J. and threatened to kill her.

11. On one occasion, DESIR drove C.J. to an abandoned warehouse where she was assaulted by three other individuals who associated with DESIR. One of the individuals who assaulted C.J. was a young female, who was originally identified by C.J. as "Fire." Further investigation revealed that Fire's true identity is GENET REMBERT. C.J. also identified REMBERT to be DESIR's assistant in the

prostitution operation and the person responsible for posting escort advertisements of C.J. and other girls on websites such as Backpage.com. REMBERT would then receive telephone calls from clients and would set up appointments for the girls to provide sexual services for the clients. The clients would be charged differing amounts of money depending on the sexual services that were provided. The sexual acts C.J. was forced to perform occurred in DESIR's apartment and motels including the Beach and Town motel in Hollywood, Florida and the Hampton Inn in Fort Lauderdale, Florida. DESIR would collect and keep all of the money that was earned. C.J. never received any money for performing the sexual acts. C.J. reported that DESIR and REMBERT had approximately eight other girls that were under their control, although C.J. only personally met one of the other females.

12. According to C.J., DESIR had a small apartment that was attached to the Beach and Town motel. When C.J. was not in a hotel room, she stayed in DESIR's apartment. C.J. recalled that the apartment had two bedrooms in the front, and then a back room with a bed, refrigerator, and bathroom. C.J. recalled that the back room also had a dead bolt, and this is where DESIR would keep C.J., as well as other females, locked in to ensure that they did not leave.

13. DESIR initially told C.J. that she would be called "Angel," and then he later changed it to "Gypsy." Further investigation of Backpage.com revealed advertisements for "Angel" and "Gypsy" during the time period described above.

14. C.J. was able to contact an ex-boyfriend while DESIR was sleeping. Eventually C.J.'s family came searching for her in Florida. C.J.'s family found her in or around July 2012.

15. C.J. was interviewed by FBI agents and positively identified both DESIR and REMBERT in photographic lineups.

16. Wherefore, for reasons set out herein, your affiant respectfully submits that there is probable cause to believe that DESIR and REMBERT knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means a person knowing or in reckless disregard of the fact, that means of force, threats of force, fraud and coercion, and any combination of such means would be used to cause the person to engage in a commercial sex act and aided and abetted each other in violation of Title 18, United States Code, Sections 1591(a)(1) and 2.

FURTHER AFFIANT SAYETH NAUGHT.

_____
SUSAN FUNK
SPECIAL AGENT, FBI

Sworn and subscribed before
me this _14_ day of December 2012.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

5