**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  12-CR-60312 COHN(s)(s)**

**UNITED STATES OF AMERICA,**

**v.**

**MACKENLEY DESIR,**

        **Defendant.**

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

### I.     INTRODUCTION

Defendant Mackenley Desir is scheduled to be sentenced on October 4, 2013.  This memorandum sets forth the United States's position regarding the consideration of the § 3553(a) factors in formulating the defendant's sentence.  The circumstances of this case, the characteristics of this defendant, and the need for general and specific deterrence support the imposition of a term of imprisonment of life.  A life sentence is not only appropriate and justifiable in this case, it is essential to ensure that the defendant is properly punished, the public is adequately protected, and justice is effectively served.

### II.    FORMULATION OF DESIR'S SENTENCE

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines must be applied in an advisory fashion to meet constitutional demands.  Id. at 258. While this Court is no longer bound to impose a sentence based on the Guidelines, it "must consult those Guidelines and take them into account when sentencing." United States v. Crawford, 407 F.3d 1174, 1177-78 (11th Cir. 2005).  "This consultation requirement, at a minimum, obliges the district

court to calculate correctly the sentencing range prescribed by the Guidelines." Id. In United States

v. Pugh,  515 F.3d 1179, 1191 n.8 (11th Cir. 2008), the Eleventh Circuit, citing Gall v. United

States, 128 S. Ct. 586 (2007), reiterated that "a district court should begin all sentencing proceedings

by correctly calculating the applicable Guideline range." Id. at 596.

After making that determination, the district court, "using the § 3553(a) sentencing factors,

. . . can impose a more severe or more lenient sentence, as long as it is reasonable." Id.  The §

3553(a) factors relevant to this matter are:

> (1) the nature and circumstances of the offense and the history and characteristics of
> the defendant; (2) the need for the sentence imposed-(A) to reflect the seriousness
> of the offense, to promote respect for the law, and to provide just punishment for the
> offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect
> the public from further crimes of the defendant . . . (3) the kinds of sentences
> available; (4) the kinds of sentence and the sentencing range; . . . [and] (6) the need
> to avoid unwarranted sentence disparities among defendants with similar records
> who have been found guilty of similar conduct. . .

18 U.S.C. § 3553(a).

There is no requirement that the Court engage in a detailed, step-by-step analysis of every

factor.  United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005); see United States v. Talley,

431 F.3d 784, 786 (11th Cir. 2005) ("when the district court considers the factors of § 3553(a), it

need not discuss each of them . . . an acknowledgment by the district court that it has considered the

defendant's argument and the factors in § 3553(a) is sufficient").  Nevertheless, for the sake of

completeness and because both the Guidelines and the § 3553(a) framework support the imposition

of a sentence of life, the government has set forth below a complete review of all elements

applicable to formulating a proper sentence.

A.      The Proper Application of the Sentencing Guidelines

The Presentence Investigation Report (PSI) contains a thorough review of the factual

circumstances underlying this prosecution, and accurately calculates  the defendant's criminal

history category.  Despite the defendant's protestations that the facts should not be relied upon

because he continues to deny them and maintain his innocence, a jury was presented with all the

evidence in the case and found the defendant guilty of all counts beyond a reasonable doubt.

Some say a picture is worth a thousand words.  This Honorable Court saw numerous pictures

of the beatings victims B.V. and C.J. suffered at the hands of the defendant or upon his commands

to others to inflict such injuries.  If a picture is worth a thousand words, then I submit that the

defendants' recorded calls are worth a million.  The Court and the jury had the opportunity to get

a clear picture of who Mackenley Desir is through the calls admitted in evidence during the trial.

Those calls show how Desir has no regard for anyone but himself.  The only value Desir places on

human life is the dollars he can make off of a young lady's back.  The facts that were established

at trial through this evidence, the introduction of witness testimony and other evidence was correctly

relied upon by the United States Probation Office to calculate the defendant's advisory guideline

range of life imprisonment.

1.        **Calculating Desir's Sentence for Victim B.V.**

The United States Probation Office correctly applied cross-reference Section 2A3.1 of the

Sentencing Guideline.  See e.g. U.S. v. Madison, 477 F.3d 1312 (11th Cir. 2007)(holding that the

District Court did not err in applying cross-reference directing that Sentencing Guideline governing

criminals sexual abuse be applied to offense involving sexual acts using force against minor or

placing minor in fear when imposing sentence for a sex trafficking conviction.)  Therefore, we begin

our calculation with a base offense level of 34.

Additionally, the Government submits that several specific offense characteristics apply.

