**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 12-60312-CR-COHN

UNITED STATES OF AMERICA,

v.

MACKENLEY DESIR,

    Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

    COMES NOW the Defendant, MACKENLEY DESIR, through undersigned counsel, and hereby submits the following Sentencing Memorandum:

**Introduction**

    The Defense agrees with the Government in that the Sentencing Guidelines must be applied in an advisory fashion to meet constitutional muster. *See United States v. Booker*, 543 U.S. 220, 258 (2005). The Defense further agrees that the Court is obligated to consult the Sentencing Guidelines and "begin all sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 128 S. Ct. 586, 596 (2007).

    The purpose of this Sentencing Memorandum is to further bolster the Defense's initial objections to the presentence report ("PSR") and to respond to the Government's Sentencing Memorandum [D.E. 278] which argues that the Sentencing Guidelines call for a life sentence. Finally, this memorandum seeks to inform this Court of past sentences handed down in similar type cases and argues that a life sentence in this case would be excessive and greater than necessary to achieve the sentencing goals of 18 U.S.C. Section 3553.

## Proper Application of the Sentencing Guidelines

## Victim B.V.

*Cross Reference to Section 2A3.1*

The Government argues that a cross reference to Section 2A3.1 is appropriate for victim B.V. This is simply incorrect.

First, it should be noted that U.S. Probation ("Probation") does not apply a cross reference to Section 2A3.1.  *See* PSR ¶ 58.

Second, any cross reference to Section 2A3.1 would be erroneous for the simple fact that the cross reference only applies when the offense involves conduct described in 18 U.S.C. Sections 2241 or 2242.  *See* Section 2G1.3(c)(3).  Those statutes are essentially federal rape statutes which punish sexual assaults committed within the special maritime and territorial jurisdiction of the United States or a federal prison.  In fact, a key element of 18 U.S.C. § 2241 or § 2242 is that the crime take place within the special maritime and territorial jurisdiction of the United States or a federal prison.[1]

18 U.S.C. §7 defines the terms "special maritime and territorial jurisdictions" of the United States.[2]  A review of that statute clearly shows that Mr. Desir's offense involving B.V.

---

[1] *See also* Eleventh Circuit Pattern Jury Instruction No 79.1.  According to the instruction the elements of proof are (in pertinent part):
(1) the Defendant caused victim to participate in a sexual act;
(2) the Defendant used force against victim or threatened her or caused her to believe that she or any other person would be killed, suffer serious bodily injury, or be kidnapped;
(3) the Defendant did these acts knowingly; and
(4) **the acts occurred within [the special maritime jurisdiction of the United States] [the territorial jurisdiction of the United States] [a Federal prison]. (emphasis added).**

[2] 18 U.S.C. § 7 - The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:
(**1**)The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

did not take place in a federal prison or in the "special maritime and territorial jurisdiction" of the United States as defined by 18 U.S.C. § 7 .

The Government cites to *U.S. v. Madison*, 477 F.3d 1312 (11th Cir. 2007) in support of the cross reference to Section 2A3.1.  While it is true that the Eleventh Circuit found that the district did not err in applying the cross reference to the facts of the *Madison* case, the specific argument regarding the territorial jurisdiction of the United States does not appear to be addressed in the opinion itself.

In the end, if the Government's argument is taken to its logical conclusion, then Section 2A1.3 would apply in every single commercial sex act case thereby obviating the need to even have Section 2G1.3 in the first place.  This result could not be what the Sentencing Commission intended.

---

**(2)**Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.
**(3)**Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.
**(4)**Any island, rock, or key containing deposits of guano, which may, at the discretion of the President, be considered as appertaining to the United States.
**(5)**Any aircraft belonging in whole or in part to the United States, or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State, Territory, district, or possession thereof, while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.
**(6)**Any vehicle used or designed for flight or navigation in space and on the registry of the United States pursuant to the Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, Including the Moon and Other Celestial Bodies and the Convention on Registration of Objects Launched into Outer Space, while that vehicle is in flight, which is from the moment when all external doors are closed on Earth following embarkation until the moment when one such door is opened on Earth for disembarkation or in the case of a forced landing, until the competent authorities take over the responsibility for the vehicle and for persons and property aboard.
**(7)**Any place outside the jurisdiction of any nation with respect to an offense by or against a national of the United States.
**(8)**To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.
**(9)**With respect to offenses committed by or against a national of the United States as that term is used in section 101 of the Immigration and Nationality Act—