B.V. was only seventeen (17) years of age when Desir began to force her to prostitute.  As such, B.V. was a **minor** and the defendant unduly influenced her to engage in prohibited sexual conduct. Therefore, the offense level is **increased by 2**.

The defendant used a **computer** to advertise B.V., therefore an additional **2 level** increase applies.

The Offense involved the commission of a **sex act**, therefore an additional **2 level** enhancement applies.

The Government submits that although not calculated in the PSI, the Court should also apply a **2 level** enhancement because the defendant knew that B.V., a run-away foster child, was a **vulnerable victim** and preyed on her because of it.  See U.S. v. Monsalve, 342 Fed. Appx 451 (11th Cir. 2009) (holding that the 2 level vulnerable-victim sentencing enhancement applied to defendant convicted of transporting, harboring, and importing illegal aliens for the purpose of prostitution, where defendant took victim's identity papers among other factors); U.S. v. Royal, 442 Fed. Appx. 794 (4th Cir. 2011) (holding that the District court properly applied the vulnerable victim sentencing enhancement in a sex trafficking sentencing because the victims were teenagers, came from a dysfunctional family and were dependent on drugs and alcohol.

Additionally, the Court should apply a 4 level enhancement for abduction pursuant to U.S.S.G. Section 2A3.1(b)(5).  During the trial, victim B.V. testified that Desir held her against her will, she attempted to get away from the defendant on numerous occasions, and he would find her each time and impose more physical punishment for attempting to leave.

The United States Probation Office correctly assessed Desir's role as a leader.  Desir was the CEO of his sex trafficking organization and ordered others, including his co-defendant to enforce

his rules and conduct his business in his absence.  Thus, Desir deserves a **2 level** enhancement as a **leader or organizer**.

Lastly, this Honorable Court should impose a **2 level** enhancement for **serious bodily injury**. Section 2A3.1(b)(4)(B) of the Federal Sentencing Guidelines increases a defendant's base offense level by two levels "if the victim sustained serious bodily injury" during a crime categorized as aggravated sexual abuse pursuant to 18 U.S.C. Section 2241(a) or (b).  The Guideline Application note 1(j) to U.S.S.G. Section 1B1.1 defines serious bodily injury , in part, as: injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty.   The Court and the jury unfortunately had to see the horrific images of B.V., taken on multiple occasions, after being beaten by Desir.   Additionally, B.V. still suffers emotional and psychological trauma due to Desir's criminal conduct. See U.S. v. Scott, II, 434 Fed. Appx. 155 (3rd Cir. 2011) (upholding a District courts sentence applying two level enhancement for serious bodily injury where the record established that victims had broken bones, concussions, and deep lacerations from beatings they suffered at the hands of co-conspirator pimps.    See also U.S. v. Randold Valentino Kills In Water, 293 F.3d 432 (8th Cir. 2001).

In sum, Desir's adjusted offense level total as to victim B.V. is 50.  The Government stipulates that a 2 level enhancement for care and custody does not apply in this case because "care," "custody," or supervisory control" refers to a pre-existing role comparable to that of a parent, relative, and legal guardian.  See e.g. U.S. v. Swank, 676 F.3d 919 (9th Cir. 2012).

**1.          Calculating Desir's Sentence for Victim C.J.**

The United States Probation Office correctly applied cross-reference Section 2A3.1 of the

Sentencing Guideline.   See e.g. U.S. v. Monsalve, 342 Fed Appx. 451 (11th Cir. 2009).

Furthermore, the PSI correctly states that a 4 level enhancement applies because the offense involves

aggravated sexual abuse.

Moreover, enhancements for abduction, defendant's role, vulnerable victim, and victim

injuries also apply to victim C.J.  The evidence adduced at trial and supplemented by the C.J.'s

impact statement attached hereto as exhibit 1, establish by a preponderance of the evidence that

Desir was a leader, ordered others to beat C.J. causing her much physical, emotional and

physiological pain.  Furthermore, Desir targeted C.J. because she was a drug addict, abducted her

from her familiar surroundings, kept her locked-up against her will, and continued to supply and at

times withhold drugs to keep C.J. within his control.  In conclusion, Desir's adjusted offense level

as to victim C.J. is 44.

        B.      Review of the § 3553(a) Factors

        1.      The Nature and Circumstances of the Offense and the History and
                  Characteristics of the Defendant

In considering these elements, it is important to note at the outset that there is "no limitation

. . . on the information concerning the background, character and conduct of a person convicted of

an offense which a court . . . may receive for the purpose of imposing an appropriate sentence."  18

U.S.C. § 3661.  In this case, the evidence presented at trial paints a vivid picture of the defendant's

crimes in clear and unmistakable terms.