*Care, Custody & Control*

Turning back to the PSR, this Court should sustain the Defense's objection to paragraph 59 where Probation attempts to add 2 levels under Section 2G1.3(b)(1)(B) for B.V. being in the "custody, care or supervisory control of the defendant". This is because Application Note 2(A) of § 2 G1.3 defines "custody, care, or supervisory control" in the context of a victim, under the age of 18, being entrusted in same way or form to a defendant on either a temporary or permanent basis. The examples given include teachers, day care providers, baby-sitters or other similar type caretakers who are entrusted to provide care or control over the victim. B.V. was never entrusted into the care, custody or control of the Defendant. Thus, the adjustment is inapplicable. Furthermore, it should be noted that the Government agrees with the Defense's objection. [D.E. 278 p. 5].

*Use of a Computer*

This Court should also sustain the Defense's objection to paragraph 61 which adds 2 levels Section 2G1.3(b)(3)(B) for the use of a computer to encourage or solicit a person to engage in prohibited sexual conduct with a minor. There was no evidence produced at trial that Desir used a computer to entice others to have sex with B.V. *while she was 17 years old*. As the Court may recall, B.V. turned 18 years old on January 11, 1990. While the Government presented evidence which it claimed showed B.V. being posted on the internet, these postings were done after she turned 18 years old. Thus, this adjustment is inapplicable.

*Role*

Finally, there should be no role adjustment relating to B.V. as there was no evidence showing that the Defendant organized, lead, managed or supervised others while B.V. committed commercial sex acts.[3]

If the Court were to rely on Section 2G1.3 without cross referencing Section 2A3.1 and if this Court were to sustain the Defense's objections to the specific offense charactertics under Section 2G1.3, the resulting offense level would be 38.

### Victim C.J.

For the same reasons argued for victim B.V., the cross reference to Section 2A3.1 is inapplicable. Rather, if this Court were to sustain the Defense's objection, the base offense level under Section 2G1.1(a)(1) would be 34. If this Court were to add a 2 level role adjustment then the total offense level would be 36 as opposed to an offense level of 42 as called for in the PSR.

### Uncharged Conduct & Sentencing Guidelines

*Uncharged Victim's J.D. & J.T.*

The Government stipulated that it is not able to prove that Desir used force, fraud or coercion to cause uncharged victims J.D. & J.T. to engage in commercial sex acts. [D.E. 278 p. 8-9]. Therefore, the Government agrees that this Court should not consider facts relating to J.D. or J.T. in Desir's sentencing. *See id.*

*Uncharged Victim's S.D. & H.C. & the Sentencing Guidelines*

The Defense objects to the inclusion of alleged, uncharged victim S.D. in the sentencing guideline calculation. The Defense's recollection of B.V.'s trial testimony was that she no

---

[3] The Defense acknowledges that the Government did present evidence of the Defendant supervising Co-Defendant Rembert thereby justifying the Government's request for a role adjustment for victim C.J. only.

longer had involvement with the Defendant after September of 2008. The Government argues that Desir used force, fraud or coercion to cause S.D. to commit commercial sex acts in November of 2008. [D.E. 278 p. 8]. Thus, there was no overlap between the alleged forced commercial sex trafficking of B.V. and S.D. Moreover, S.D.'s multiple letters to Desir while he remained incarcerated at the West Palm Beach County Jail from January 2009 through March of 2009 belie any claims of forced sex trafficking. Collectively, these letters which S.D. sent to Desir show a woman completely infatuated with him. They certainly do not show a woman who was forced or coerced to commit commercial sex acts for him.[4]

Likewise, contrary to the Government's argument, none of the commercial sex acts allegedly committed by H.C. occurred during the commission of the offense of conviction, in preparation for the offense of conviction or in the course of attempting to avoid detection or responsibility for the offense of conviction. In fact, they allegedly occurred in December of 2011 which is no where near the time relevant to victim B.V. or C.J.