Human sex trafficking is a euphemism for what is in fact a form of modern day slavery.

Domestic sex trafficking, for the pimp, is a low-risk, high-profit criminal enterprise because to many

it appears to be what our society may view as the simple crime of prostitution.  Prostitution itself

should not be viewed as a simple crime.  The sub-culture of pimping is a powerful culture with very

structured norms and rules.  It involves the complete domination and control over its victims so that these victims engage in commercial sex acts where the majority of the monetary proceeds are turned over to the pimp.  The methods of control are many, including violence and cruelty, psychological abuse, manipulation, isolation, and humiliation.  All too often, the victims are vulnerable children and young women in our society.  While it appears that the main motive is economic, it is also apparent that pimps are a group of individuals who are unable to live by any civilized society's established rules and in what is truly an act of cowardice, instead sexually exploit children so that they can feel important.

Mackenley Desir stands before this Court convicted of two substantive counts of sex by force, fraud, and coercion and one count of conspiracy to sex traffic.  The defendant was a pimp who preyed on children and young women, many who had come from broken and abusive homes making them especially vulnerable to his manipulation.  He utilized a wide range of tactics to recruit  these girls.  Included in this dynamic, Desir, like other effective pimps, created a family myth, which can be very effective for children who have had no real sense of home life.  The defendant often feigned affection for his victims, promising them the family life they dreamed of but never had, providing them with illegal drugs to keep them vulnerable.

Victim B.V. testified that the defendant told her he loved her.  Desir constantly reminded B.V. that she needed to be grateful to the him and that she owed him because he fed her and gave her a place to sleep.  The two victims that testified during the trial, testified about the "rules" that Desir taught them when they first began working for him.  They were not allowed to leave the room, not talk to family or friends, not talk to other girls working for him, not allowed to keep any money and above all, show him respect.

The defendant sexually exploited C.J. at the ripe age of 20 and B.V. at the age of 17, using them, to make his living by forcing them to a dangerous world of sex with strangers. This is the nature and circumstances of the defendant's conduct.

In looking at the history and characteristics of the defendant, most of his adult life has been spent amassing a lengthy criminal history of escalating severity. His criminal history includes more than 25 arrests with convictions for fleeing and eluding, possession of narcotics, resisting and obstructing an officer, and he is only 34 years old.

In addition to the evidence adduced during the trial, the United States Probation Office correctly informed this Court of relevant conduct regarding victims S.D. and H.C. Although the conduct involving S.D. and H.C. was uncharged, said conduct was part of a common scheme of the offense of conviction and qualifies as relevant conduct. Pursuant to U.S.S.G. Section 1B1.3(a)(1), the defendant is held accountable for acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense." Here, the uncharged conduct ensued concurrently during the commission of the offenses of conviction. The charged conduct, the sex trafficking of B.V. and C.J., spanned from December 2007 through late 2008 and from December 2011 to September 2012, respectively. Around that same time, Desir recruited at least two additional victims and forced them to commit commercial sex acts: S.D. in November 2008 and H.C. in December 2011.

In addition to victims S.D. and H.C., the United States probation office included information relating to possible victims J.D. and J.T. Although Desir did act as a pimp to J.D. and J.T., the Government will not be able to prove that Desir used force, fraud, or coercion to cause J.D. or J.T.

8

to engage in commercial sex acts.  Therefore, the Government hereby stipulates that the Court

should not consider the facts relating to J.D. or J.T. when fashioning a just and reasonable sentence

for Desir.

It is apparent that the defendant believes he is a businessman.  Had the defendant used his

skills to engage in a legitimate business, perhaps he could have been successful.  He, however, used

his energy and ambition to commit despicable acts involving the exploitation of society's most

vulnerable victims, and for that, a guideline sentence is proper in this case.

2.      The Need for the Sentence Imposed (a) to Reflect the Seriousness of the Offense, to
        Promote Respect for the Law, and to Provide Just Punishment for the Offense; (b)
        to Afford Adequate Deterrence to Criminal Conduct; and (c) to Protect the Public
        From Further Crimes of the Defendant

The Eleventh Circuit has recognized that this element represents the codification of three

sentencing objectives a court must consider in determining the need for incarceration: punishment,

general deterrence and specific deterrence.  See United States v. Burgos, 276 F.3d 1284, 1289 n. 6

(11th Cir. 2001) (quoting United States v. Roman, 989 F.2d 1117, 1122 n. 9 (11th Cir. 1993)).  Each

of these factors weighs heavily in favor of imposing a sentence of life.