§ 1B1.3 defines the concept of "Relevant Conduct" under the sentencing guidelines. § 1B1.3(a)(1) applies to "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant, and . . . that occurred during the commission of the **offense of conviction**, in preparation for that **offense**, or in the course of attempting to avoid detection or responsibility for that **offense**". (emphasis added). Clearly, alleged victims H.C. and S.D. were not part of the "offense of conviction" and therefore do not constitute relevant conduct. Likewise, § 1B1.3(a)(2), (a)(3) and (a)(4) are not applicable since the alleged facts of forced commercial sex for each of the victims do not constitute "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." The alleged facts

---

[4] Due to the nature of the language used in these letters, the Defense will submit these letters to the Court at the time of sentencing for consideration. A copy has already been provided to the Government.

underlying these alleged victims are simply unrelated to the offenses of conviction and therefore would not be grouped together under § 3D1.2(d).  In fact, § 3D1.2(d) specifically excludes the grouping together of offenses involving commercial sex acts.  Therefore, the alleged facts of forced commercial sex involving alleged victims H.C. and S.D. are not relevant conduct for guideline calculation purposes and must not be counted.

## Review of 18 U.S.C. § 3553(a) Factors

*History of the Defendant*

Desir was raised under below average socioeconomic conditions in Haiti.  See PSR ¶ 135.  Desir's brother, Gregory Desir, described how Desir and his 6 other siblings grew up in impoverished conditions in Haiti.  *Attached hereto as Exhibit "A" is a true and correct copy of a letter written by the Defendant's brother, Gregory Desir, to the Court on behalf of the family*.  He describes how life was difficult and often times they felt "hopeless and helpless".  *See* Exhibit "B".  The PSR also documents how Desir's father was not present in his life.  See PSR ¶ 135.  Desir met his father for the first time when he was 15 years old.  *See id.*  In fact, he has met his father just a few times in his life.  The Defense requests this Court to consider Desir's difficult upbringing in fashioning a sentence.

*The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment Afford Adequate Deterrence, Protect the Public, Promote Rehabilitation, Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities*

Even if this Court were to sustain the Defense's objections, Desir still faces an extremely long sentence – one in which will undoubtedly reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public.  The Defense submits that a life sentence, which the Government argues for, is greater than

7

necessary to achieve the goals of 18 U.S.C. § 3553(a) and which would clearly be out of the norm for similarly situated defendants.

In contemplating a sentence in this case, this Court should consider that a life sentence has only been handed down 2 times in the past 10 years in cases involving the offense of commercial sex trafficking. Using the Court's Pacer system, the Defense has compiled a chart showing all cases in the Southern District of Florida in the past 10 years where the offense of commercial sex trafficking was charged either as an attempted offense, substantive offense or in some form of conspiracy and where the defendant pled guilty to some form of the offense. Attached hereto as *Exhibit "B"* is this chart.[5] This chart shows the style of the case, the case number, the defendant(s), number of victims (as can be best determined from the pleadings), whether minors were involved and the ultimate sentence.

A review of the chart reveals that of a total of 44 defendants, the average sentence is 145.5 months for commercial sex trafficking types of offenses. The median sentence is 121 months. Only two defendants received life sentences. Thus, life sentences are the exception and not the rule for these types of offenses. The Defense submits that while the Desir's alleged conduct is serious and requires a just and significant punishment, his sentence should be measured so that it is commensurate with the majority of past cases so as to avoid sentencing disparities.

*CABRERA & ZACCA, LLP*
12781 Miramar Parkway, Suite 303
Miramar, FL 33027
Telephone:  (954) 450-4848
Facsimile:   (954) 450-4204

By: **s/ *Deric Zacca***

---

[5] Undersigned counsel consulted with the help line at Pacer to assist in compiling this list through Pacer's case search function.

DERIC ZACCA, ESQUIRE  
Florida Bar No.: 0151378

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 29, 2013 the foregoing document was filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Deric Zacca*  
DERIC ZACCA, ESQUIRE