In formulating a sentence that considers the seriousness of the offense, promotes respect for

the law, and provides just punishment, the Court should consider the manner in which the defendant

committed the offenses of conviction.  There are few more serious crimes than those the defendant

stands convicted of, sex trafficking by force, fraud, and coercion.  As detailed above, the defendant

preyed  upon vulnerable victims, including at least one minor runaway, and in the process, he used

their bodies as commodities that he was able to sell over and over again for his own profit.  The

crime of prostitution is often viewed as a simple crime.  This perception completely ignores the

complexity and seriousness of this crime and its impact on women and children in our society.  At

the most basic level, this crime involved the absolute degradation of the victims since their bodies are bought and sold as commodities. These victims may not yet understand the long-term impact the defendant's actions will have on their lives, but they will undoubtably realize it in time and it will likely affect both them and their families for the remainder of their lives. The seriousness of these crimes cannot be overstated.

A sentence of life would also serve the purposes of general and specific deterrence. The defendant's conduct has impacted many more people than just those named in the indictment. Their families and those that love them have also suffered and had their lives turned upside down. Unless individuals who engage in this heinous type of criminal activity understand that there are serious and certain consequences for their actions, the temptation to continue to engage in such conduct and to continue to prey on those who are among the most vulnerable in our society cannot be tempered, let alone, eliminated. The Court's sentence should send a clear and strong message of general deterrence. A life imprisonment sentence for such conduct can serve as a powerful deterrent against the commission of these abhorrent crimes. It is only when these pimps see others similarly situated go to jail for a lengthy term of imprisonment, that they think twice before deciding to engage in such conduct. The only way to deter him, and others like him, who would entertain engaging in such acts, is the imposition of the sentence called upon under the Sentencing Guidelines.

Society must also be protected from the defendant. The defendant is an incredible danger to our community. His criminal history exemplifies an individual unable to function in a law-abiding society. He engaged in abhorrent crimes against children and young women. Many of the victims shared common risk factors that made them vulnerable to these crimes. The defendant preyed on their vulnerabilities and in the process exploited them and dehumanized them. These

victims were not prostitutes but they were prostituted by the defendant. The defendant offered men the opportunity to buy these girls as if they were nothing more than objects to be traded. The defendant presents an ongoing danger to women and children. A life imprisonment sentence would deter his conduct by incapacitating him in prison, protect the public, and serve as notice to him and others that his behavior will not be tolerated by the Court or a society that values its children and women.

          3.       The Kinds of Sentences Available

In evaluating this element, the Court should consider the sentencing options available under both the Guidelines and the applicable statutes. See United States v. Melton, 188 Fed. Appx. 428, 433 (10th Cir. 2006) (unpublished). Based on a total offense level of 43 and a criminal history category of III, the guideline term of imprisonment is life. Even though the Guidelines are no longer mandatory, the "continued use of the Guidelines in an advisory fashion would further the purposes of Congress in creating the sentencing system to be honest, fair, and rational." Talley, 431 F.3d at 787. Any deviation from the Guidelines must have a "justification [that] is sufficiently compelling" and "a major departure should be supported by a more significant justification than a minor one." Gall, 128 S. Ct. 597. In this case, however, a guideline sentence is both appropriate and justified.

          4.       The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct

The Sentencing Guidelines were promulgated, in part, to minimize disparities in federal sentences. Although those Guidelines are no longer mandatory, the importance of eliminating sentencing disparities remains an important factor which the Court must separately consider pursuant to 18 U.S.C. § 3553(a)(7). This case presents a degree of atrociousness worthy of a sentence of life imprisonment.

**III.    CONCLUSION**

A review of the § 3553(a) factors in this case not only supports imposition of the advisory guideline sentence of life imprisonment, it effectively compels that result. For all of the foregoing reasons, and based on the evidence presented at trial, the United States respectfully requests that the Court sentence the defendant, Mackenley Desir, to a term of life imprisonment.

> Respectfully submitted,
>
> WIFREDO A. FERRER
> UNITED STATES ATTORNEY
>
> By:       s /*Francis Viamontes*
>          Assistant United States Attorney
>          Florida Bar No. 0605514
>          500 Broward Blvd. 7th Floor
>          Fort Lauderdale, Florida 33394-3016
>          Tel: 954-660-5688
>          Fax: 954-356-7336

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 30, 2013, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF.

> s /*Francis Viamontes*
> Assistant United States Attorney