```
 1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2                  FT. LAUDERDALE DIVISION

 3                    Case 12-60312-CR-COHN

 4
     UNITED STATES OF AMERICA,
 5
              Plaintiff,
 6                                      FT. LAUDERDALE, FLORIDA
         vs.
 7                                      November 1, 2013
     MACKENLEY DESIR and GENET REMBERT,
 8
              Defendants.
 9   _____

10                         VOLUME 12

11            TRANSCRIPT OF SENTENCING PROCEEDINGS
              BEFORE THE HONORABLE JAMES I. COHN,
12               UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14
     FOR THE GOVERNMENT:       FRANCIS VIAMONTES, A.U.S.A.
15                             99 NE 4th Street, Suite 600
                               Miami, Fl 33132
16
17   FOR DEFENDANT DESIR:      DERIC ZACCA, ESQ.
                               12781 Miramar Parkway, Suite 303
18                             Miramar, Fl 33027-2908

19
20   REPORTED BY:              PAULINE A. STIPES, RPR-CM
                               Official United States Court Reporter
21                             Federal Courthouse
                               299 E. Broward Boulevard
22                             Ft. Lauderdale, FL  33301
                                               954-769-5496
23

24

25
```

# TABLE OF CONTENTS

Page

Susam Romash ......................................... 1654

    Direct Examination by Ms. Viamontes ................. 1654

    Cross-Examination by Mr. Zacca ...................... 1671

Mackenley Desir ...................................... 1679

    Direct Examination by Mr. Zacca ..................... 1679

    Cross-Examination by Ms. Viamontes ................. 1684

## EXHIBITS

| | Marked for Identification | | Received in Evidence | |
| --- | --- | --- | --- | --- |
| Description | Page | Line | Page | Line |
| Government Exhibit 1 ........................... 1658 | | | | 20 |
| Defense Exhibit 1 ............................. 1676 | | | | 13 |
| Government Exhibit 2 ........................... 1662 | | | | 13 |
| Defense Exhibit 2 ............................. 1678 | | | | 16 |
| Government Exhibit 3 ........................... 1663 | | | | 5 |
| Government Exhibit 4 ........................... 1670 | | | | 6 |

1    THE COURT:  Okay, the matter before the Court is

2    United States of America versus Mackenley Desir.  This is Case

3    Number 12-60312-CR.

4    Mr. Desir is present.  He is represented by Deric

5    Zacca.  The Government is represented by Assistant United

6    States Attorney Francis Viamontes.

7    On May 29th of this year, Mr. Desir was found guilty

8    by a jury of Counts 1, 2 and 3 of a three-count second

9    superseding indictment.

10    Count 1 charged conspiracy to commit sex trafficking

11    by force, threats of force, fraud or coercion, in violation of

12    18 United States Code, Section 1594(c).

13    Counts 2 and 3 each charged sex trafficking by force,

14    threats of force, fraud or coercion, in violation of 18 United

15    States Code, Section 1591(a)(1).

16    Pursuant to the jury's verdict, the Court adjudged

17    Mr. Desir guilty of Counts 1, 2 and 3, ordered a pre-sentence

18    investigation report and deferred sentence until today's date.

19    Have counsel for the respective parties received a

20    copy of the pre-sentence report, including all addendums?

21    Ms. Viamontes?

22    MS. VIAMONTES:  Yes.

23    THE COURT:  Mr. Zacca?

24    MR. ZACCA:  Yes, sir.

25    THE COURT:  Mr. Desir, have you received and reviewed

 1    the pre-sentence report and all addendums?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Okay.

 4              There are objections.  Mr. Zacca, I will hear from you

 5    first.

 6              MR. ZACCA:  Yes, sir.

 7              Referring to -- I filed three separate pleadings

 8    relating to the sentencing today, Judge.

 9              The first pleading, 268, are my objections to the

10    pre-sentence report with regard to -- I will list them for the

11    record -- the offense conduct section of the pre-sentence

12    report, paragraphs 3 through 15, uncharged conduct, 16 through

13    17.  Paragraphs 16 through 29 have been objected to as far as

14    the description of the offense conduct, and also we have

15    objected to the role assessment.

16              When we get to the offense level computation, we have

17    specific objections to the various offense level objections.

18              Judge, in terms of -- I think the first issue to

19    tackle, that makes sense, is the uncharged conduct from which

20    Probation has assessed points to Mr. Desir.  We have objected

21    to all of it.

22              Since the initial pre-sentence report, I think the

23    Government has retracted from proving up offenses, uncharged

24    conduct relating to victims J.T. and J.D.

25              I think we can remove those from the analysis.  We are

1   now relegated to determining whether conduct relating to victim

2   H.C. and victim S.D. should be incorporated into the

3   presentencing guidelines.

4           We object to it.  I lay out my objection in my papers,

5   and I also supplemented my arguments in my sentencing

6   memorandum I filed this week as well.

7           With regard to H.C., it doesn't qualify as relevant

8   conduct under 1B1.3.  I laid out the argument in both my

9   objections to the pre-sentence report as well as in my

10  sentencing memorandum.  When you apply and look at the

11  definition of relevant conduct, it does not encompass the

12  alleged conduct.

13          Quite simply, the conduct surrounding H.C. occurred

14  in, I believe, December -- allegedly occurred in December of

15  2011, if I am not mistaken.  I want to make sure I am correct

16  on that.

17          When you look at the indictment, the time periods

18  alleged in the indictment go nowhere near December of 2011,

19  Judge.  It certainly is not related to the offense of

20  conviction with regard to victims C.J. and B.V.  B.V.

21  predates -- completely predates December of 2011, and the

22  conduct surrounding C.J. occurred in June 2012.

23          So, it comes nowhere near the offense of conviction.

24  It can't be argued logically that the conduct surrounding

25  victim H.C. was in preparation or in support or in any way

1   relevant to the offense conduct involving victim C.J., which

2   occurred in June 2012, and victim B.V., which predates that,

3   December of 2011.  So, it doesn't fall under relevant conduct.

4        I go through the definition of relevant conduct, I

5   cite to it.  Any way you cut it, it just does not constitute

6   relevant conduct for purposes of the guidelines.

7        Moving on to victim --

8        THE COURT:  Well --

9        MR. ZACCA:  Yes, sir.

10       THE COURT:  No.  Go ahead.  Victim S.D.

11       MR. ZACCA:  Yes, victim S.D., it is essentially the

12   same argument.

13       I concede the conduct surrounding S.D. occurred in

14   November 2008.  I'm trying to keep all these dates in my head.

15   November 2008 does fall within the alleged conduct with regard

16   to B.V.  I concede that point.  It is an obvious point to

17   concede.

18       However, and I think I make this argument in my

19   sentencing memorandum, that when you look at the testimony of

20   victim B.V. -- and the Government can correct me if I am wrong,

21   but I think I was clear, I relied on my trial notes.  B.V.

22   testified that her last contact with Mr. Desir was in August of

23   2009, after the second domestic violence incident.  After that,

24   she no longer had any contact with Mr. Desir.

25       So, based on the trial testimony, and based on the

1   evidence, again, it falls in that same analysis, the conduct

2   involved with S.D. was not in support or preparation or

3   furtherance of the offense of conviction, so it is the same

4   analysis, Judge.

5          THE COURT:  Okay, let me hear from the Government.

6          MS. VIAMONTES:  Your Honor, victim S.D. -- initially,

7   victim S.D. was victimized around November 2008, forced to

8   commit commercial sex acts by Mackenley Desir, and the

9   Government is prepared to present proof of that today.

10          In terms of it being relevant conduct, it is relevant

11   conduct.  November 2008 is just a couple of months after victim

12   B.V. finally escaped from Mackenley Desir.

13          I proffer to the Court the testimony the Government is

14   prepared to present to the Court and the evidence will show

15   that victim S.D. was with the defendant for several months

16   prior to her call to law enforcement on November 11th, 2008,

17   therefore, it was at or about the same time that B.V. was

18   victimized by Mackenley Desir.

19          Furthermore, I think the Court is well aware that

20   although the Government charged specific dates on the

21   indictment in reference to the counts the defendant was

22   convicted of, the defendant continued this criminal enterprise

23   up until the time he was arrested by not only continuing the

24   prostitution, but additionally attempting to obstruct and

25   attempting to avoid being prosecuted for this crime.

1    During the case -- during the trial, the Government

2  admitted into evidence a letter written by the defendant that

3  was in his property when we took custody of him from

4  Immigration where he is writing to Genet Rembert, explaining to

5  her to not talk about him because two or more is a conspiracy.

6    Therefore at that time in 2012, late 2012, December

7  2012, he is still trying to cover up what he did to these

8  women.

9    Additionally, the Government will present evidence

10  that during the pendency of this case, when we were trying to

11  convince victim S.D. to come forward and be as brave as C.J.

12  and testify in this case, the defendant was writing her letters

13  to prevent her from coming into the courtroom.  Those letters

14  didn't outright threaten her, but it was his way of

15  manipulating her further and instill the fear in her to be sure

16  she would not be brave enough to come into this Court.

17    It is relevant conduct because it was during the time

18  B.V. was victimized and the defendant continued the criminal

19  activity by attempting to conceal his crime even several years

20  after.

21    MR. ZACCA:  Judge, if I may add one point to the

22  Government's argument of the confidential accept eat of the

23  continuing criminal enterprise.

24    I want to remind the Court, as was evidence presented

25  at the trial, Mr. Desir was incarcerated in Palm Beach County

1 Jail in November of 2008, and did not get released until March

2 of 2010.  That is almost a two-year period, and he wasn't

3 released back on the streets.  He was released into ICE,

4 Customs and Border Patrol for deportation proceedings.

5         Sometime later in 2010, he got out, but the concept of

6 an ongoing enterprise bridging the gap between B.V. and C.J. is

7 broken up by the sheer fact that he was incarcerated for nearly

8 two years.

9         So, I think that argument of the Government has

10 limitations based on the clear facts of the case.

11         MS. VIAMONTES:  If I may, Your Honor, I believe the

12 jail recordings the Court heard during the pendency of the

13 trial show that the defense's argument is rather weak.  While

14 in custody, the defendant continued to manipulate Ms. Rembert

15 and instruct her on how to continue the business, and we

16 recovered letters even while he was in custody of him trying to

17 obstruct justice in this case.

18         The fact that he was in custody doesn't mean that he

19 wasn't continuing in attempting to avoid being prosecuted for

20 this case and continuing his criminal conduct.

21         MR. ZACCA:  Judge, those recordings that the

22 Government is alluding to occurred after he was arrested in

23 this case.  There is no evidence of recordings made during the

24 time he was incarcerated at the Palm Beach County Jail.  That

25 has not been presented to this Court.

```
 1            MS. VIAMONTES:  That is not accurate.  The jail
 2   recordings played is when he was at the Krome Detention Center
 3   awaiting deportation.  He had no idea we were investigating him
 4   or about to bring forth an indictment in this case.  He had not
 5   been indicted, was not in our custody.  He was in Federal
 6   custody awaiting deportation not on this charge, not on this
 7   case.
 8            MR. ZACCA:  Very well.  The Krome Detention
 9   recordings -- I don't have them in front of me, I didn't
10   anticipate this argument, I don't know the date of that.  I
11   think those recordings are dated in 2010, not in 2009, not
12   2008, Judge.
13            THE COURT:  All right.  Ms. Viamontes, you indicated
14   you wish to offer evidence regarding S.D.
15            MS. VIAMONTES:  I do, Your Honor.
16            THE COURT:  Okay.
17            MS. VIAMONTES:  I do.  At this time, the Government
18   calls Agent Susan Romash.
19            SUSAN ROMASH, GOVERNMENT'S WITNESS, SWORN.
20            THE COURT:  Please be seated.  Please give us your
21   name once again.
22            THE WITNESS:  Susan Romash, R-O-M-A-S-H.
23            THE COURT:  All right.  Ms. Viamontes.
24            MS. VIAMONTES:  Thank you, Your Honor.
25                      DIRECT EXAMINATION
```

1   BY MS. VIAMONTES:

2   Q.   Agent Romash, you were the case agent on this case,

3   correct?

4   A.   Yes.

5   Q.   During the pendency of our investigation in this case, did

6   you attempt to find additional victims besides B.V. and C.J.?

7   A.   Yes, I did.

8   Q.   Did you come across reports that led you to believe S.D.

9   was also a victim of sex trafficking?

10  A.   Yes.

11  Q.   Tell us how you came across that information.

12  A.   When I ran the defendant's criminal history, I came across

13  a domestic violence charge that was dropped, and that was in

14  2011 -- 2008, I'm sorry, domestic violence by strangulation.

15          I pulled the reports based on that charge and that is

16  when I came across information regarding victim S.D.

17  Q.   Were you also able to recover a 911 call made in that case

18  by victim S.D.?

19  A.   Yes.

20  Q.   Were you able to recover her taped sworn statement?

21  A.   Yes.

22  Q.   Did you also recover photographs which show her injuries

23  dated November 11th, 2008?

24  A.   Yes, I did.

25  Q.   Based on the evidence you received, did you attempt to

1   convince S.D. to sit down and meet with us in reference to this

2   case?

3          MR. ZACCA:  Judge, at this point, I would like to

4   object.  I am going to have a continuing objection in terms of

5   hearsay and confrontation, Judge.

6          I know the case law in the Eleventh Circuit is

7   reliable hearsay is admissible in a sentencing proceeding.

8   Nonetheless, I object on hearsay and constitutional grounds.

9   They intend to prove this up by an agent, and I don't have S.D.

10  to confront here.

11         THE COURT:  Overruled.

12         MR. ZACCA:  Thank you.

13         THE WITNESS:  Would you repeat the question?

14         MS. VIAMONTES:  If I remember it.

15         I don't recall my last question.

16  BY MS. VIAMONTES:

17  Q.  Did you attempt to ask S.D. to meet with us during this

18  case?

19  A.  Yes.

20  Q.  Did she want to come forward to talk to us?

21  A.  No, she did not.

22  Q.  Did she tell you why?

23  A.  Yes, she did.

24  Q.  What did she say?

25  A.  She told me for multiple personal reasons she did not want

1   to come forward, things that were going on in her life at the

2   time, and she stated that Mr. Desir and his associates knew

3   where she lived and she did not want to put herself and her

4   family in fear of their safety.

5   Q.  During the pendency of our case and while you were still

6   attempting to convince S.D. she should come forward and speak

7   with us, did she receive a letter from Mackenley Desir?

8   A.  Her mother did tell me she received a letter from Mr. Desir

9   while he was incarcerated.

10  Q.  And that letter was sent to her after he was indicted in

11  this case?

12  A.  Yes.

13         MS. VIAMONTES:  Your Honor, may I approach?

14         THE COURT:  Yes.

15  BY MS. VIAMONTES:

16  Q.  Agent Romash, Government Exhibit 1 I handed you.  Do you

17  recognize it?

18  A.  Yes.

19  Q.  What is it?

20  A.  A compact disk, a copy of the 911 call.

21  Q.  Have you had an opportunity to listen to the 911 call on

22  the compact disk?

23  A.  Yes, I have.

24  Q.  Have you also spoken to S.D. on the telephone on a number

25  of occasions?

1   A.   Yes.

2   Q.   Have you spoken with S.D.'s mother?

3   A.   Yes.

4   Q.   Government Exhibit 1, is that a 911 call initially made by

5   S.D.'s mother?

6   A.   Yes.

7   Q.   Do you recognize the voices on that call?

8   A.   Yes.

9   Q.   And who are the voices?

10   A.   Initially, it is S.D.'s mother, and at the end, S.D. is on

11   the phone as well.

12          MS. VIAMONTES:  Your Honor, at this time --

13   BY MS. VIAMONTES:

14   Q.   Does that 911 call reflect what it going on simultaneous to

15   the call being made -- you can hear in the background what is

16   going on?

17          MR. ZACCA:  Judge, improper authenticating of this

18   tape.  She is not the officer who took this recording, she is

19   not familiar with how this recording was done.  It is relying

20   upon hearsay upon hearsay.

21          MS. VIAMONTES:  Your Honor, it is a 911 call made at

22   the time of the events.

23          THE COURT:  I am going to sustain as to the question

24   that was asked, that question being, does that 911 call reflect

25   what is going on simultaneous to the call being made?

1          I don't think she is in a position to provide that

2    testimony.

3    BY MS. VIAMONTES:

4    Q.  Agent Romash, does the 911 call contained on that CD

5    accurately reflect the people that are speaking, S.D. -- are

6    those the true voices of S.D. and her mother?

7          MR. ZACCA:  Same objection, improper predicate and

8    authentication.

9          MS. VIAMONTES:  She testified she had an opportunity

10   to speak to them.

11         THE COURT:  She can give her opinion based on her

12   familiarity with the voices of S.D. and S.D.'s mother.

13         I will overrule as to that.

14         THE WITNESS:  Yes.

15         MS. VIAMONTES:  At this time, I move Government

16   Exhibit 1 into evidence.

17         MR. ZACCA:  Same objection.

18         THE COURT:  Overruled.  Government's 1 will be

19   received.

20         [Government Exhibit 1 received in evidence.]

21   BY MS. VIAMONTES:

22   Q.  Now, let's talk about Government Exhibit 2 that I handed to

23   you, Agent Romash.

24         What is Government Exhibit 2?

25   A.  Government Exhibit 2 is a cassette tape that was provided

1  to me with the recorded statement of S.D.

2  Q.  And is that a sworn statement?

3  A.  Yes, it is.

4  Q.  Could you identify the female voice on Government Exhibit

5  2?

6  A.  Yes.

7  Q.  Who is that?

8  A.  S.D.

9       MS. VIAMONTES:  Your Honor, at this time, I move

10  Government Exhibit 2 into evidence.

11       MR. ZACCA:  Same objection, authentication, improper

12  predicate.  We don't know when the statement was made, how it

13  was made, to whom it was made.  She wasn't present there.

14       There are a lot of problems with this particular

15  statement.  The earlier one, the 911 call, I understand it

16  comes under the excited utterance exception.  Here we are

17  dealing with the sworn statement.  She wasn't the agent

18  involved.  We don't know the time, who was there.

19       THE COURT:  At this time, sustained.  You can

20  elaborate on the predicate.

21  BY MS. VIAMONTES:

22  Q.  Agent Romash, do you know when the statement was taken?

23  A.  Yes.

24  Q.  When was it taken?

25  A.  It was taken in November 2008.

```
 1              MR. ZACCA:  Objection.  May I voir dire once she makes
 2   this predicate?
 3              THE COURT:  After she completes her predicate, you may
 4   voir dire.
 5              MR. ZACCA:  Very well, Judge.
 6   BY MS. VIAMONTES:
 7   Q.  After S.D. makes the 911 call, does the detective interview
 8   her right away?
 9   A.  Yes.
10   Q.  Is that when they make the tape recorded sworn statement?
11   A.  Yes.
12   Q.  Did they also take pictures of her that very day?
13   A.  Yes.
14   Q.  And do the photographs taken of her corroborate what she
15   says on the tape?
16   A.  Yes.
17              MS. VIAMONTES:  Your Honor, again I move Government
18   Exhibit 2 into evidence.
19              THE COURT:  Voir dire?
20              MR. ZACCA:  Yes, sir.
21                          VOIR DIRE EXAMINATION
22   BY MR. ZACCA:
23   Q.  What is the date you just testified to?
24   A.  November 2008.
25   Q.  Okay.
```

1          You weren't present when this statement was given,

2    were you?

3    A.  I was not.

4    Q.  Your entire testimony is based on what you are reading on

5    the tape, correct?  Whatever document is on the tape?

6    A.  Based on the tape and also speaking with the detective who

7    is on the tape.

8    Q.  So, you spoke with the detective to supplement your

9    testimony today?

10   A.  Yes.

11   Q.  And you spoke to the detective because you weren't there

12   when the statement was given, right?

13   A.  That is correct.

14   Q.  From the time of the incident to the time of the statement,

15   how much time passed?

16   A.  That I do not know.

17   Q.  So, it could have been a day, it could have been two days?

18   A.  My understanding, it was the same day.

19   Q.  What is that understanding based on?

20   A.  Based on the detective, the reports, the date of the

21   statement on the recorded tape.

22   Q.  Okay.

23          You were asked about pictures that were taken,

24   correct?

25   A.  Correct.

1  Q.  You weren't there when the pictures were taken?

2  A.  I was not.

3  Q.  Do you know when the pictures were taken in relation to the

4  event?

5  A.  No, I do not.

6  Q.  And, so, your entire testimony is based on your review of

7  reports and your discussion with this detective, correct?

8  A.  Correct.

9       MR. ZACCA:  Same objection, this is hearsay, another

10 declarant being relied upon to authenticate this tape.

11      THE COURT:  Objection overruled.  Exhibit 2 will be

12 received.

13      [Government Exhibit 2 received in evidence.]

14 BY MS. VIAMONTES:

15 Q.  Agent Romash, if I could direct your attention now to

16 Government Exhibit 3 for purposes of sentencing.  It is a

17 composite.

18      What is contained in Government Exhibit 3?

19 A.  Government Exhibit 3 is photographs of S.D.

20 Q.  And did you obtain those from the lead detective in this

21 case in reference to her call, her 911 call, November 11, 2008?

22 A.  Yes, I did.

23 Q.  And based upon your conversations with the detective, can

24 you tell this Court whether those photographs accurately depict

25 the way S.D. looked on November 11, 2008?

1   A.  Based on my conversation with the detective, yes.

2         MS. VIAMONTES:  At this time, the Government moves

3   Exhibit 3 into evidence for sentencing purposes.

4         THE COURT:  Exhibit 3 will be received.

5         [Government Exhibit 3 received in evidence.]

6         MS. VIAMONTES:  Permission to approach and publish,

7   Your Honor?

8         THE COURT:  You may.  The ELMO is on.

9         MS. VIAMONTES:  For the record, the Government is

10  publishing Government Exhibit 3 on the ELMO, and it is a

11  composite containing 8 pages.

12        Your Honor, at this time, the Government will publish

13  Government Exhibits 1 and 2 on the stereo equipment.

14        (Thereupon, the call was played.)

15        MS. VIAMONTES:  Your Honor, at this time, the

16  Government will publish the taped sworn statement, Government

17  Exhibit 2 in evidence for purposes of sentencing.

18        MR. ZACCA:  I'm sorry, my client was whispering in my

19  ear.

20        THE COURT:  The Government announced that it was going

21  to publish Exhibit 2, which is the sworn statement given by

22  S.D. to the detective.

23        (Thereupon, the sworn statement was played.)

24        MS. VIAMONTES:  Sorry, Your Honor, it has been awhile

25  since I used one of these.

```
 1                (Thereupon, the tape continued.)

 2           MS. VIAMONTES:  Your Honor, there are a few remaining

 3     minutes on the tape.  If defense wants me to play the whole

 4     tape, I will, but that is all I wanted to present to the Court

 5     in reference to the tape.

 6           MR. ZACCA:  I just consulted with my client, Judge,

 7     and we don't have an objection to stopping the tape now.

 8           THE COURT:  All right.  Any other evidence with

 9     respect to the uncharged conduct?

10           MS. VIAMONTES:  Yes, Your Honor.

11           THE COURT:  Relevant conduct?

12           MS. VIAMONTES:  Yes, Your Honor.

13     BY MS. VIAMONTES:

14     Q.  In reference to S.D., Agent Romash, did you obtain a letter

15     which had been authored by S.D. refusing to prosecute this

16     case?

17     A.  I found a letter which appeared to be authored by S.D. when

18     conducting a search of Mr. Desir's property.

19     Q.  And what did that letter state was the reason for her not

20     wanting to prosecute the domestic violence situation she

21     reported on November 11, 2008?

22     A.  I believe in the letter it says she exaggerated and didn't

23     wish to come forward, or didn't wish to prosecute the case.

24     Q.  Did you find similarities between that letter and the

25     letter purported to be authored by B.V. that was presented
```

1  during the trial of this case?

2              MR. ZACCA:  Objection, Judge, calls for an opinion.

3              THE COURT:  Overruled.

4              THE WITNESS:  Yes.  They both appeared to state that

5  they exaggerated or misspoke because they were jealous of

6  Mr. Desir and other women.

7  BY MS. VIAMONTES:

8  Q.  And those charges were dropped in State Court, the domestic

9  violence charges?

10 A.  Yes.

11 Q.  There was never a sex trafficking charge presented back in

12 2008, in reference to S.D.?

13 A.  Not that I am aware.

14 Q.  Did you have an opportunity to pull victim S.D.'s NCIC?

15 A.  Yes.

16 Q.  And the NCIC does reflect a guilty plea to dealing in

17 stolen property in 2006; is that correct?

18 A.  Yes.

19 Q.  If you need it, I can show it to you to refresh your memory

20 if you need to.

21          Do you recall that?

22 A.  Yes.

23 Q.  Dealing in stolen property would be a crime of dishonesty,

24 correct?

25 A.  Yes.

1   Q.   Now let me direct your attention to victim H.C.

2        How did you come across victim H.C.?

3   A.   H.C. actually reached out after there was a press release

4   when Mr. Desir was arrested.

5   Q.   So, she came forward and wanted to discuss her situation

6   and her interaction with Mackenley Desir?

7   A.   She did.  She was very hesitant at first, but she did then

8   come forward.

9        MS. VIAMONTES:  May I approach, Your Honor?

10        THE COURT:  Yes.

11        MR. ZACCA:  Judge, for the record, I want to put on

12   the record my continuing objection based on hearsay and

13   confrontation, proving up an uncharged crime through an agent

14   instead of bringing the alleged victim.

15        THE COURT:  All right.  The objection is overruled.

16   BY MS. VIAMONTES:

17   Q.   Did you have an opportunity to meet with H.C.?

18   A.   Yes, I did.

19   Q.   Did you also, during your investigation, come across

20   photographs that were taken of H.C. back in December 2011?

21   A.   Yes, I did.

22   Q.   Were you also able to find Backpage ads which contained

23   photographs of H.C.?

24   A.   Yes.

25   Q.   Let's talk about the Backpage ads.

1         Do you recall what email was used for the Backpage ad?

2   A.   The same email that was used for C.J.'s Backpage ad.

3   Q.   The same email that was presented in this case, during this

4   trial, was the same email used for H.C.'s ad in December 2011?

5   A.   That is correct.

6   Q.   Did you also obtain hospital records to corroborate what

7   H.C. was saying?

8   A.   Yes.

9   Q.   Did you have an opportunity to look at the hospital

10  records?

11  A.   Yes.

12  Q.   Tell this Court what H.C. told you occurred to her.

13  A.   H.C. said that she was beaten by a women named Sabrina, who

14  she identified as Genet Rembert, that she had black eyes, a

15  broken finger and a chest fracture, I believe.

16  Q.   And did the hospital record confirm that, in fact, she did

17  have that diagnosis of a broken finger and chest wall injuries

18  to her body?

19        MR. ZACCA:   Objection, best evidence.   The hospital

20  records are the best evidence.   We don't have them here today.

21  She is asking the witness to testify from a record not admitted

22  into evidence.   The best record is the hospital record itself.

23        THE COURT:   Overruled.

24  BY MS. VIAMONTES:

25  Q.   Did the hospital records corroborate what H.C. was stating

1  to you?

2  A.  Yes.

3  Q.  And just for the record, the hospital records were provided

4  in discovery to defense counsel.

5       Did H.C. tell you whether she was a drug addict and

6  how she came to meet Mr. Desir?

7  A.  Yes, she said she was a drug addict, a recovering drug

8  addict when she met him, but she relapsed when she met him.

9  Q.  At some point in this there was a superseding indictment

10 pending; is that correct?

11 A.  Yes.

12 Q.  While the superseding indictment was pending, was H.C.

13 arrested?

14 A.  Yes.

15 Q.  She was arrested for a crime of dishonesty, burglary?

16 A.  Yes.

17 Q.  Aside from being arrested for dishonesty during this case,

18 did it appear to you whether she had misrepresented whether she

19 voluntarily prostituted before?

20 A.  No.  I was able to corroborate her statement.

21 Q.  In the past, had she been arrested for prostitution prior

22 to her involvement with Mackenley Desir?

23 A.  She did have a prior charge.

24 Q.  Although H.C. was arrested for a crime of dishonesty, did

25 the evidence corroborate what she was stating happened to her

1  while she was with Mackenley Desir in December 2011?

2  A.  Yes.

3  Q.  Did she tell you whether she was forced to commit sexual --

4  commercial sex acts?

5  A.  Yes.

6  Q.  The photographs that are before you, Government Exhibit 4,

7  did you review those photographs with H.C.?

8  A.  I don't believe I reviewed these with her, no.

9  Q.  You have seen H.C., and those do reflect the way she

10  appears?

11  A.  Yes.

12      MS. VIAMONTES:  Permission to publish Government

13  Exhibit 4?

14      MR. ZACCA:  Improper predicate.  What is the relevance

15  of these photographs if she didn't go over these with H.C.?

16      THE COURT:  Sustained.

17  BY MS. VIAMONTES:

18  Q.  How did you obtain the photographs in Exhibit 4?

19  A.  I obtained the photographs from the police report of the

20  Miami Shores Police Department.  When H.C. was recovered, I

21  asked if they had the photographs taken, and they provided them

22  to me.

23  Q.  Based on your investigation and interaction with the

24  detectives of Miami Shores, were these photographs taken

25  contemporaneous to H.C. being recovered in November 2011?

```
 1    A.   Based on the conversation with the detectives, yes.
 2              MS. VIAMONTES:  I would move to admit Government
 3    Exhibit 4.
 4              MR. ZACCA:  I object.
 5              THE COURT:  I will admit them.
 6              [Government Exhibit 4 received in evidence.]
 7              THE COURT:  Folks, we reserved an hour for this.  I do
 8    have other hearings set, so at some point we may have to take a
 9    recess so I can accommodate these other people, because it
10    would be rude of me to keep them waiting because we only
11    allotted an hour here.
12              MS. VIAMONTES:  Yes, Your Honor, I understand.  This
13    will be the last piece of evidence I present.
14              MR. ZACCA:  Judge, to provide guidance to the Court,
15    my client is whispering in my ear that he wants to testify.  I
16    want to apprise the Court of that.
17              This sentencing hearing may get longer.
18              THE COURT:  I am prepared to hear whatever either side
19    wishes to offer.
20              MR. ZACCA:  Okay, very well, Judge.
21              MS. VIAMONTES:  Thank you, judge.
22              Your Honor, I will pass these up to the Court so the
23    Court can get a better look at the exhibits.
24              Your Honor, no further questions at this time.
25              THE COURT:  Okay, cross-examination.
```

```
 1                      CROSS EXAMINATION
 2   BY MR. ZACCA:
 3   Q.  With regard to H.C., victim H.C., her allegations about her
 4   interaction with Mr. Desir occurred in December 2010 -- excuse
 5   me, 2011?
 6   A.  Yes.
 7   Q.  They don't go beyond 2011?
 8   A.  Correct.
 9   Q.  They happened in December 2011?
10   A.  That is correct.
11   Q.  And again, there is no overlap between the offense
12   involving C.J. and H.C., correct?
13   A.  Correct.
14   Q.  And there is no overlap between the offense involving B.V.
15   and H.C., correct?
16   A.  Correct.
17   Q.  At one point in this case, there was a superseding
18   indictment adding a count involving H.C., right?
19   A.  Yes.
20   Q.  And later the Government then filed a second superseding
21   indictment leaving out the count involving H.C., correct?
22   A.  Yes.
23   Q.  And that was because of her dishonesty with the Government,
24   correct?
25   A.  It was because of her arrest while she was working with the
```

```
 1  Government; that is correct.
 2  Q.  Well, it was because of her arrest involving burglary,
 3  correct?
 4  A.  That is correct.
 5  Q.  A crime of dishonesty, is it not?
 6  A.  Yes, it is.
 7  Q.  You did the NCIC on her, correct?
 8  A.  Yes.
 9  Q.  You are familiar with H.C.'s background, criminal
10  background, correct?
11  A.  I am.
12  Q.  You are aware she has been -- that she pled guilty to the
13  offense of petty theft, correct, in June of this year?
14  A.  Yes.
15  Q.  Okay.
16          And she was also arrested for using a false
17  identification, correct?
18  A.  Yes.
19  Q.  Do you know what happened to that offense?
20  A.  I do not.
21  Q.  You mentioned that the count involving H.C. was dropped
22  after she got arrested for burglary, right?
23  A.  Yes.
24  Q.  But she also was dishonest with the Government about her
25  prior prostitution before meeting Mr. Desir, correct?
```

1   A.   That is correct.

2   Q.   When she was first asked, have you ever prostituted

3   yourself before meeting Mr. Desir, she denied it initially?

4   A.   She did.

5   Q.   Later on, on Government investigation, she admitted she did

6   prostitute herself before meeting Mr. Desir?

7   A.   She had a solicitation charge, yes.

8   Q.   That -- with respect to that and the burglary is what

9   caused you to drop her in the indictment?

10   A.   Yes.

11   Q.   With regard to victim S.D., the events involving S.D.

12   occurred in November of 2008, correct?

13   A.   Yes.

14   Q.   All right.  Now, you were here -- you were the case agent

15   in this case?

16   A.   Yes.

17   Q.   You were here throughout the trial?

18   A.   Yes.

19   Q.   You heard the evidence in this case, right?

20   A.   Yes.

21   Q.   You were here during the testimony of B.V., correct?

22   A.   Correct.

23   Q.   And you recall B.V. testified her last dealing with

24   Mr. Desir was in August 2008, after that domestic violence

25   case?

```
 1  A.   Correct.
 2  Q.   So, there is no overlap in Mr. Desir's dealings with B.V.
 3  and victim S.D., correct?
 4  A.   I'm uncertain about the time frame for S.D. because she was
 5  vague on when she first started dating him in the recording.
 6  Q.   As far as you know, it was November 2009 -- 2008, correct?
 7  A.   According to the statement, she met him a couple of months
 8  prior and was dating him prior to that.
 9  Q.   At this point, there is no evidence to rely upon to know
10  that there is overlap between S.D. and B.V., correct?
11  A.   Correct.
12  Q.   And in fact, there is no overlap between Mr. Desir's
13  dealings with S.D. and C.J., correct?
14  A.   That's correct.
15  Q.   No connection, right?
16  A.   No connection.
17          MR. ZACCA:   Judge, may I approach?
18          THE COURT:   Yes.
19          MR. ZACCA:   Thank you.
20  BY MR. ZACCA:
21  Q.   I will show you Defendant's Exhibit 1.
22          THE COURT:   Are all parties here for the 11:30?  I see
23  and the prosecutor and interpreter.
24          Okay, we are going to recess this.  I don't think it
25  would be appropriate for me to keep these people waiting.
```

1    We will take a brief recess, and Mrs. Stipes will need

2    to take a break here, too.  We will get back to you as soon as

3    we can.

4    MR. ZACCA:  I will move my car to a more permanent

5    spot.  I will be back in ten minutes.

6    THE COURT:  Go ahead.

7    (Thereupon, a short recess was taken.)

8    THE COURT:  All right.  The record will reflect

9    Mr. Desir is present, represented by counsel.

10    We have Special Agent Romash on the stand.  Let me

11    remind you that you are still under oath.  We will continue

12    with cross-examination by Mr. Zacca.

13    MR. ZACCA:  Thank you, Judge.

14    THE COURT:  You are welcome.

15    MR. ZACCA:  Judge, may I approach the witness?

16    THE COURT:  Sure.

17    BY MR. ZACCA:

18    Q.  I believe we last left off where I was showing you Defense

19    Exhibit Number 1.

20    You recognize that document, correct?

21    A.  Yes, I do.

22    Q.  That was a document you were referring to during your

23    direct testimony with regard to a letter S.D. wrote to the

24    State Attorney's Office?

25    A.  Yes.

```
 1  Q.  Explaining she wanted the case dropped?

 2  A.  Yes.

 3  Q.  Explaining that she exaggerated when she gave her

 4  statement?

 5  A.  Yes.

 6  Q.  That she was angry at Mr. Desir because he was unfaithful

 7  to her?

 8  A.  That is what the letter says.

 9          MR. ZACCA:  At this time, we move Defendant's 1 into

10  evidence.

11          MS. VIAMONTES:  No objection.

12          THE COURT:  Defendant's 1 will be received.

13          [Defense Exhibit 1 received in evidence.]

14          MR. ZACCA:  Judge, I will publish it for the Court.

15          THE COURT:  All right.  You all make sure that all

16  exhibits that have been received are submitted.

17          MR. ZACCA:  Yes, Judge.  I can make a filing when I

18  get back to my office through ECF if you'd like.

19          THE COURT:  All right.  That is fine.

20  BY MR. ZACCA:

21  Q.  Are you aware that -- well, strike that.

22          You are aware Mr. Desir remained at the Palm Beach

23  County Jail from November 2008 until March of 2010, correct?

24  A.  I am aware, yes, and I am aware that he was arrested on the

25  date of this incident with S.D. November 11, 2008.
```

1  Q.  2008.  And remained in jail until March 2010?

2  A.  That is correct.

3  Q.  We saw the Palm Beach County Jail records that were

4  introduced at trial?

5  A.  Yes.

6  Q.  You are aware that Ms. -- strike that.

7          You are aware S.D. wrote letters to Mr. Desir while he

8  was in jail, correct?

9  A.  I am not aware of that.

10         MR. ZACCA:  Judge, no further questions at this time.

11         THE COURT:  Any redirect?

12         MS. VIAMONTES:  None, Your Honor.

13         THE COURT:  Thank you, Agent Romash.

14         Any additional evidence on behalf of the Government?

15         MS. VIAMONTES:  Victim C.J. would like to read her

16  letter submitted to the Court.  I don't know if you want her to

17  do it at this time or at the end.  It is not evidence as to the

18  objection.

19         THE COURT:  I read the letter, but certainly she has

20  every right to come in here to court and address the Court and

21  read the letter if she so desires.

22         MS. VIAMONTES:  It is more her recommendation to

23  sentence rather than evidence.

24         THE COURT:  Why don't we do that at the end because it

25  doesn't relate to the objections that the Court is entertaining

```
 1    at this time.
 2              MS. VIAMONTES:  Yes.
 3              THE COURT:  Any evidence on behalf of Mr. Desir?
 4              MR. ZACCA:  Yes.  If I could have a moment with
 5    Mr. Desir?
 6              (Brief pause.)
 7              MR. ZACCA:  Judge, at this time, defense -- I have
 8    provided a copy to the Government, I reference it in my
 9    sentencing memorandum, a collection of records that Mr. Desir
10    received at the Palm Beach County Jail from victim S.D.
11              I would like to move it in as composite Exhibit 2 and
12    present it to the Court.
13              THE COURT:  Any objection?
14              MS. VIAMONTES:  None, Your Honor.
15              THE COURT:  Defendant's 2 will be received.
16              [Defense Exhibit 2 received in evidence.]
17              MR. ZACCA:  They are handwritten and it is best --
18    I'll provide a copy to the Court, and you can look at it
19    instead of publishing it through the ELMO.
20              THE COURT:  Fine.
21              MR. ZACCA:  While you are looking at that, he is still
22    considering his option about testifying.  You could look at
23    that while he is talking to me about this option.
24              THE COURT:  Okay.
25              (Brief pause.)
```

```
 1              THE COURT:  Is he going to testify?

 2              MR. ZACCA:  Mr. Desir chooses to testify.  For the

 3   record, I want it to be clear I advised my client against

 4   testifying, but he decided he wants to testify.

 5              THE COURT:  All right.

 6              Sir, you want to come up to the witness stand, please.

 7              Please remain standing and raise your right hand.

 8              (Thereupon, the defendant was duly sworn.).

 9              THE COURT:  Would you please be seated.

10              Please give us your name and spell your last name for

11   the record.

12              THE WITNESS:  Mackenley Desir, D-E-S-I-R.

13              THE COURT:  All right.  Mr. Zacca, you may inquire.

14                        DIRECT EXAMINATION

15   BY MR. ZACCA:

16   Q.  Mr. Desir, you sat here hearing evidence with regard to --

17   I will take this one step at a time, one victim at a time --

18   S.D.  Do you remember hearing that evidence with regard to

19   S.D.?

20   A.  Yes.

21   Q.  Can you explain to the Court and describe to the Court your

22   relationship with S.D.?

23   A.  Me and S.D. -- me and S.D., we had a relationship, and she

24   was an ex-girlfriend of mine.  They went back and she came from

25   work one day with a girl named Deanna, and when we was -- we
```

1  came from the room, we both was naked and I didn't know she was

2  going to show up, because we was renting from a friend named

3  Joe and I didn't know -- she had a key -- she was going to come

4  from work that early.

5          She went and the girl, they went through it and she

6  started breaking everything in the house, coffee table and

7  everything.  Well, one day I went to church -- she drove

8  herself to -- she drove herself to work and she left me out of

9  the car.  I went to church before I went to school because I

10  was at PBCC college.  I went to church before I went to school,

11  and when I went to church, I had my phone on me, and she called

12  me and told me that she wanted to eat some Haitian food.  She

13  told me to bring her food at her job.

14          When I bring her the food at her job, she went in the

15  car I was sitting and she stole my phone.

16          As I went to -- went to church, because I was supposed

17  to be in the choir, I figure my phone wasn't there, she take my

18  phone to check on it, because she was being kind of like

19  jealous about who was calling me, and I remember I went and I

20  was with a dude from the church, and I went to her job to bring

21  her food.

22          When I bring her, food she wasn't there, she wasn't at

23  work, and I ask a co-worker, and she said her mom came and got

24  her and everything.  Actually, actually, let me start from the

25  beginning.

1        Later at that place -- that place is a body shop where
2   women like, you know, have sex for money, and actually she had
3   been -- would go in that place for five years before I met her.
4        I didn't know she was there five years before I met
5   her, and when I went to go get my phone from her house, that is
6   what happened.  And I went to jail, and she started writing me
7   and I never answered her back, and I show my lawyer the letters
8   she writing me and everything, and my lawyer didn't tell me
9   nothing because of the letters.
10       She was telling me she was praying from me, how bad I
11   was, and, you know, I am a cheater and liar, and she was very
12   upset with me and she come to see me at least like every --
13   once a week.  Actually, she went to the -- she went to the
14   store and got her phone so I would be able to call her from
15   jail, and actually she just wrote me a letter the other day,
16   not too long ago.
17       She tell me how much she love me and she wish to see
18   me again one day, and she sent me a new number to call her, and
19   she put minutes on the phone so I could call her, and she told
20   me about how Susan -- Ms. Susan was kind of like -- kind of
21   like coercing her to come and testify against me, and she said
22   she will come and testify, but she wants to come and testify on
23   my behalf.
24       That is why I was trying to get my lawyer to get her
25   as a witness, but Mr. Zacca decided that he didn't want to get

 1   her as a witness.  But she wanted to come on my behalf, and she

 2   apologized for all the false accusations she made against me.

 3   And I never been in no gang and I don't have no tattoos, you

 4   know, I am a very religious person and I believe in growing my

 5   hair because I don't believe God put people on earth to cut

 6   your hair.  I would not put tattoos or earrings in my ears.

 7        She was very upset when she made those allegations,

 8   and every time somebody make those allegations, they have

 9   something behind it, but I don't know why.  They are like there

10   is always something behind it.  It is an argument.  This is my

11   relationship with her.

12   Q.  Okay.

13        I have some followup questions with regard to S.D.

14   You mentioned certain letters that you received while you were

15   in jail.

16        Are those letters the same letters that consist of

17   Defense Exhibit 2 that I presented to the Court?

18   A.  I need to see them.

19   Q.  Okay.

20        MR. ZACCA:  Judge, may I approach the witness?

21        THE COURT:  Yes.

22   BY MR. ZACCA:

23   Q.  I am showing you a copy, a duplicate of Defense Exhibit

24   Number 2, a composite of.  Letters, look at that, and I am

25   going to ask you a couple of questions.

1  A.  Yes.

2  Q.  Okay.

3      Earlier, you mentioned that you received letters while

4  you were in jail from S.D.; is that right?

5  A.  Yes.

6  Q.  Are those the letters you are referring to?

7  A.  Yes.  When I was in jail before, yeah.

8  Q.  Those are the letters you turned over, you mentioned, to an

9  attorney.  That was your prior attorney at the time?

10  A.  Yes.

11  Q.  Not me?

12  A.  No, not you, Ms. Baynor.

13  Q.  That was your State Public Defender?

14  A.  Yes.

15  Q.  With regard to S.D., you heard her statement about being

16  beaten by you.  Did you do that?

17  A.  No.

18  Q.  I want to turn your attention to H.C.  Okay?

19      You heard evidence presented of H.C.

20  A.  Yes.

21  Q.  Can you describe to the Court what, if any, relationship

22  you had with H.C.?

23  A.  H.C., I met her at a friend's house when I was in Boynton

24  and I came down.  I was like having a little drink and stuff

25  and she was doing drugs with them and was doing what she doing,

1  that is how I met her.

2        She claimed that she know a place where this guy was

3  selling drugs and stuff, and then I think I gave them a ride,

4  her and my friend named Gene, to go get some drugs.

5  Q.  Did you cause H.C. to prostitute herself?

6  A.  No, never.

7  Q.  Did you cause S.D. -- going back to S.D., did you ever

8  cause S.D. to prostitute herself?

9  A.  No.  She was working at that place five years before I met

10 her.

11       MR. ZACCA:  Judge, no further questions.

12       THE COURT:  Cross-examination.

13       MS. VIAMONTES:  Yes, Judge.

14                    CROSS EXAMINATION

15 BY MS. VIAMONTES:

16 Q.  This relationship that you had with S.D. started at a strip

17 club, correct?

18 A.  No.

19 Q.  At a sex parlor?

20 A.  Yes.  A body shop, they call it, a body shop called Flirt.

21 Q.  So, in between being a choir boy, you were going to the sex

22 parlor to convince girls not to do this?

23 A.  No.  I was walking and she was at the window.  I was in the

24 parking lot, she seen me, and waved at me, and come down and

25 wanted to talk with me.

1  Q.   You went there to recruit her; isn't that true?

2  A.   I didn't go to that place.  She seen me out of the window,

3  I was with a friend named Rick, Ricardo Martiz.  I was with two

4  friends and driving in a black BMW, and we came out of the car.

5  She seen us from the top, upstairs.  It is a two-story

6  building.  I was in the parking lot and she came down and that

7  is how I met her.

8  Q.   You learned through B.V. that this was a profitable

9  business and you got S.D. to work for you as well; isn't that

10  true?

11  A.   I learned from who?

12  Q.   B.V.

13  A.   B.V., I never witnessed B.V. prostituting herself, no.

14  Q.   This other female you mentioned, Diana, did she work for

15  you?

16  A.   Diana, she was a friend of Sherry.  Deanna, I think her

17  name was Deanna.

18  Q.   You mentioned that S.D. wrote you a letter not too long

19  ago?

20  A.   Yes, she wrote me a letter with her phone number, 561.

21  Q.   Where is that letter?

22  A.   I don't know.  I don't have it with me.

23  Q.   You knew you were coming here for your sentencing today,

24  correct?

25  A.   I don't have a lot of things that I need to bring.

1   Q.   At every hearing you brought all of your paperwork, but for

2   the sentencing you failed to bring a letter that --

3   A.   Because I didn't have an intention to testify.

4   Q.   You mentioned because of your religion, you are so

5   religious, you don't have tattoos, piercings, you don't cut

6   your hair.  Do you remember that?

7   A.   Yes.

8   Q.   You don't have a problem having women getting tattoos with

9   your name on it?

10  A.   I never asked a woman to get a tattoo.  My first affect is

11  to take my name off your body.

12  Q.   Weren't you here in court where we played that jail call

13  and you are yelling at Genet about the tattoo that you want her

14  to get and how you want to get the tattoo on her body?

15  A.   I'm sorry, I believe you misinterpret the phone

16  conversation.  I got real upset because Genet was supposed to

17  go see my father, okay, about some immigration paperwork, my

18  father at the immigration office, and every day my daddy set up

19  a meeting with her, she never showed up.

20  Q.   You were upset about the tattoo.  You weren't upset about

21  immigration paperwork, you were upset because she wasn't

22  getting the tattoo exactly how you wanted it?

23  A.   The --

24          MR. ZACCA:  Judge --

25          THE WITNESS:  The whole thing started before it get to

1  that point.

2         It get to the point where I get upset after she -- I

3  keep setting the meeting with my daddy.  You can listen to my

4  phone conversations before that happened.  She keep missing the

5  meeting with my daddy, and never met my daddy before, and I say

6  my daddy never have no -- he is a respectable person, and if he

7  asks for a meeting, you should be there.  And every time she

8  told him she would be there, she don't be there.

9         I was upset from that argument.  Two hours later, we

10 having phone sex, phone conversation.

11        That day, it was when I left a thousand dollars at

12 home, and she went and take like -- she told me that she got

13 $300 off that money to put my name tattoo to her chest, and

14 that is when I flipped, and I was trying to piss her off and

15 tell her, you don't know what I like, you know.  If you know my

16 color -- if you -- Ashley know my color.

17        She told me right before when I get out of jail,

18 because she thought I was getting out of jail, she want to get

19 my name tattoo.  She put red on it.  I want to piss Genet off

20 because I was upset myself, and I told her that, you know,

21 well, you don't know what I like, and we keep arguing, you

22 don't know what I like.  And she say, I am getting it for me,

23 not for you.  I'm putting your name on my chest not for you.

24        And I was like, well, this is my name.  How are you

25 going to have somebody design my name?  But I never tell her to

1  put my name on her.

2          When it come to B.V., I didn't know she had my name on

3  her.  I told her to take it off her chest and she never did it

4  for 10 years, and this girl was supposed to take my name off

5  her, and she never did.

6  Q.  You wanted Genet's tattoo to look like B.V.'s, that is what

7  you were telling her to do?

8          MR. ZACCA:  Objection, beyond the scope, going far

9  afield --

10          THE COURT:  Overruled.

11          MR. ZACCA:  I just objected.  Was it overruled?

12          THE COURT:  Yes.

13          MR. ZACCA:  Very well.

14          THE WITNESS:  What was your question?

15  BY MS. VIAMONTES:

16  Q.  You wanted Genet Rembert's tattoo to look like about

17  B.V.'s, that is why you were screaming at her and threatening

18  her?

19  A.  I didn't threaten her.  I told her I didn't want my name

20  tattoo, why are you going to get it right now.  You don't have

21  to get it right now.

22  Q.  You didn't threaten her in the jail calls we played during

23  trial?

24  A.  No.  I am going to leave you, break up with you, divorce

25  you, that is not a threat.

1   Q.   You mentioned Ashley, she has -- she also has your name

2   tattooed on her body?

3   A.   Yes.

4   Q.   Ashley is also a prostitute, correct?

5   A.   I am not getting into her business.

6   Q.   You mentioned Ashley, didn't you, just recently?

7   A.   Yes.

8   Q.   She has your name tattooed on her body just like Genet,

9   just like B.V.?

10   A.   I was not there when they get it.  That was an option.

11   That was a surprise.  If you listen to the phone conversation,

12   it was a surprise.

13   Q.   Ashley is also a prostitute that was a drug addict and you

14   recruited, right?

15          MR. ZACCA:  Objection, beyond the scope.

16          MS. VIAMONTES:  He opened the door.

17          THE COURT:  Overruled.  Let's don't go too far afield.

18   Let's keep it tailored.

19          THE WITNESS:  Ashley, I don't know what she do.  I met

20   Ashley through here baby daddy.  Her baby daddy named Ricardo,

21   the same one I met Shelly.  That is Ashley baby daddy, and he

22   got incarcerated on some charges, and Ashley came for my help

23   with her son and she started living in my apartment with me.

24   BY MS. VIAMONTES:

25   Q.   Mr. Desir, you don't find it a little odd that a choirboy

```
 1  like you is constantly surrounded by young woman that are

 2  prostituting?

 3           MR. ZACCA:  Objection, argumentative.

 4           THE COURT:  Sustained as to the form of the question.

 5  BY MS. VIAMONTES:

 6  Q.  You are constantly surrounded by young women that are

 7  prostituting; isn't that true?

 8  A.  That is not my only friends.  Some of them are.  Some.

 9  Q.  You were present in the room when H.C. was taken by law

10  enforcement; isn't that true?

11  A.  Yes.

12  Q.  You were there?

13  A.  Yes.

14  Q.  Okay.

15           You were present when C.J. got arrested for possession

16  of narcotics; isn't that true?

17  A.  Yes.

18  Q.  You were present when C.J. got arrested for prostitution;

19  isn't that true?

20           THE COURT:  It is beyond the scope.  Sustained.

21  BY MS. VIAMONTES:

22  Q.  These injuries, did H.C. cause them to herself?

23  A.  I don't know how that happened to her.  I don't think

24  somebody -- I don't think she caused it.

25  Q.  S.D., the injuries she had, did she cause all those
```

1  injuries to herself as well?

2  A.  No.

3  Q.  You know she didn't because those injuries -- because you

4  ordered Genet Rembert to inflict those injuries on her; is that

5  true?

6  A.  I --

7  Q.  As to H.C., you ordered Genet to beat H.C. up; isn't that

8  true?

9  A.  No, that is not true.

10  Q.  As to S.D., you were upset she didn't bring home enough

11  money; isn't that true?

12  A.  No, that is not true.

13  Q.  On November 11, 2008, S.D. was covered in bruises; isn't

14  that true?

15  A.  Yes.

16  Q.  And you were banging on the door of her mother's house;

17  isn't that true?

18  A.  No, I wasn't.

19      I knocked on the door and then I was waiting to see if

20  I see any sign of people.  Nobody answer, so I didn't know if

21  there was nobody home, so I was waiting.  And I wait and wait

22  and wait.  I know she got my phone.  I tried to call the phone

23  while I am waiting in front of the door.

24      When nobody ever come outside the door, I went back

25  and sit down in my car and using my friend's phone to call my

1   phone to see if she got my phone.

2   Q.   You agree that the 911 call that was played, the banging we

3   hear on the door, that is you on the other side of the door

4   banging, correct?

5   A.   There wasn't no banging.  I didn't knock loud.

6   Q.   You were just knocking quietly?

7   A.   I just knock (indicating) like that.

8   Q.   During the pendency of this case, you wrote a letter to

9   S.D.; isn't that true?

10   A.   Yes, I think I did.

11   Q.   And you did that to remind her that you knew exactly where

12   she lives; is that true?

13   A.   No.  She wrote me, I wrote her back.

14   Q.   Because just like you told her in the past, even if you are

15   in custody, you will have people take care of her?

16   A.   That was an allegation.  I never mention that like that to

17   her.

18   Q.   But you wrote her -- I am sorry, go ahead.

19   A.   As you can see, the letter she wrote me, no way I could say

20   something like that, a woman still saying she love me, how

21   happy she was I came to her life and all that.

22   Q.   Those letters are similar to the letter B.V. wrote you,

23   correct?

24   A.   No.  B.V., no.  I never wrote a letter like that.

25   Q.   The letter that S.D. wrote dropping the charges in the case

1   is notarized, correct?

2   A.   I believe so.

3   Q.   Just like the letter B.V. wrote months earlier, notarized,

4   correct?

5   A.   Yes.

6   Q.   If you recall B.V.'s letter, it had an X and a line for her

7   to sign.  Do you remember that?

8   A.   Yes, I remember that.

9   Q.   The letter S.D. wrote also has a line and it says

10  underneath in print "sign," correct?

11  A.   Can I see it?

12  Q.   For the record, I am showing you the letter on the ELMO.

13          Do you see where it has a line and says "sign"?

14  A.   Yes.

15  Q.   When people are writing their own letters, they don't write

16  "sign" and sign above their name?

17  A.   I was incarcerated when she wrote this letter.  I was aware

18  when she mailed one to me and one to my lawyer, and I even

19  filed a motion about it.  I was still in jail.

20          MS. VIAMONTES:  Nothing further.

21          THE COURT:  Redirect?

22          MR. ZACCA:  Nothing further.

23          THE COURT:  Thank you, Mr. Desir, you may step down.

24          Any additional evidence on behalf of Mr. Desir?

25          MR. ZACCA:  No, Judge.

 1          THE COURT:  Any rebuttal?

 2          MS. VIAMONTES:  No, Your Honor.

 3          THE COURT:  Any additional argument regarding the

 4     objection to the use of uncharged crimes?

 5          MS. VIAMONTES:  Your Honor, I stand on my written

 6     sentencing memorandum.  I think the Probation Officer in this

 7     case properly included S.D. and H.C.  I think it is relevant

 8     conduct.

 9          I think the trial showed that the defendant continued

10     to cover up these crimes he committed even until the time of

11     trial, so I submit it is relevant conduct, Your Honor, and the

12     Court should consider it in sentencing Mr. Desir.

13          MR. ZACCA:  Judge, I stand on my earlier arguments and

14     my papers.  It doesn't constitute relevant conduct as defined

15     by 1.1B of the Sentencing Guidelines.

16          THE COURT:  The Court finds by a preponderance of the

17     evidence that the defendant's use of force and/or coercion

18     exerted upon S.D. and H.C. to commit commercial sex acts is

19     relevant conduct as the conduct was part of a common scheme of

20     the offenses of conviction.

21          In addition, these commercial sex acts occurred during

22     the commission of the offenses of commission -- of conviction,

23     excuse me.  Therefore, the objection will be overruled.

24          All right.  Next objection.

25          MR. ZACCA:  Well, I think, then, in light of the

1  Court's ruling, I think we have to go through each victim and

2  just go through the adjustments that apply.

3        I'm going in an orderly fashion.  We can go through

4  the pre-sentence report as it lays outs out the order of

5  victims.

6        THE COURT:  Okay.

7        MR. ZACCA:  Page 11 -- actually, page 10 starts the

8  offense level computation.

9        Page 11, the first victim listed is H.C.

10        The first objection that I would raise regarding

11  paragraph 39 under victim H.C. is a cross reference -- this is

12  an objection that is a common theme throughout all the

13  victims -- a cross reference to 2A3.1 and the -- as I lay out

14  in my objections to the pre-sentence report, as well as in my

15  sentencing memorandum, I lay out my argument, Judge, it's

16  almost as if 2A1.3(1) swallows up 2G1.1.

17        Probation argues that the cross reference is

18  applicable -- I am flipping to my guideline book -- if the

19  conduct involved -- if the offense of all conduct described

20  under 18 U.S.C. 2241 or 2242 -- those are essentially rape

21  statutes, and essentially punish rapes when they occur in a

22  Federal prison or special maritime jurisdiction or territorial

23  jurisdiction of the United States.

24        In my papers I lay out a key element of that offense

25  pursuant to the Eleventh Circuit pattern jury instructions, the

1   acts have to occur within a Federal prison or within the

2   special maritime jurisdiction of the United States or

3   territorial jurisdiction of the United States, and then I cite

4   to the definition of what that is, 18 U.S.C. Section 7.

5           It defines what a special maritime and territorial

6   jurisdiction of the United States is.

7           That definition doesn't comport with any of the facts

8   in this case, therefore, because the offense does not involve

9   the conduct described under 2241 or 2242, albeit crimes

10  occurring in a Federal prison or territorial jurisdiction of

11  the United States as defined by 18 U.S.C. 7, is not applicable.

12  The cross reference does not apply.

13          That is my argument.  It is in both of my papers.

14  With regard to H.C., the applicable guideline is 2G1.1.

15          That is my first objection.  I don't know if you want

16  to go piecemeal and lay out my objections to H.C., and have the

17  Government respond.

18          THE COURT:  Let's address the cross reference from

19  2G1.1 to 2A3.1, because that is a theme throughout.  Let's go

20  ahead and tackle that.

21          Mr. Zacca says that this did not occur in the special

22  maritime and territorial jurisdiction of the United States or

23  in Federal prison.

24          MS. VIAMONTES:  Your Honor, that is not required.

25          The case I cited in my sentencing memorandum, United

1  States versus Madison, 477 F.3rd, 1312, an Eleventh Circuit

2  opinion, it is binding on this Court from February 2007.  The

3  Court there concurred with the sentencing Court's overruling an

4  objection to this exact issue of cross referencing in a sex

5  trafficking case, and the Court found that the cross reference

6  to 2A3.1 was appropriate.

7        The District Court overruled the objection because his

8  conduct involved the forcing into commercial sex with violence.

9  The Court applied the cross reference and the Eleventh Circuit

10  upheld imposition of the sentence in finding that cross

11  reference was applicable where force was used to have the

12  victims engage in commercial sex acts.

13        The Court did not require that it be in some Federal

14  jurisdiction, extra territorial, in the prison.  This case is

15  binding on the Court and I think it is on all fours.

16        THE COURT:  Mr. Zacca, what say you with respect to

17  U.S. v Madison?

18        MR. ZACCA:  I referred to it in my memorandum.  It is

19  an interesting case.  The Eleventh Circuit found -- I believe

20  Judge Seitz, the District Judge, found the cross reference

21  applicable.  The Eleventh Circuit found that the District Court

22  did not err in cross referencing it.  There is not much

23  discussion.  It is hard to determine whether this particular

24  issue was pressed forward either at the District Court level or

25  the Eleventh Circuit level.

1        It is not addressed, so I can't ignore the Madison

2   opinion.  I acknowledge it in my papers.

3        On the other hand, this is not a 2241 or 2242 offense.

4   It is not by definition -- by the elements of the offense

5   itself, and by the definition of what special maritime and

6   territorial jurisdiction of the United States as defined under

7   18 U.S.C. 7, it wasn't addressed.  It is not, the best I can

8   see, gleaned from that opinion.

9        THE COURT:  I think the underlying facts fall within

10  the ambit of 2241 and 2242, threatening or placing that other

11  person in fear.

12        I think there is so much evidence in this case to

13  support that.  I think the underlying facts fall within the

14  ambit of the statute.

15        But does either party have Madison with them?

16        MS. VIAMONTES:  I do, Your Honor.

17        THE COURT:  Can I take another look at that, please?

18        MS. VIAMONTES:  Yes.

19        THE COURT:  I didn't remember whether Madison

20  specifically addressed the issue of whether or not the crime

21  occurred within a special maritime and territorial jurisdiction

22  of the United States or a Federal prison.

23        (Brief pause.)

24        THE COURT:  The case does not address the issue raised

25  by Mr. Desir regarding whether or not the crime occurred in the

1  special maritime and special jurisdiction of the United States

2  or in Federal prison.  That issue was not raised.

3          So, if we put Madison aside, what is the Government's

4  support for the implementation of 2A3.1?

5          MS. VIAMONTES:  Your Honor, the fact that the evidence

6  shows that Mackenley Desir used force --

7          THE COURT:  No, I agree with that.  I don't have a

8  problem with the underlying facts supporting the underlying

9  offenses in the statute.  I am just concerned about where it

10  occurred.

11          MS. VIAMONTES:  Judge, I don't believe the cross

12  reference is limited to where it occurred.

13          I think it is the nature and type of crime and the

14  force to have someone engage in sex.  That is what occurred,

15  that is what Mackenley Desir did.  He used force and violence

16  to get them to commit a crime of sex --

17          THE COURT:  I think you are right.  2G1.1(c)(1) cross

18  reference if the offense involved conduct described in 2241 and

19  2242, and clearly the conduct described in 2241 and 2242 is

20  satisfied by the facts of this case, so I am going to overrule

21  the objection.

22          All right.  Next objection.

23          MR. ZACCA:  All right.  Then -- well, if we are going

24  to apply 2A3.1, let me refer to my notes.  There are so many

25  nuances to this guideline calculation.

Under 2A -- the next objection I would make is paragraph 40, under victim H.C., specific offense characteristic, which references 2A3.1(3)(b) --

THE COURT: I think the Government agrees with you that that does not apply.

MS. VIAMONTES: Correct.

THE COURT: So, sustained.

MR. ZACCA: The next objection is paragraph 41, which is 2A3.1(b)(5). I objected to the four-level increase because of the victim being abducted.

I don't know of any evidence presented that H.C. was abducted as defined by the guidelines. And I think in my -- yes, abducted.

MS. VIAMONTES: Judge, I stipulate that I didn't present evidence that H.C. was abducted; however, as to B.V. and C.J., I will argue they were.

THE COURT: All right. Sustained as to 41.

MR. ZACCA: The next adjustment, paragraph 43, a two-level adjustment for role. I did not hear any evidence that -- well, hold on. Let me think this through, Judge.

I assume the Government is going to be asking for role based on the allegation that Mr. Desir directed Ms. Rembert to strike H.C. Is that correct?

MS. VIAMONTES: That is correct, Your Honor.

MR. ZACCA: I object to the facts of that.

1    If Your Honor found by a preponderance of evidence

2  that those facts exist, then I don't have a legal argument to

3  say that that doesn't constitute role, but I do object to the

4  underlying facts and the method used to prove those facts.

5    THE COURT:  The Court finds that the underlying facts

6  do establish that Mr. Desir was an organizer, leader, manager

7  or supervisor, therefore the two level enhancement under

8  section 3B1.1(c) will apply.

9    MR. ZACCA:  Well, Judge, at that point, we are left

10  with an offense level of 32 for H.C., after going through that

11  exercise.

12    THE COURT:  Okay.

13    MR. ZACCA:  We can skip J.D. and J.T., and go directly

14  to B.V., which is page 12, 58.  Okay.

15    Now, my objection here, Judge -- and again, let me

16  catch up with myself and look at my objections and my notes.

17    THE COURT:  Now, B.V. was a minor.

18    MR. ZACCA:  Yes, Judge.  What I objected to in that

19  case, 18 U.S.C. 1591, offense of conviction, two ways to commit

20  that, coerce, force or use fraud to cause a person to commit a

21  commercial sex act or cause somebody under the age of 18 to

22  commit a commercial sex act.

23    I am not saying B.V. wasn't 17 at the time she met

24  Mr. Desir.  That is uncontested.

25    What I am arguing, Judge, is the specific offense that

1   he was convicted of pursuant to the language of the indictment

2   is the first prong, causing a person through force or fraud to

3   commit a commercial sex act.

4          He wasn't proven guilty under the second prong of

5   causing a person under the age of 18 to commit a commercial sex

6   act, and therefore I believe the applicable guideline provision

7   is 2G1.1 as opposed to 2G1.3.

8          THE COURT:  Ms. Viamontes.

9          MS. VIAMONTES:  Your Honor, I don't think it is

10  relevant or important the way the Government chose to present

11  its case and indict the case.  The facts remain and adduced at

12  trial and the jury came back guilty that B.V. was 17 years of

13  age when Mr. Desir began to force her to commit commercial sex

14  acts, and that is important.  The Court is to consider all of

15  the evidence to come to a just sentence in this case and apply

16  the appropriate guidelines.

17         The appropriate guidelines show a two-level

18  enhancement should be applied if it involved a minor, just like

19  if we don't charge use of a computer in our indictment, but if

20  the Court finds a computer was used, the Court adds a two-level

21  enhancement.

22         Our charging decision doesn't affect the enhancement

23  in the case.  It is what the evidence showed and what the

24  credible evidence was in the case.

25         THE COURT:  I think we are on 46.

```
1          MS. VIAMONTES:  Right.  I am making an analogy,
2   enhancements don't have to be charged in the indictment.  The
3   fact that we didn't charge in the indictment she was a minor,
4   the fact she was 17, that was presented in the trial.
5          The evidence was clear that B.V. was, in fact, 17 when
6   he began to force her to commit commercial sex acts.
7          THE COURT:  All right.  The Court finds by a
8   preponderance of the evidence that Section 2G1.1 would apply,
9   and, therefore, the base offense level will be 34.
10         Next objection.
11         PROBATION OFFICER:  Your Honor, just to clarify, I'm
12  sorry, the guideline cited in the PSR is 2G1.3.  Are you saying
13  that is correctly applied?
14         THE COURT:  I'm sorry, I'm sorry.  I am saying that
15  2G1.3(a)(1) would apply.  It comes out to the same base offense
16  level.
17         2G1.3, the Court finds by a preponderance of the
18  evidence that that section would apply.
19         MS. VIAMONTES:  Your Honor, I think defense counsel
20  was arguing paragraph 60, and that is the argument I had in
21  rebuttal to paragraph 60.
22         Right?
23         MR. ZACCA:  Well --
24         MS. VIAMONTES:  Is that what you are arguing?
25         MR. ZACCA:  Judge, you addressed my objection.  You
```

1     overruled my objection, that the applicable section is 2G1.1.

2     You overruled that objection and found that 2G1.3 is the

3     applicable starting point in determining the guideline offense

4     level with regard to B.V., as I understand it, Your Honor.

5           THE COURT:  Yes.  Just for the record, the base

6     offense level for victim B.V. is paragraph 58.

7           What I had initially been referring to was 46 which

8     was victim J.D. which we are not considering.  So, that was the

9     confusion there.

10          MR. ZACCA:  That is okay.

11          THE COURT:  Now, paragraph 59, I think the Government

12     agrees that that should not be included.

13          MS. VIAMONTES:  Correct, Your Honor.

14          THE COURT:  So 59, custody, care or supervisory

15     control enhancement, the objection will be sustained.

16          MR. ZACCA:  Very well, Judge.

17          That brings us to paragraph 60, that the defendant

18     unduly influenced a minor to engage in prohibited sexual

19     conduct.

20          I object to the underlying facts and argue there is a

21     lack of evidence to support that finding.  If this Court were

22     to find by a preponderance of the evidence that there were

23     sufficient facts to show that Mr. Desir unduly influenced a

24     minor to engage in prohibited sexual conduct, then I don't have

25     a legal argument.

1     THE COURT:  The Court finds by a preponderance of the

2  evidence Mr. Desir unduly influenced a minor.  2G1.3(b)(2)(B)

3  is overruled.

4     MR. ZACCA:  Paragraph 61 is the next objection, and in

5  my sentencing memorandum, I objected to it in my initial

6  objections, but I further elaborate on it in the sentencing

7  memorandum with regard to paragraph 61.

8     While the Government presented evidence of the

9  internet being used to advertise B.V. during trial, I believe

10  that all happened when she tuned 18.  She turned 18 on January

11  11, 19 -- excuse me, turned 18 on January 11, 2008.

12     As I recall the testimony, B.V. testified that she was

13  at this attachment to the home and there is where she slept

14  with, you know, various individuals, I think some Publix

15  co-workers, something to that effect, but there was no evidence

16  presented that the computer or the internet, for that matter,

17  was used to promote her to commit commercial sex acts until

18  after she turned 18.

19     If that is the case, that two-level adjustment would

20  not be applicable.

21     THE COURT:  All right.  Ms. Viamontes.

22     MS. VIAMONTES:  One second, Your Honor.

23     Your Honor, although I think it is clear that the

24  defendant did use a computer to solicit and promote the victims

25  to engage in commercial sex acts, I think defense counsel is

1  right.  The evidence adduced at trial of the Craig's List posts

2  were after B.V. turned 18 years of age.  So, at this point, I

3  would stipulate to that.

4          THE COURT:  The objection to the enhancement with

5  respect to paragraph 61 is sustained.

6          MR. ZACCA:  The next objection, again, I would object

7  to the underlying facts and argue there are insufficient facts

8  to even consider this adjustment under paragraph 62.

9          I also want to point out, Judge, it is almost like

10  double dipping, you know.  2G1.3, the guideline section itself

11  is defined as promoting a commercial sex act and prohibited

12  sexual conduct starts at a very high offense level, and

13  paragraph 60 punishes the defendant for influencing a minor to

14  engage in prohibited sexual conduct, and then paragraph 62 is

15  punishing the defendant again for the offense involving the

16  commission of a sex act.

17          It is like double dipping, triple dipping.  I want to

18  point that out, and I think that is a fundamental problem with

19  this section, and I object to it.

20          THE COURT:  The objection to paragraph 62 will be

21  overruled.

22          The Court finds by a preponderance of the evidence

23  that the offense involved commission of a sex act or consensual

24  contact.  The Court overrules the objection regarding double

25  dipping.

1     MR. ZACCA:  Paragraph 64, adjustment for role in the

2  offense, I don't believe there are sufficient facts to support

3  a role adjustment for B.V. in particular.  There was only

4  evidence presented between B.V. and Mr. Desir.  There wasn't

5  Ms. Rembert involved in this time period or another character

6  involved in this time period.  Therefore, I believe the role as

7  applied to B.V. is inapplicable.

8     THE COURT:  What say the Government?

9     MS. VIAMONTES:  The defense is accurate on that, at

10 this point Genet Rembert was not involved in this conspiracy.

11 I have no evidence to rebut that.

12    THE COURT:  Sustained as to the enhancement paragraph

13 64.

14    So, it knocks off six, so that gives us what, 38?

15    MR. ZACCA:  Yes.

16    THE COURT:  Okay, next objection.

17    MR. ZACCA:  Going to paragraph 67, victim S.D.,

18 again, the cross reference applies.  I object to the cross

19 reference, and I will sum it up, Judge.  Paragraph 68 adds four

20 levels under the cross reference because the offense involved

21 conduct described in 2241(a) and (b).

22    So, with regard to paragraph 67 and paragraph 68, we

23 object.  We believe the cross reference is not applicable.

24 With regard to paragraph 68, we believe, based on my earlier

25 argument, the conduct does not involve conduct under 18 U.S.C.

```
 1   2241.
 2           MS. VIAMONTES:  Your Honor, I will rely on my prior
 3   argument.  I think the conduct does -- is similar to the
 4   conduct under 2241(a) or (b), and it should apply for S.D. as
 5   well, the cross reference.
 6           THE COURT:  All right.  The objection as to the base
 7   offense level, 67, and enhancement at 68 will be overruled.
 8   The Court finds by a preponderance of the evidence, as to 67,
 9   that the cross reference to Section 2A3.1 would apply, yielding
10   a base offense level of 30, and as to 68, the Court finds by a
11   preponderance of the evidence that the offense involved conduct
12   described in 18 U.S.C. Section 2241(a) or (b), and the
13   four-level enhancement applies under 2A3.1(b)(1).
14           MR. ZACCA:  That brings us to paragraph 69.  I believe
15   the Government stipulates that is not applicable.
16           MS. VIAMONTES:  Correct.
17           THE COURT:  The objection is sustained as to 69.
18           MR. ZACCA:  Next adjustment, paragraph 71, defense
19   objects.  Again, just like with B.V., no evidence that
20   Mr. Desir led others with regard to victim S.D.
21           MS. VIAMONTES:  That is correct, Your Honor.
22           THE COURT:  Sustained, then, as to 71.
23           So, that gives us an adjusted offense level of 34.
24           MR. ZACCA:  Yes.
25           THE COURT:  Victim C.J.
```

1          MR. ZACCA:  Victim C.J., okay, for the record, we

2    object to the cross reference under paragraph 74 to 2A3.1, and

3    in line with that, paragraph 75, 2A3.1, a four-level

4    adjustment, because the offense involved conduct described in

5    18 U.S.C. 2241, same exact argument.

6          THE COURT:  The objection is overruled for the same

7    reasons given as to victim S.D.

8          MR. ZACCA:  Paragraph 76, I don't believe the

9    Government opposes me on that objection.

10         THE COURT:  Sustained as to 76.

11         MR. ZACCA:  Paragraph 77 adds a four-level increase

12   for abduction.

13         Let me refer to my notes.

14         Judge, under 2A3.1, 2A3.1(b)(5) -- the term

15   "abduction" is defined under 1A -- Section 1B1.1, subsection A,

16   defines abduction.  Abduction is when a victim is forced to

17   accompany an offender to a different location.

18         The classic example is a robber goes into the bank and

19   forces the teller to go back where the vault is and take out

20   all the money.

21         Judge, we object.  I think the trial is clear, C.J.

22   voluntarily went into the car, went down to Hollywood from

23   where she was located in Boca Raton, and was complicit in the

24   drug use based on her history and was -- agreed to prostitute

25   herself in the beginning, and, you know, I guess during her

1    testimony at the time, she says she chose not to do it any

2    more.  There is no evidence of her being transported or

3    abducted or forced to do anything.

4         There is lack of evidence of abduction and therefore,

5    that adjustment does not apply.

6         MS. VIAMONTES:  Your Honor, I strenuously disagree

7    with defense counsel on this point.

8         I think the trial evidence was very clear that C.J.

9    was abducted, although initially the defendant, under false

10   pretenses, takes her from Palm Beach County to Broward County,

11   under the pretense he was going to provide her with drugs.  All

12   the time she was his next victim, he was going to get this

13   young lady to prostitute for him.

14        He abducted her and brought her to an abandoned house

15   and ordered Rembert to beat the living daylights out of her.

16   At that point, he abducted her, took her to an abandoned home,

17   ordered the co-conspirator to beat C.J. and brought her back to

18   Palm Beach, Florida, and threatened that if she left, he would

19   have people looking for her and he would hurt her.

20        He held a gun to her head and convinced her that harm

21   would come her way and he would kill her if she attempted to

22   leave.

23        It is clear he abducted her, even though when she

24   first got in the car with him, maybe she thought she was doing

25   it willingly.

1       THE COURT:  The Court finds that C.J. was forced to

2  accompany Mr. Desir to a different location.  Under application

3  note 1 to Section 1B1.1, that fits the definition of abduction,

4  so the objection will be overruled, and the four-level

5  enhancement in paragraph 77 will apply.  The objection is

6  overruled.

7       MR. ZACCA:  Very well, Judge.  Paragraph 79, again, I

8  object to the underlying facts.  I argue there is a lack of

9  preponderance of evidence and facts supporting the adjustment.

10 I don't have a legal argument.

11      THE COURT:  The Court finds by a preponderance of the

12 evidence the defendant was an organizer, leader, manager,

13 supervisor in a criminal activity, therefore Section 3B1.1(c)

14 will apply.  The two-level enhancement applies and the

15 objection is overruled.

16      So, as to C.J., that would give us an adjusted level

17 of 40.

18      Okay.  Ms. Culverson, do you need time?

19      PROBATION OFFICER:  Yes.  Based on your rulings for

20 victim B.V., the cross reference to 2A3.1 may apply depending

21 on what your results would be for specific characteristics.

22 That lowered it enough that the cross reference may result in a

23 higher guideline for that particular victim.

24      THE COURT:  Okay.

25      MR. ZACCA:  As I said, Judge, this is one of the most

1    complicated guideline exercises I have been involved in.  There

2    are a lot of guideline exercises, this is complicated.

3         THE COURT:  Is the Government seeking a higher

4    guideline, first of all; and if so, the Government can explain

5    to the Court why the higher guideline would apply.

6         MS. VIAMONTES:  No, the Government is not seeking a

7    higher guideline.

8         Regardless of what the guidelines are, I am asking the

9    Court to impose a life sentence on Mackenley Desir regardless

10   of what the guidelines are.

11        THE COURT:  Ms. Culverson, do you need a minute?

12        PROBATION OFFICER:  Yes.  In the Government's response

13   she noted enhancement for the bodily jury and vulnerable victim

14   enhancements.  That would affect --

15        MS. VIAMONTES:  I will strike that at this time.  It

16   was untimely filed by me.  I should have filed it as an

17   objection.  I will strike it at this time and ask the Court to

18   not consider those enhancements which could have applied had I

19   filed it in a timely fashion.  I am still going to seek a life

20   sentence.

21        THE COURT:  But certainly those are matters the Court

22   can consider with respect to the statutory factors and nature

23   and circumstances of the offense.

24        MS. VIAMONTES:  Yes.

25        THE COURT:  Ms. Culverson, do you need a couple of

1   minutes?

2          PROBATION OFFICER:  Please.

3          THE COURT:  Take whatever time you need.  We will give

4   Mrs. Stipes a brief break while you are making those

5   computations.

6          (Thereupon, a short recess was taken.)

7          THE COURT:  All right.  The record will reflect that

8   Mr. Desir is present represented by counsel.

9          So, we have a total offense level of 43.  We have a

10  criminal history category of III.  The advisory custodial range

11  is life, probation is not authorized, the supervised release

12  range of five years to life, a fine range of $25,000 to

13  $250,000.  Restitution to be determined and there is a $100

14  special assessment as to each of the three counts of conviction

15  for a total of $300.

16         PROBATION OFFICER:  That is correct.

17         MR. ZACCA:  Judge, I want to point out to the Court I

18  did object to some of the criminal history points that were

19  assessed.

20         In an abundance of caution, can we address it for

21  purposes of the record?  I imagine an appeal will be filed and

22  a lot of the adjustments will be challenged.

23         THE COURT:  All right.  Let's address the criminal

24  history points.

25         The PSI assesses 6 criminal history points in a

1   category III.

2        MR. ZACCA:  The first one, paragraph 98, page 18 of

3   the PSR.

4        THE COURT:  All right.  I am with you.  What page?

5        MR. ZACCA:  Page 16 --

6        THE COURT:  Your objections.

7        MR. ZACCA:  Page 11.

8        Mr. Desir recalls this case being dismissed.  I noted

9   in the pre-sentence report, there are no records available, the

10  circumstances of this case are not available.  I am not too

11  sure if there is a certified conviction or some sort of

12  certified record of this offense because my client, Mr. Desir,

13  says he recalls this case being dismissed.

14       THE COURT:  For the record, this offense is felon in

15  possession of a firearm or ammunition.

16       MR. ZACCA:  No, fleeing and attempt to elude,

17  paragraph 98, one criminal history point.  It references

18  paragraph 98, Judge.

19       THE COURT:  All right.  Ms. Culverson.

20       PROBATION OFFICER:  Although the circumstances were

21  not available, I do have the Court document that reflects

22  adjudication was withheld, but there were fines and costs

23  assessed.  And I also have a printout of the docket sheet as

24  well.

25       THE COURT:  All right.  Have you seen these?

```
 1              MR. ZACCA:  No, sir, I haven't.

 2              THE COURT:  Let me give you an opportunity to look at

 3    them.

 4              MR. ZACCA:  Thank you, sir.

 5              Judge, I showed him the papers, and he is still

 6    maintaining the position that it was dismissed.

 7              My only notation, I think those documents are not

 8    certified, but they speak for themselves.  I have to maintain

 9    that objection based on my client's position, Judge.

10              THE COURT:  All right.  Based upon the Court's review

11    of the docket sheets and court disposition in case number

12    2003-CT-031703A, that the one level -- the one point assessed

13    in paragraph 98 for fleeing or attempting to elude is

14    appropriate and supported by those public records.

15              Let me give this back.

16              All right.  Any other objections?

17              MR. ZACCA:  Last one, paragraph 101 refers to

18    Mr. Desir being assessed three points for felon in possession

19    of a firearm.

20              On page 12 of my objections, I argued this should not

21    be counted as criminal history, rather, it should constitute

22    relevant conduct.  That arose out of an offense involving B.V.

23              The Government -- she testified the gun was found in

24    the same apartment or shed where she committed these commercial

25    sex acts.  She testified she saw Mr. Desir with that gun and
```

1    the Government used a photograph of that gun as evidence

2    proving Count 2 to the jury.

3            It is relevant conduct, not criminal history.  It is

4    part and parcel of the events involving B.V.  It should not be

5    counted.

6            THE COURT:  Ms. Viamontes.

7            MS. VIAMONTES:  He was convicted of that offense prior

8    to going to trial, and prior to the criminal conduct with C.J.

9    The Court should find that is a prior conviction and include

10   those points in determining the defendant's accurate criminal

11   history points.

12           THE COURT:  The Court finds the defendant in

13   possession of a firearm or ammunition, paragraph 101 of the

14   PSI, was a separate offense, and therefore appropriately

15   assigned three points with respect to Mr. Desir's criminal

16   history.

17           All right.  Any other objections?

18           MR. ZACCA:  No, no objections, Judge.

19           THE COURT:  Recommendations?

20           MR. ZACCA:  Who would you like to hear from me first,

21   Judge?

22           THE COURT:  It makes no difference.

23           MS. VIAMONTES:  Your Honor, at this time, I would like

24   to read first a victim impact statement submitted by B.V., and

25   she did not want to be present.  She didn't want to look at

1    Mackenley Desir ever again in her life.  She wanted me to read

2    this.

3            "Dear Judge Cohn" -- it says Coen, but Dear Judge

4    Cohn.

5            THE COURT:  I know who she is talking about.

6            MS. VIAMONTES:  "My name is B.V.  I am a victim in the

7    case.  Through this whole ordeal I could say I have been

8    traumatized by this, not only me, but my family.  Mentally it

9    has affected me.  I will always think about it.  I am and

10   always will be terrified of Mackenley Desir and will not feel

11   safe until he is put behind bars.

12           "I am requesting for him to pay me restitution.  I

13   honestly want Mackenley Desir to get a life sentence.  I

14   believe he would not stop and continue to do the same to other

15   young females if he was given a less sentence.  Your Honor, to

16   this day, I have nightmares what this man has put me through.

17   I relive what happened to me by him in my dreams til this day.

18   Like I said before, this has deeply traumatized me."

19           B.V., dated October 1, 2013.

20           Your Honor, additionally, at this time I call victim

21   C.J. to read her impact statement to the Court.

22           THE COURT:  Okay.

23           For the record, C.J.'s victim impact statement is

24   attached to the Government's sentencing memorandum which the

25   Court has reviewed.  Certainly, I will be more than happy to

1   hear from C.J. at this time.

2            THE WITNESS:  Thank you.

3            THE COURT:  You are welcome.

4            THE WITNESS:  I would like to thank everyone for

5   listening to what I have to say.

6            My name is C.J.  I am 21 years old and I was a victim

7   of sex trafficking when I was 20.  I am no longer a victim.  I

8   am a survivor.

9            I never thought that using drugs and moving down to

10  Florida would become the nightmares that haunt my dreams today.

11  I never thought that I would want my life to end so badly.

12           Hours before I was released, I thought I was ready for

13  my life to end.  I couldn't believe the person they turned me

14  into.  I wanted to die.  I have tried to make sense of the

15  things I could have and should have done, but I can't.  It's

16  too late.  The damage is already done.

17           I wish this person who hurt me could see the pain and

18  suffering he caused me and who knows how many other girls.  It

19  still wouldn't change how strongly I believe he deserves to

20  suffer, just like I have to suffer, my family has to suffer.

21           They took me and shut me in a room where I was

22  isolated.  They drugged me, sold my body and beat me.  A year

23  later and I am still dealing with the suffering.

24           I can still see the pain that is in my family's eyes.

25  My family now has to look at me and see the torture I've been

1   through.  They have images of the people who have done this to

2   me.  My mother and father both had to go through this trial

3   right next to me, and on top of that, they had to see these two

4   people face to face.  They will never look at me the same way.

5   I will never see myself the same way.

6          Everything I see and hear brings me back to that place

7   of torment.  His dark eyes that are filled with death and

8   shadows follow me wherever I go.  When I sleep, I have mental

9   images of the beating so vivid I relive them frequently.  My

10  nightmares replay the beating where Fire's hands are gripped so

11  tight around my throat I can't breathe.  I wake up in a panic

12  full of anxiety.

13         I was nothing more to them than a means to make money.

14  I wasn't seen as a person.  These people do not care about

15  human life.  I was treated like a caged animal.  I was told

16  what I can and cannot do.

17         My belongings were taken from me.  My dignity was

18  taken from me.  My freedom, gone; innocence, gone; trust, gone;

19  my hope, gone.  And I thought my life was gone, taken by a man

20  who has no good intentions on where he's taking my hopes and

21  dreams, my life.  He took all those things.  He took a part of

22  me and a part of my life and it wasn't his to take.

23         Not only did I have to suffer under his command and

24  misery, but now I have consequences.  I have a drug possession

25  charge and a prostitution charge that show up on my record when

1   I am trying to find a job.

2          My two back teeth have to have root canals from being

3   punched in my jaw and my insurance doesn't cover it, so I

4   literally have to pay for the damage caused.

5          No matter what I do, I will always be reminded of what

6   happened to me.

7          I know I have the dilemma of when I fall in love, do I

8   tell him?  How do I tell him?  My relationships towards people

9   are ruined.  I have to learn all over how to have

10  relationships with people.  All this is burned into my soul.

11  It is now part of who I am.

12         I cannot change what has already happened, but I will

13  live with this for the rest of my life.

14         Sometimes I wonder if Fire thinks about when she beat

15  me.  I looked her dead in the eyes while she was pressing her

16  thumbs harder and harder on my throat, her eyes fixated on mine

17  as they rolled in the back of my head, losing consciousness.

18         I wonder if Daddy ever thinks about teaching me how to

19  prostitute and calling me names and slapping me for not

20  knowing.  Does he think about holding a gun to my head and

21  seeing my eyes lose all hope for life?

22         I will always have these questions and memories, but

23  today I have hope.

24         These people might have won when they captured me, but

25  now I am the one on the top of the mountain looking down, and I

1  will be finished after I read this and they will be the ones

2  thinking of me and suffering.

3        I am a survivor.  I am just one of these girls able to

4  stand here today.  It kills me to know that the day I left,

5  there had been numerous other girls who don't have the chance

6  to speak what needs to be told about these people.  That is

7  what gives me the strength today for all the voices that can't.

8        These people who under estimated me, I am sure they

9  never thought the weak, vulnerable inexperienced girl from

10  Vermont would be here telling the story of what happened and

11  them being convicted.

12        I will do whatever it takes for these people to pay

13  for the damage caused.  I think I have already shown that by

14  following through with this trial.

15        I am not looking for revenge, just justice to be

16  served.  These people who held me hostage and beat me and used

17  my body to make money deserve the maximum sentences, with

18  strict treatment, with no privileges, because I believe if

19  given the choice today, they would go back to treating women

20  like caged animals.  They don't see women as humans or even

21  pets.

22        I was hunted and preyed upon like I was the lion's

23  meals.  It disgusts me to know I am not the only girl they did

24  this to.

25        Today I am a stronger person and thank every new day I

1    wake up I am alive.

2          I need some water.

3          I am sober and I plan to stay this way.  I go to

4    therapy and take medicine to help heal what has been broken.

5    This made me want to turn my positive outlook on things to

6    something that means a lot more.

7          I want to share my story to young girls and other

8    women, to provide information to help young girls and others,

9    to help others from sex trafficking and help more of them to

10   become comfortable to talk about their stories.

11         I have these memories, but I will no longer be a

12   prisoner to them, and no other women can be prisoners either.

13   They are the prisoners now.

14         THE COURT:  Thank you very much, Ms. C.J.

15         MS. VIAMONTES:  Your Honor, as I stated in my

16   sentencing memorandum, Judge, the United States submits the

17   only just sentence in this case is life imprisonment.  This

18   Court needs to incapacitate this man.  During the trial, toward

19   the end, before closing arguments, he stood up and yelled

20   before the jury that I was trying to make him look like a

21   monster.

22         I was trying to show the jury what he did.  He is a

23   monster, he should not be allowed to walk among free people.

24   He should not be given the opportunity to violate women ever

25   again, not here, not in Haiti, not anywhere in the world.

1    The only just sentence is life to incapacitate this

2  man.  I would be asking for it regardless of what the

3  guidelines are, Your Honor.  Luckily, the guidelines reflect a

4  reasonable sentence is life in prison.  Regardless of what the

5  sentencing guidelines were, I would be asking for the maximum

6  statutory sentence in this case, life.

7    I can't imagine how the Court could deviate from the

8  advisory guidelines.  The case spoke for itself, and I rest on

9  my written document along with the victim impact statement.

10    THE COURT:  Mr. Zacca.

11    MR. ZACCA:  Judge, despite what the guidelines call

12  for, I am asking for a below guideline sentence or anything

13  less than life.

14    In my two sentencing memorandums I filed, one was --

15  the main one, and I supplemented it, Judge, I pointed out and

16  included a letter that I received from Mr. Desir's brother

17  earlier this past week.

18    Mr. Desir's brother wrote it on behalf of the family

19  and I included it as an exhibit to the sentencing memorandum,

20  how the entire family grew up below average.  The PSR

21  references below average economic conditions.  Gregory Desir

22  described it much worse, impoverished conditions in Haiti.

23    He used the words that they felt hopeless and helpless

24  at times growing up.

25    Mr. Desir grew up in difficult times in Haiti before

1    he came to the United States.  I ask you to consider that as

2    far as his background is concerned.

3           While this Court is beholding to administer justice, I

4    think any court of law should temper that justice with mercy.

5    I ask you to consider mercy and ask you to consider the fact

6    that he had a difficult upbringing.

7           Judge, as part of, also, my sentencing memorandum I

8    did two analyses.  On Pacer I looked up for the past 10 years

9    all cases -- or similar types of offenses to 18, 1591.  I typed

10   in 18 U.S.C. 1591 in Pacer, and of 57 defendants, 44 have been

11   closed.  That is part of the chart I included in the first

12   sentencing memorandum.

13          The more I thought about it, I didn't want to be

14   accused of making a tangerine to orange argument, I wanted to

15   make an orange to orange argument, and that led me to the

16   filing of my supplemental memorandum.  I only included

17   sentences for the past 10 years for 1591.

18          The difference is not that much.  The average sentence

19   is 148 months -- excuse me, 180 months, 15 years, the median is

20   148 months.  I did not include the four life sentences handed

21   down.  I don't know how to calculate a life sentence when you

22   do an average sentence.

23          Looking at those cases, those were particularly

24   heinous in the facts, I think distinguishable from our case.

25   There is no excusing the conduct in this case, absolutely not;

1    nonetheless, I ask you to consider some leniency and some mercy

2    and hand down a sentence below life.

3           THE COURT:  Mr. Desir, do you wish to be heard, sir?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Sure.

6           THE DEFENDANT:  Your Honor, I don't know what type

7    person, what type human being who know, who stand up in the

8    front of public and make false allegations and knowing you are

9    taking somebody's life.

10          Your Honor, today, Your Honor, I plead not guilty to

11   the charges brought against me, and today nothing has changed.

12   I am still -- sorry -- maintaining my innocence.

13          I am not guilty, not guilty of the heinous crime of

14   sex trafficking, not guilty of coercing women to perform sexual

15   acts for my personal gain, not guilty of promoting a continuing

16   criminal enterprise.

17          In fact, the only crime I am guilty of is allowing the

18   Department of Justice to railroad me into prison.

19          I found countless to exercise my right to testify on

20   my behalf.  Instead, my lawyer decided to appoint me not to

21   testify.  These allegations against me go unanswered.

22          It is the defendant's right to testify and I address

23   his accusers in open court.  Justice has been perverted by

24   allowing false allegations to go unchallenged.  This not only

25   violates my criminal rights, but my human rights.

 1           It will be in the form of an appeal and civil rights

 2    complaints against specific officers of this Court, so today

 3    you are knowingly sentencing an innocent man to prison for a

 4    crime I couldn't have committed, which can be proven by my

 5    record of incarceration during the time frame of these alleged

 6    criminal activities.

 7           Furthermore, a material witness that was beneficial to

 8    my defense was not called to testify, and evidence that was

 9    favorable to my defense was withheld by the prosecution.

10           Those female were prostituting themselves prior to

11    meeting me and continue to do so, Your Honor.

12           I am asking you to please be lenient in my sentence.

13    May God have mercy on those who trespass against me.

14           THE COURT:  The Court has considered the statements of

15    all parties, including the victim impact statements of C.J. and

16    B.V.

17           The Court has considered the pre-sentence report which

18    contains the advisory guidelines, as well as each of the

19    factors set forth in 18 United States Code, Section 3553(a).

20           It is the finding of this Court that Mr. Desir is

21    financially unable to pay a fine.

22           Let me, first of all, say to C.J.,  C.J., you are to

23    be commended for your strength and courage in coming into court

24    and addressing Mr. Desir face-to-face and telling us all what

25    you went through and what you are still going through as a

1    result of the deplorable crimes committed by Mr. Desir.

2          Mr. Desir, ironically, talks about human rights and

3    civil rights for himself, but he certainly had no consideration

4    for the human rights and civil rights of C.J. and B.V. and H.C.

5    and S.D.

6          This is such a sad case.  It is a sad case because

7    Mr. Desir preyed on the most vulnerable members of our society,

8    addicts, runaways and foster children, people who were looking

9    for someone to just show interest in them, someone who would

10   show them a little love, and Mr. Desir did.  And then, once he

11   had these victims in the palm of his hand, then he started

12   using them, using them as his property, and he took their

13   driver's licenses, identifications, cell phones.  He brain

14   washed them.  Call me Daddy.

15         When C.J. testified, she couldn't help -- still

16   couldn't help but refer to Mr. Desir as Daddy.

17         He is a master manipulator.  He knows more about brain

18   washing probably than many of the members of our military.

19         He used these people as his property and even branded

20   some of these young women with the Desir brand just like cattle

21   to show everybody that they are his property.  And, you know, a

22   picture is worth a thousand words.

23         You look at the pictures of all of these young women

24   who were beaten.  Beaten why?  Why were they beaten?  To keep

25   them in line, to make sure they were working and bringing home

 1   the money that Mr. Desir desired.

 2          The 911 call that was introduced this morning

 3   regarding S.D., the mother of S.D. that made the call, "I'm so

 4   scared, he is going to kill me."  You could hear the terror in

 5   that voice, and then you kept hearing the beating at the door.

 6   This is the kind of person we are dealing with here.

 7          It's just cruel torture what you put these women

 8   through, Mr. Desir.

 9          You can make all the statements in the world about how

10   pious you are, going to church, it is all part of your

11   manipulation, and we all -- we all see through it now, and you

12   are not going to be able to hurt any more women for the rest of

13   your life, and you can think about it.

14          It is the judgment of this Court that the defendant

15   Mackenley Desir is hereby committed to the custody of the

16   Bureau of Prisons to be imprisoned for life.  This sentence

17   consist of terms of life to Counts 1, 2 and 3, to be served

18   concurrently.

19          Pursuant to 18 U.S.C. 3634(d)(5), the victims' losses

20   are not yet ascertainable.

21          Ms. Tompkins, the restitution date?

22          THE COURTROOM DEPUTY:  December 9th, 11:30 a.m.

23          THE COURT:  Upon release from imprisonment, the

24   defendant shall be placed on a term of supervised release for

25   life as to Counts 1, 2 and 3, all to run concurrently.

1    Within 72 hours of release from the Bureau of Prisons,
2  the defendant shall report in person to the Probation Office in
3  the district to which he is released.
4    While on supervised release, the defendant shall not
5  commit any crimes, shall be prohibited from possessing a
6  firearm or other dangerous devices, shall not possess a
7  controlled substance, shall cooperate in the collection of DNA
8  and comply with the standard conditions of supervised release
9  including the following special conditions:
10    Surrendering to Immigration for removal after
11 imprisonment, anger control, domestic violence treatment,
12 mental health treatment, financial disclosure requirement, self
13 employment restriction, no new debt restriction, no supervision
14 with minors, no contact with minors, no involvement in youth
15 organizations, sex offender treatment, restriction from
16 possession of sexual materials, the Adam Walsh Act search
17 condition and sex offender registration, all as noted in Part G
18 of the pre-sentence report.
19    Additionally, the defendant is ordered to pay
20 immediately to the United States a special assessment of $100
21 as to each of Counts 1, 2 and 3, for a total of $300.
22    The total sentence is life imprisonment, life
23 supervised release and a $300 special assessment.
24    Now that sentence has been imposed, does the defendant
25 or his counsel object to the Court's finding of fact or to the

```
 1   manner in which sentence was pronounced?

 2           MR. ZACCA:  For purposes of appeal, yes.

 3           THE COURT:  Let me advise you that you do have a right

 4   to appeal the sentence imposed.  Any Notice of Appeal must be

 5   filed within 14 days after entry of judgment.  If you are

 6   unable to pay for the cost of appeal, you may apply for leave

 7   to appeal in forma pauperis.

 8           That will conclude this hearing.

 9           MR. ZACCA:  Judge, if I may, one thing.

10           THE COURT:  Sure.

11           MR. ZACCA:  You indicated you were going to appoint

12   new counsel for appeal purposes.

13           I have indicated to Mr. Desir, as is his wish, he will

14   get a new lawyer to represent him for appeal.

15           I don't know how --

16           THE COURT:  You need to file your motion to withdraw

17   with Judge Seltzer.

18           Val, would you let Judge Seltzer's chambers know I

19   want new counsel appointed.

20           MR. ZACCA:  I will file a motion to withdraw, and I

21   assume the new attorney will handle the restitution hearing on

22   December 9th, or if you want me to stay for that, I will handle

23   that.

24           THE COURT:  Stay for that, but let's get a different

25   lawyer appointed for appeal.
```

1    MR. ZACCA:  Very well.  Okay.

2    THE COURT:  Thank you all.

3    (Thereupon, the hearing was concluded.)

4                  C E R T I F I C A T E

5    I hereby certify that the foregoing is an accurate

6    transcription of proceedings in the above-entitled matter.

7

     November 11, 2013          \s\ Pauline Stipes

8    _____          _____
         DATE                   PAULINE STIPES, RPR
9                               Official United States Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

abandoned 1710:14,16
abducted 1700:10,12,13,15 1710:3
1710:9,14,16,23
abduction 1709:12,15,16,16
1710:4 1711:3
able 1654:17,20 1666:22 1668:20
1681:14 1721:3 1728:12
above-entitled 1731:6
absolutely 1724:25
abundance 1713:20
accept 1651:22
accommodate 1670:9
accompany 1709:17 1711:2
accurate 1653:1 1707:9 1716:10
1731:5
accurately 1658:5 1662:24
accusations 1682:2
accused 1724:14
accusers 1725:23
acknowledge 1698:2
act 1701:21,22 1702:3,6 1706:11
1706:16,23 1729:16
activities 1726:6
activity 1651:19 1711:13
acts 1650:8 1669:4 1694:18,21
1696:1 1697:12 1702:14 1703:6
1705:17,25 1715:25 1725:15
ad 1667:1,2,4
Adam 1729:16
add 1651:21
addendums 1646:20 1647:1
addict 1668:5,7,8 1689:13
addicts 1727:8
adding 1671:18
addition 1694:21
additional 1654:6 1677:14 1693:24
1694:3
additionally 1650:24 1651:9
1717:20 1729:19
address 1677:20 1696:18 1698:24
1713:20,23 1725:22
addressed 1698:1,7,20 1703:25
addressing 1726:24
adds 1702:20 1707:19 1709:11
adduced 1702:11 1706:1
adjudged 1646:16
adjudication 1714:22
adjusted 1708:23 1711:16
adjustment 1700:18,19 1705:19
1706:8 1707:1,3 1708:18 1709:4
1710:5 1711:9
adjustments 1695:2 1713:22
administer 1724:3
admissible 1655:7
admit 1670:2,5
admitted 1651:2 1667:21 1673:5
ads 1666:22,25
advertise 1705:9
advise 1730:3
advised 1679:3
advisory 1713:10 1723:8 1726:18
afield 1688:9 1689:17
affect 1686:10 1702:22 1712:14
age 1701:21 1702:5,13 1706:2
agent 1653:18 1654:2,2 1655:9
1656:16 1658:4,23 1659:17,22
1662:15 1664:14 1666:13
1673:14 1675:10 1677:13
ago 1681:16 1685:19
agree 1692:2 1699:7
agreed 1709:24
agrees 1700:4 1704:12
ahead 1649:10 1675:6 1692:18
1696:20
albeit 1696:9
alive 1722:1
allegation 1692:16 1700:22
allegations 1671:3 1682:7,8
1725:8,21,24
alleged 1648:12,18 1649:15
1666:14 1726:5
allegedly 1648:14
allotted 1670:11
allowed 1722:23
allowing 1725:17,24
alluding 1652:22
ambit 1698:10,14
America 1644:4 1646:2

ammunition 1714:15 1716:13
analogy 1703:1
analyses 1724:8
analysis 1647:25 1650:1,4
and/or 1694:17
anger 1723:11
angry 1676:6
animal 1719:15
animals 1721:20
announced 1663:20
answer 1691:20
answered 1681:7
anticipate 1653:10
anxiety 1719:12
apartment 1689:23 1715:24
apologized 1682:2
appeal 1713:21 1726:1 1730:2,4,4
1730:6,7,12,14,25
appear 1668:18
APPEARANCES 1644:13
appeared 1664:17 1665:4
appears 1669:10
applicable 1695:18 1696:11,14
1697:11,21 1702:6 1704:1,3
1705:20 1707:23 1708:15
application 1711:2
applied 1697:9 1702:18 1703:13
1707:7 1712:18
applies 1707:18 1708:13 1711:14
apply 1648:10 1695:2 1696:12
1699:24 1700:5 1701:8 1702:15
1703:8,15,18 1708:4,9 1710:5
1711:5,14,20 1712:5 1730:6
appoint 1725:20 1730:11
appointed 1730:19,25
apprise 1670:16
approach 1656:13 1663:6 1666:9
1674:17 1675:15 1682:20
appropriate 1674:25 1697:6
1702:16,17 1715:14
appropriately 1716:14
argue 1700:16 1704:20 1706:7
1711:8
argued 1648:24 1715:20
argues 1695:17
arguing 1687:21 1701:25 1703:20
1703:24
argument 1648:8 1649:12,18
1651:22 1652:9,13 1653:10
1682:10 1687:9 1694:3 1695:15
1696:13 1701:2 1703:20 1704:25
1707:25 1708:3 1709:5 1711:10
1724:14,15
argumentative 1690:3
arguments 1648:5 1694:13
1722:19
arose 1715:22
arrest 1671:25 1672:2
arrested 1650:23 1652:22 1666:4
1668:13,15,17,21,24 1672:16,22
1676:24 1690:15,18
ascertainable 1728:20
Ashley 1687:16 1689:1,4,6,13,19
1689:20,21,22
aside 1668:17 1699:3
asked 1657:24 1661:23 1669:21
1673:2 1686:10
asking 1667:21 1700:21 1712:8
1723:2,5,12 1726:12
asks 1687:7
assessed 1647:20 1713:19
1714:23 1715:12,18
assesses 1713:25
assessment 1647:15 1713:14
1729:20,23
assigned 1716:15
Assistant 1646:5
associates 1656:2
assume 1700:21 1730:21
attached 1717:24
attachment 1705:13
attempt 1654:6,25 1655:17
1714:16
attempted 1710:21
attempting 1654:24,25 1651:19
1652:19 1656:6 1715:13
attention 1662:16 1666:1 1683:18
attorney 1646:6 1683:8,9 1730:21
Attorney's 1675:24
August 1649:22 1673:24

authenticate 1662:10
authenticating 1657:17
authentication 1658:8 1659:11
authored 1666:11,17,25
authorized 1713:11
available 1714:9,10,21
average 1723:20,21 1724:18,22
avoid 1650:25 1652:19
awaiting 1653:3,6
aware 1650:19 1665:13 1672:12
1676:21,22,24,24 1677:6,7,9
1693:17
awhile 1663:24
A.U.S.A 1644:14

**B**

b 1707:21 1708:4,12
baby 1689:20,20,21
back 1652:3 1665:11 1666:20
1675:2,5 1676:18 1679:24
1681:7 1684:7 1691:24 1692:13
1702:12 1709:19 1710:17
1715:15 1719:6 1720:2,17
1721:19
background 1657:15 1672:9,10
1724:2
Backpage 1666:22,25 1667:1,2
bad 1681:10
badly 1718:11
banging 1691:16 1692:2,4,5
bank 1709:18
bars 1711:21
base 1703:9,15 1704:5 1708:6,10
based 1649:25,25 1652:10 1654:15
1654:25 1658:11 1661:4,6,19,20
1662:6,23 1663:1 1666:12
1669:23 1670:1 1700:22 1707:24
1709:24 1711:19 1715:9,10
Baynor 1683:12
Beach 1651:25 1652:24 1676:22
1677:3 1678:10 1710:10,18
beat 1691:7 1710:15,17 1718:22
1720:14 1721:16
beaten 1667:13 1683:16 1727:24
1727:24,24
beating 1719:9,10 1728:5
began 1702:13 1703:6
beginning 1680:25 1709:25
behalf 1677:14 1673:3 1681:23
1682:1 1693:24 1723:18 1725:20
beholding 1724:3
believe 1648:14 1652:11 1654:8
1664:22 1667:15 1669:8 1675:18
1682:4,5 1686:15 1693:2
1697:19 1699:11 1702:6 1705:9
1707:2,6,23,24 1708:14 1709:8
1717:14 1718:13,19 1721:18
belongings 1719:17
beneficial 1667:2
best 1667:19,20,22 1678:17 1698:7
better 1670:23
beyond 1671:7 1688:8 1689:15
1720:3
binding 1697:2,15
black 1667:14 1685:4
BMW 1685:4
Boca 1709:23
bodily 1712:13
body 1667:18 1681:1 1684:20,20
1686:11,14 1689:2,8 1718:22
1721:17
book 1695:18
Border 1652:4
Boulevard 1644:21
boy 1684:21
Boynton 1683:23
brain 1727:13,17
brand 1727:20
branded 1727:19
brave 1651:11,16
break 1675:2 1688:24 1713:4
breaking 1680:6
breathe 1719:11
bridging 1652:6
brief 1675:1 1678:6,25 1698:23
1713:4
bring 1653:4 1680:13,14,20,22
1685:25 1686:2 1691:10

bringing 1666:14 1727:25
brings 1704:17 1708:14 1719:6
broken 1652:7 1667:15,17 1722:4
brought 1686:1 1710:14,17
1725:11
Broward 1644:21 1710:10
bruises 1691:13
building 1685:6
Bureau 1728:16 1729:1
burglary 1668:15 1672:2,22 1673:8
burned 1720:10
business 1652:15 1685:9 1689:5
B.V 1648:20,20 1649:2,16,20,21
1650:12,17 1651:18 1652:6
1654:6 1664:25 1671:14 1673:21
1673:23 1674:2,10 1685:8,12,13
1685:13 1688:2,6,17 1689:9
1692:22,24 1693:3,6 1700:15
1701:14,17,23 1702:12 1703:5
1704:4,6 1705:9,12 1706:2
1707:3,4,7 1708:19 1711:20
1715:22 1716:4,24 1717:6,19
1726:16 1727:4

**C**

C 1731:4,4
caged 1719:15 1721:20
calculate 1724:21
calculation 1699:25
call 1650:16 1654:17 1656:20,21
1657:4,7,14,15,21,24,25 1658:4
1659:15 1660:7 1662:21,21
1663:14 1681:14,18,19 1684:20
1686:12 1691:22,25 1692:2
1717:20 1723:11 1727:14 1728:2
1728:3
called 1680:11 1684:20 1726:8
calling 1680:19 1720:19
calls 1653:18 1665:2 1688:22
canals 1720:2
can't 1648:24 1698:1 1718:15
1719:11 1721:7 1723:7
captured 1720:24
car 1675:4 1680:9,15 1685:4
1691:25 1709:22 1710:24
care 1692:15 1704:14 1719:14
case 1644:3 1646:2 1651:1,10,12
1652:10,17,20,23 1653:4,7
1654:2,2,5,17 1655:2,6,18
1656:5,11 1662:21 1664:16,23
1665:1 1667:3 1668:17 1671:17
1673:14,15,19,25 1676:1 1692:8
1692:25 1694:7 1696:8,25
1697:5,14,19 1698:12,24
1699:20 1701:19 1702:11,11,15
1702:23,24 1705:19 1714:8,10
1714:13 1715:11 1717:7 1722:17
1723:6,8 1724:24,25 1727:6,6
cases 1724:9,23
cassette 1658:25
catch 1701:16
category 1713:10 1714:1
cattle 1727:20
cause 1684:5,7,8 1690:22,25
1701:20,21
caused 1673:9 1690:24 1718:18
1720:4 1721:13
causing 1702:2,5
caution 1713:20
CD 1658:4
cell 1727:13
Center 1653:2
certain 1682:14
certainly 1648:19 1677:19 1712:21
1717:25 1727:3
certified 1714:11,12 1715:8
certify 1731:5
challenged 1713:22
chambers 1730:18
chance 1721:5
change 1718:19 1720:12
changed 1725:11
character 1707:5
characteristic 1700:3
characteristics 1711:21
charge 1653:6 1654:13,15 1665:11
1668:23 1673:7 1702:19 1703:3
1719:25,25

**charged** 1646:10,13 1650:20
  1703:2
**charges** 1665:8,9 1689:22 1692:25
  1725:11
**charging** 1702:22
**chart** 1724:11
**cheater** 1681:11
**check** 1680:18
**chest** 1667:15,17 1687:13,23
  1688:3
**children** 1727:8
**choice** 1721:19
**choir** 1680:17 1684:21
**choirboy** 1689:25
**chooses** 1679:2
**chose** 1702:10 1710:1
**church** 1680:7,9,10,11,16,20
  1728:10
**Circuit** 1655:6 1695:25 1697:1,9,19
  1697:21,25
**circumstances** 1712:23 1714:10
  1714:20
**cite** 1649:5 1696:3
**cited** 1696:25 1703:12
**civil** 1726:1 1727:3,4
**claimed** 1684:2
**clarify** 1703:11
**classic** 1709:18
**clear** 1649:21 1652:10 1679:3
  1703:5 1705:23 1709:21 1710:8
  1710:23
**clearly** 1699:19
**client** 1663:18 1664:6 1670:15
  1679:3 1714:12
**client's** 1715:9
**closed** 1724:11
**closing** 1722:19
**club** 1684:17
**Code** 1646:12,15 1726:19
**Coen** 1717:3
**coerce** 1701:20
**coercing** 1681:21 1725:14
**coercion** 1646:11,14 1694:17
**coffee** 1680:6
**Cohn** 1644:11 1717:3,4
**collection** 1678:9 1729:7
**college** 1680:10
**color** 1687:16,16
**come** 1651:11,16 1654:8 1655:20
  1656:1,6 1664:23 1666:2,8,19
  1677:20 1679:6 1680:3 1681:12
  1681:21,22,22 1682:1 1684:24
  1688:2 1691:24 1702:15 1703:22
**comes** 1648:23 1659:16 1703:15
**comfortable** 1722:10
**coming** 1651:13 1685:23 1726:23
**command** 1719:23
**commended** 1726:23
**commercial** 1650:8 1669:4
  1694:18,21 1697:8,12 1701:21
  1701:22 1702:3,5,13 1703:6
  1705:17,25 1706:11 1715:24
**commission** 1694:22,22 1706:16
  1706:23
**commit** 1646:10 1650:8 1669:3
  1694:18 1699:16 1701:19,20,22
  1702:3,5,13 1703:6 1705:17
  1729:5
**committed** 1694:10 1715:24
  1726:4 1727:1 1728:15
**common** 1694:19 1695:12
**compact** 1656:20,22
**complaints** 1726:2
**completely** 1648:21
**completes** 1660:3
**complicated** 1712:1,2
**complicit** 1709:23
**comply** 1729:8
**comport** 1696:7
**composite** 1662:17 1663:11
  1678:11 1682:24
**computation** 1647:16 1695:8
**computations** 1713:5
**computer** 1702:19,20 1705:16,24
**conceal** 1651:19
**concede** 1649:13,16,17
**concept** 1652:5
**concerned** 1699:9 1724:2
**conclude** 1730:8
**concluded** 1731:3

**concurred** 1697:3
**concurrently** 1728:18,25
**condition** 1729:17
**conditions** 1723:21,22 1729:8,9
**conduct** 1647:11,12,14,19,24
  1648:1,8,11,12,13,22,24 1649:1
  1649:3,4,6,13,15 1650:1,10,11
  1651:17 1652:20 1664:9,11
  1694:8,11,14,19,19 1695:19,19
  1696:9 1697:8 1699:18,19
  1704:19,24 1706:12,14 1707:21
  1707:25,25 1708:3,4,11 1709:4
  1715:22 1716:3,8 1724:25
**conducting** 1664:18
**confidential** 1651:22
**confirm** 1667:16
**confront** 1655:10
**confrontation** 1655:5 1666:13
**confusion** 1704:9
**connection** 1674:15,16
**consciousness** 1720:17
**consensual** 1706:23
**consequences** 1719:24
**consider** 1694:12 1702:14 1706:8
  1712:18,22 1724:1,5,5 1725:1
**consideration** 1727:3
**considered** 1726:14,17
**considering** 1678:22 1704:8
**consist** 1682:16 1728:17
**conspiracy** 1646:10 1651:5
  1707:10
**constantly** 1690:1,6
**constitute** 1649:5 1694:14 1701:3
  1715:21
**constitutional** 1655:8
**consulted** 1664:6
**contact** 1649:22,24 1706:24
  1729:14
**contained** 1658:4 1662:18 1666:22
**containing** 1663:11
**contains** 1726:18
**contemporaneous** 1669:25
**CONTENTS** 1645:1
**continue** 1652:15 1675:11 1717:14
  1726:11
**continued** 1650:22 1651:18
  1652:14 1664:1 1694:9
**continuing** 1650:23 1651:23
  1652:19,20 1655:4 1666:12
  1725:15
**control** 1704:15 1729:11
**controlled** 1729:7
**conversation** 1663:1 1670:1
  1686:16 1687:10 1689:11
**conversations** 1662:23 1687:4
**convicted** 1650:22 1702:1 1716:7
  1721:11
**conviction** 1648:20,23 1650:3
  1694:20,22 1701:19 1713:14
  1714:11 1716:9
**convince** 1651:11 1655:1 1656:6
  1684:22
**convinced** 1710:20
**cooperate** 1729:7
**copy** 1646:20 1656:20 1678:8,18
  1682:23
**correct** 1648:15 1649:20 1654:3
  1661:5,13,24,25 1662:7,8
  1665:17,24 1667:5 1668:10
  1671:8,10,12,13,15,16,21,24
  1672:1,3,4,7,10,13,17,25 1673:1
  1673:12,21,22 1674:1,3,6,10,11
  1674:13,14 1675:20 1676:23
  1677:2,8 1684:17 1685:24
  1689:4 1692:4,23 1693:1,4,10
  1700:6,23,24 1704:13 1708:16
  1708:21 1713:16
**correctly** 1703:13
**corroborate** 1660:14 1667:6,25
  1668:20,25
**cost** 1730:6
**costs** 1714:22
**couldn't** 1718:13 1726:4 1727:15
  1727:16
**counsel** 1664:19 1668:4 1675:9
  1703:19 1705:25 1710:7 1713:8
  1729:25 1730:12,19
**count** 1646:10 1671:18,21 1672:21
  1716:2
**counted** 1715:21 1716:5

**countless** 1725:19
**counts** 1646:8,13,17 1650:21
  1713:14 1728:17,25 1729:21
**County** 1651:25 1652:24 1676:23
  1677:3 1678:10 1710:10,10
**couple** 1650:11 1674:7 1682:25
  1712:25
**courage** 1726:23
**Courthouse** 1644:21
**courtroom** 1651:13 1728:22
**Court's** 1695:1 1697:3 1715:10
  1729:25
**cover** 1651:7 1694:10 1720:3
**covered** 1691:13
**co-conspirator** 1710:17
**co-worker** 1680:23
**co-workers** 1705:15
**Craig's** 1706:1
**credible** 1702:24
**crime** 1650:25 1651:19 1665:23
  1666:24 1671:5,24 1672:5
  1698:20,25 1699:13,16 1725:13
  1725:17 1726:4
**crimes** 1694:4,10 1696:9 1727:1
  1729:5
**criminal** 1650:22 1651:18,23
  1652:20 1654:12 1672:9 1711:13
  1713:10,18,23,25 1714:17
  1715:21 1716:3,8,10,15 1725:16
  1725:25 1726:6
**cross** 1671:1 1684:14 1695:11,13
  1695:17 1696:12,18 1697:4,5,9
  1697:10,20,22 1699:11,17
  1707:18,18,20,23 1708:5,9
  1709:2 1711:20,22
**cross-examination** 1645:5,8
  1670:25 1675:12 1684:12
**cruel** 1728:7
**Culverson** 1711:18 1712:11,25
  1714:19
**custodial** 1713:10
**custody** 1651:3 1652:14,16,18
  1653:5,6 1692:15 1704:14
  1713:18
**Customs** 1652:4
**cut** 1649:5 1682:5 1686:5
**C.J** 1648:20,22 1649:1 1651:11
  1652:6 1654:6 1667:2 1671:12
  1674:13 1677:15 1690:15,18
  1700:16 1708:25 1709:1,21
  1710:8,17 1711:1,16 1716:8
  1717:21,23 1718:1,6 1722:14
  1726:15,22,22 1727:4,15

**D**

**daddy** 1686:18 1687:3,5,5,6
  1689:20,20,21 1720:18 1727:14
  1727:16
**damage** 1718:16 1720:4 1721:13
**dangerous** 1729:6
**dark** 1719:7
**date** 1646:18 1653:10 1660:23
  1661:20 1676:25 1728:21 1731:8
**dated** 1653:11 1654:23 1717:19
**dates** 1644:14 1650:20
**dating** 1674:5,8
**day** 1660:12 1661:17,18 1679:25
  1680:7 1681:15,18 1686:18
  1687:11 1717:16,17 1721:4,25
**daylights** 1710:15
**days** 1661:17 1730:5
**dead** 1720:15
**dealing** 1659:17 1665:16,23
  1673:23 1718:23 1728:6
**dealings** 1674:2,13
**Deanna** 1679:25 1685:16,17
**Dear** 1717:3,3
**death** 1719:7
**debt** 1729:13
**December** 1648:14,14,18,21
  1649:3 1651:6 1666:20 1667:4
  1669:1 1671:4,9 1728:22
  1730:22
**decided** 1679:4 1681:25 1725:20
**decision** 1702:22
**declarant** 1662:10
**deeply** 1717:18
**defendant** 1644:17 1647:2 1650:15
  1650:21,22 1651:2,12,18

**1652:14** 1679:8 1694:9 1704:17
  1705:24 1706:13,15 1710:9
  1711:12 1716:12 1725:4,6
  1728:14,24 1729:2,4,19,24
**defendants** 1644:8 1724:10
**defendant's** 1654:12 1674:21
  1676:9,12 1678:15 1694:17
  1716:10 1725:22
**Defender** 1683:13
**defense** 1645:14,16 1664:3 1668:4
  1675:18 1676:13 1678:7,16
  1682:17,23 1703:19 1705:25
  1707:9 1708:18 1710:7 1726:8,9
**defense's** 1652:13
**deferred** 1646:18
**defined** 1694:14 1696:11 1698:6
  1700:12 1706:11 1709:15
**defines** 1696:5 1709:16
**definition** 1648:11 1649:4 1696:4,7
  1698:4,5 1711:3
**denied** 1673:3
**Department** 1669:20 1725:18
**depending** 1711:20
**depict** 1662:24
**deplorable** 1727:1
**deportation** 1652:4 1653:3,6
**DEPUTY** 1728:22
**Deric** 1644:17 1646:4
**describe** 1679:21 1683:21
**described** 1695:19 1696:9 1699:18
  1699:19 1707:21 1708:12 1709:4
  1723:22
**description** 1645:12 1647:14
**deserve** 1721:17
**deserves** 1718:19
**design** 1687:25
**Desir** 1644:7,17 1645:6 1646:2,4,7
  1646:17,25 1647:20 1649:22,24
  1650:8,12,18 1651:25 1656:2,7,8
  1665:6 1666:4,6 1668:6,22
  1669:1 1671:4 1672:25 1673:3,6
  1673:24 1675:9 1676:6,22
  1677:7 1678:3,5,9 1679:2,12,16
  1689:25 1693:23,24 1694:12
  1698:25 1699:6,15 1700:22
  1701:6,24 1702:13 1704:23
  1705:2 1707:4 1708:20 1711:2
  1712:9 1713:8 1714:8,12
  1715:18,25 1717:1,10,13
  1723:21,25 1725:3 1726:20,24
  1727:1,2,7,10,16,20 1728:1,8,15
  1730:13
**desired** 1728:1
**desires** 1677:21
**Desir's** 1664:18 1674:2,12 1716:15
  1723:16,18
**despite** 1723:11
**detective** 1660:7 1661:6,8,11,20
  1662:7,20,23 1663:1,22
**detectives** 1669:24 1670:1
**Detention** 1653:2,8
**determine** 1697:23
**determined** 1713:13
**determining** 1648:1 1704:3
  1716:10
**deviate** 1723:7
**devices** 1729:6
**diagnosis** 1667:17
**Diana** 1685:14,16
**didn't** 1651:14 1653:9 1664:22,23
  1669:15 1680:1,3 1681:4,8,25
  1685:2 1686:3 1688:2,19,19,22
  1689:6 1691:3,10,20 1692:5
  1698:19 1700:14 1703:3 1716:25
  1724:13
**die** 1718:14
**difference** 1716:22 1724:18
**different** 1709:17 1711:2 1730:24
**difficult** 1723:25 1724:6
**dignity** 1719:17
**dilemma** 1720:7
**dipping** 1706:10,17,17,25
**dire** 1660:1,4,19,21
**direct** 1645:4,7 1653:25 1662:15
  1666:1 1675:23 1679:14
**directed** 1700:22
**directly** 1701:13
**disagree** 1710:6
**disclosure** 1729:12
**discovery** 1668:4

**discuss** 1666:5
**discussion** 1662:7 1697:23
**disgusts** 1721:23
**dishonest** 1672:24
**dishonesty** 1665:23 1668:15,17,24
    1671:23 1672:5
**disk** 1656:20,22
**dismissed** 1714:8,13 1715:6
**disposition** 1715:11
**distinguishable** 1724:24
**district** 1644:1,1,12 1697:7,20,21
    1697:24 1729:3
**DIVISION** 1644:2
**divorce** 1688:24
**DNA** 1729:7
**docket** 1714:23 1715:11
**document** 1661:5 1675:20,22
    1714:21 1723:9
**documents** 1715:7
**doesn't** 1648:7 1649:3 1652:18
    1677:25 1694:14 1696:7 1701:3
    1702:22 1723:3
**doing** 1683:25,25,25 1710:24
**dollars** 1687:11
**domestic** 1649:23 1654:13,14
    1664:20 1665:8 1673:24 1729:11
**don't** 1653:9,10 1655:9,15 1658:1
    1659:12,18 1664:7 1667:20
    1669:8 1671:7 1674:24 1677:16
    1677:24 1682:3,5,9 1685:22,22
    1685:25 1686:5,5,8 1687:8,15,21
    1687:22 1688:20 1689:17,19,25
    1690:23,23,24 1693:15 1696:15
    1699:7,11 1700:11 1701:2
    1702:9,19 1703:2 1704:24
    1707:2 1709:8 1711:10 1721:5
    1721:20 1724:21 1725:6 1730:15
**door** 1689:16 1691:16,19,23,24
    1692:3,3 1728:5
**double** 1706:10,17,24
**dreams** 1717:17 1718:10 1719:21
**drink** 1683:24
**driver's** 1727:13
**driving** 1685:4
**drop** 1673:9
**dropped** 1654:13 1665:8 1672:21
    1676:1
**dropping** 1692:25
**drove** 1680:7,8
**drug** 1668:5,7,7 1689:13 1709:24
    1719:24
**drugged** 1718:22
**drugs** 1683:25 1684:3,4 1710:11
    1718:9
**dude** 1680:20
**duly** 1679:8
**duplicate** 1682:23
**D-E-S-I-R** 1679:12

**E**

**E** 1644:21 1731:4,4
**ear** 1663:19 1670:15
**earlier** 1659:15 1683:3 1693:3
    1694:13 1707:24 1723:17
**early** 1680:4
**earrings** 1682:6
**ears** 1682:6
**earth** 1682:5
**eat** 1651:22 1680:12
**ECF** 1676:18
**economic** 1723:21
**effect** 1705:15
**either** 1670:18 1697:24 1698:15
    1722:12
**elaborate** 1659:20 1705:6
**element** 1695:24
**elements** 1698:4
**Eleventh** 1655:6 1695:25 1697:1,9
    1697:19,21,25
**ELMO** 1663:8,10 1678:19 1693:12
**elude** 1714:16 1715:13
**email** 1667:1,2,3,4
**employment** 1729:13
**encompass** 1648:11
**enforcement** 1650:16 1690:10
**engage** 1697:12 1699:14 1704:18
    1704:24 1705:25 1706:14
**enhancement** 1701:7 1702:18,21
    1702:22 1704:15 1706:4 1707:12

**enhancements** 1703:2 1712:14,18
**enterprise** 1650:22 1651:23 1652:6
    1725:16
**entertaining** 1677:25
**entire** 1661:4 1662:6 1723:20
**entry** 1730:5
**equipment** 1663:13
**err** 1697:22
**escaped** 1650:12
**ESQ** 1644:17
**essentially** 1649:11 1695:20,21
**establish** 1701:6
**estimated** 1721:8
**event** 1662:4
**events** 1657:22 1673:11 1716:4
**everybody** 1727:21
**evidence** 1645:11 1650:1,14
    1651:2,9,24 1652:23 1653:14
    1654:25 1658:16,20 1659:10
    1660:18 1662:13 1663:3,5,17
    1664:8 1667:19,20,22 1668:25
    1670:6,13 1673:19 1674:9
    1676:10,13 1677:14,17,23
    1678:3,16 1679:16,18 1683:19
    1693:24 1694:17 1698:12 1699:5
    1700:11,15,19 1701:1 1702:15
    1702:23,24 1703:5,8,18 1704:21
    1704:22 1705:22,8,15 1706:1,22
    1707:4,11 1708:8,11,19 1710:2,4
    1710:8 1711:9,12 1716:1 1726:8
**exact** 1697:4 1709:5
**exactly** 1686:22 1692:11
**exaggerated** 1664:22 1665:5
    1676:3
**Examination** 1645:4,7 1653:25
    1660:21 1671:1 1679:14 1684:14
**example** 1709:18
**exception** 1659:16
**excited** 1659:16
**excuse** 1671:4 1694:23 1705:11
    1724:19
**excusing** 1724:25
**exercise** 1701:11 1725:19
**exercises** 1712:1,2
**exerted** 1694:18
**exhibit** 1645:13,14,15,16,17,18
    1656:16 1657:4 1658:16,20,22
    1658:24,25 1659:4,10 1660:18
    1662:11,13,16,18,19 1663:3,4,5
    1663:10,17,21 1669:6,13,18
    1670:3,6 1674:21 1675:19
    1676:13 1678:11,16 1682:17,23
    1723:19
**exhibits** 1645:10 1663:13 1670:23
    1676:16
**exist** 1701:2
**explain** 1679:21 1712:4
**explaining** 1651:4 1676:1,3
**extra** 1697:14
**ex-girlfriend** 1679:24
**eyes** 1667:14 1718:24 1719:7
    1720:15,16,21

**F**

**F** 1731:4
**face** 1719:4,4
**face-to-face** 1726:24
**fact** 1652:7,18 1667:16 1674:12
    1699:5 1703:3,4,5 1724:5
    1725:17 1729:25
**factors** 1712:22 1726:19
**facts** 1652:10 1696:7 1698:9,13
    1699:8,20 1700:25 1701:2,4,4,5
    1702:11 1704:20,23 1706:7,7
    1707:2 1711:8,9 1724:24
**failed** 1686:2
**fall** 1649:3,15 1698:9,13 1720:7
**falls** 1650:1
**false** 1672:16 1682:2 1710:9
    1725:8,24
**familiar** 1657:19 1672:9
**familiarity** 1658:12
**family** 1656:4 1717:8 1718:20,25
    1723:18,20
**family's** 1718:24
**far** 1647:13 1674:6 1688:8 1689:17
    1724:2
**fashion** 1695:3 1712:19

**father** 1686:17,18 1719:2
**favorable** 1726:9
**fear** 1651:15 1656:4 1698:11
**February** 1697:2
**Federal** 1644:21 1653:5 1695:22
    1696:1,10,23 1697:13 1698:22
    1699:2
**feel** 1707:10
**felon** 1714:14 1715:18
**felt** 1723:23
**female** 1659:4 1685:14 1726:10
**females** 1717:15
**figure** 1680:17
**file** 1730:16,20
**filed** 1647:7 1648:6 1671:20
    1693:19 1712:16,16,19 1713:21
    1723:14 1730:5
**filing** 1676:17 1724:16
**filled** 1719:7
**finally** 1650:12
**financial** 1729:12
**financially** 1726:21
**find** 1654:6 1664:24 1666:22
    1689:25 1704:22 1716:9 1720:1
**finding** 1697:10 1704:21 1726:20
    1729:25
**finds** 1694:16 1701:5 1702:20
    1703:7,17 1705:1 1706:22
    1708:8,10 1711:1,11 1716:12
**fine** 1676:19 1678:20 1713:12
    1726:21
**fines** 1714:22
**finger** 1667:15,17
**finished** 1721:1
**Fire** 1720:14
**firearm** 1714:15 1715:19 1716:13
    1725:5
**Fire's** 1719:10
**first** 1647:5,9,18 1666:7 1673:2
    1674:5 1686:10 1695:9,10
    1696:15 1702:2 1710:24 1712:4
    1714:2 1716:20,24 1724:11
    1726:22
**fits** 1711:3
**five** 1681:3,4 1684:9 1713:12
**fixated** 1720:16
**FI** 1644:15,18,22
**fleeing** 1714:16 1715:13
**flipped** 1687:14
**flipping** 1695:18
**Flirt** 1684:20
**Florida** 1644:1,6 1710:18 1718:10
**Folks** 1670:7
**follow** 1719:8
**following** 1721:14 1729:9
**followup** 1682:13
**food** 1680:12,13,14,21,22
**force** 1646:11,11,13,14 1694:17
    1697:11 1699:6,14,15 1701:20
    1702:2,13 1703:6
**forced** 1650:7 1669:3 1709:16
    1710:3 1711:11
**forces** 1709:19
**forcing** 1699:8
**foregoing** 1731:5
**form** 1690:4 1726:1
**forma** 1730:7
**forth** 1653:4 1726:19
**forward** 1651:11 1655:20 1656:1,6
    1664:23 1666:5,8 1697:24
**foster** 1727:8
**found** 1646:7 1664:17 1697:5,19
    1697:20,21 1701:1 1704:2
    1715:23 1725:19
**four** 1707:19 1724:20
**fours** 1697:15
**four-level** 1700:9 1708:13 1709:3
    1711:11 1711:4
**fracture** 1667:15
**frame** 1674:4 1726:5
**Francis** 1644:14 1646:6
**fraud** 1646:11,14 1701:20 1702:2
**free** 1722:23
**freedom** 1719:18
**frequently** 1719:7
**friend** 1680:2 1684:4 1685:3,16
**friends** 1685:4 1690:8
**friend's** 1683:23 1691:25
**front** 1653:9 1691:23 1725:8
**Ft** 1644:2,6,22

**full** 1719:12
**fundamental** 1706:18
**further** 1651:15 1670:24 1677:10
    1684:11 1693:20,22 1705:6
**furtherance** 1650:3
**Furthermore** 1650:19 1726:7
**F.3rd** 1697:1

**G**

**G** 1729:17
**gain** 1725:15
**gang** 1682:3
**gap** 1652:6
**Gene** 1684:4
**Genet** 1644:7 1651:4 1667:14
    1686:13,16 1687:19 1688:16
    1689:8 1691:4,7 1707:10
**Genet's** 1688:6
**getting** 1686:8,22 1687:18,22
    1689:5
**girl** 1679:25 1680:5 1688:4 1721:9
    1721:23
**girls** 1684:22 1718:18 1721:3,5
    1722:7,8
**give** 1653:20 1658:11 1679:10
    1711:16 1713:3 1715:2,15
**given** 1661:1,12 1663:21 1709:7
    1717:15 1721:19 1722:24
**gives** 1707:14 1708:23 1721:7
**gleaned** 1698:8
**go** 1648:18 1649:4,10 1669:15
    1671:7 1675:6 1681:3,5 1684:4
    1685:2 1686:17 1689:17 1692:18
    1695:1,2,3 1696:16,19 1701:13
    1709:19 1719:2,8 1721:19
    1722:3 1725:21,24
**God** 1682:5 1726:13
**goes** 1709:18
**going** 1654:9 1656:1 1657:14,16
    1657:23,25 1663:20 1674:24
    1679:1 1680:2,3 1682:25 1684:7
    1684:21 1687:25 1688:8,20,24
    1695:3 1699:20,23 1700:21
    1701:10 1707:17 1710:11,12
    1712:19 1716:8 1726:25 1728:4
    1728:10,12 1730:1 1731:1
**good** 1719:20
**Government** 1644:14 1645:13,15
    1645:17,18 1646:5 1647:23
    1649:20 1650:5,9,13,20 1651:1,9
    1652:9,22 1653:17 1656:16
    1657:4 1658:15,20,22,24,25
    1659:4,10 1660:17 1662:13,16
    1662:18,19 1663:2,5,9,10,12,13
    1663:16,16,20 1669:6,12 1670:2
    1670:6 1671:20,23 1672:1,24
    1673:5 1677:14 1678:8 1696:17
    1700:4,21 1702:10 1704:11
    1705:8 1707:8 1708:15 1709:9
    1712:3,4,6 1715:23 1716:1
**Government's** 1651:22 1653:19
    1658:18 1669:3 1712:12 1717:24
**Gregory** 1723:21
**grew** 1723:20,25
**gripped** 1719:10
**grounds** 1655:8
**growing** 1684:2 1723:24
**guess** 1709:25
**guidance** 1670:14
**guideline** 1695:18 1696:14
    1699:25 1702:6 1703:12 1704:3
    1706:10 1711:23 1712:1,2,4,5,7
    1723:12
**guidelines** 1648:3 1649:6 1664:15
    1700:12 1702:16,17 1712:8,10
    1723:3,3,5,8,11 1726:18
**guilty** 1646:7,17 1665:16 1672:12
    1702:4,12 1725:10,13,13,14,15
    1725:17
**gun** 1710:20 1715:23,25 1716:1
    1720:20
**guy** 1684:2

**H**

**hair** 1682:5,6 1686:6
**Haiti** 1722:25 1723:22,25
**Haitian** 1680:12
**hand** 1679:7 1698:3 1725:2
    1727:11

**handed** 1656:16 1658:22 1724:20
**handle** 1730:21,22
**hands** 1719:10
**handwritten** 1678:17
**happened** 1668:25 1671:9 1672:19
  1681:6 1687:4 1690:23 1705:10
  1717:17 1720:6,12 1721:10
**happy** 1692:21 1717:25
**hard** 1697:23
**harder** 1720:16,16
**harm** 1710:20
**haunt** 1718:10
**haven't** 1715:1
**head** 1649:14 1710:20 1720:17,20
**heal** 1722:4
**health** 1729:12
**hear** 1647:4 1650:5 1657:15
  1670:18 1692:3 1700:19 1716:20
  1718:1 1719:6 1728:4
**heard** 1652:12 1673:19 1683:15,19
  1725:3
**hearing** 1670:17 1679:16,18
  1686:1 1728:5 1730:8,21 1731:3
**hearings** 1670:8
**hearsay** 1655:5,7,8 1657:20,20
  1662:9 1666:12
**heinous** 1724:24 1725:13
**held** 1710:20 1721:16
**help** 1689:22 1722:4,8,9,9 1727:15
  1727:16
**helpless** 1723:23
**hesitant** 1666:7
**he's** 1719:20
**high** 1706:12
**higher** 1711:23 1712:3,5,7
**history** 1654:12 1709:24 1713:10
  1713:18,24,25 1714:17 1715:21
  1716:3,11,16
**hold** 1700:20
**holding** 1720:20
**Hollywood** 1709:22
**home** 1687:12 1691:10,21 1705:13
  1710:16 1727:25
**honestly** 1717:13
**Honor** 1650:6 1652:11 1653:15,24
  1656:13 1657:12,21 1659:9
  1660:17 1663:7,12,15,24 1664:2
  1664:10,12 1666:9 1670:12,22
  1670:24 1677:12 1678:14 1694:2
  1694:5,11 1696:24 1698:16
  1699:5 1700:24 1701:1 1702:9
  1703:11,19 1704:4,13 1705:22
  1705:23 1708:2,21 1710:6
  1716:23 1717:15,20 1722:15
  1723:3 1725:4,6,10,10 1726:11
**HONORABLE** 1644:11
**hope** 1719:19 1720:21,23
**hopeless** 1723:23
**hopes** 1719:20
**hospital** 1667:6,9,16,19,22,25
  1668:3
**hostage** 1721:16
**hour** 1670:7,11
**hours** 1687:9 1718:12 1729:1
**house** 1680:6 1681:5 1683:23
  1691:16 1710:14
**human** 1719:15 1725:7,25 1727:2
  1727:4
**humans** 1721:20
**hunted** 1721:22
**hurt** 1710:19 1718:17 1728:12
**H.C** 1648:2,7,13,25 1666:1,2,3,17
  1666:20,23 1667:4,7,12,13,25
  1668:5,12,24 1669:7,9,15,20,25
  1671:3,3,12,15,18,21 1672:9,21
  1683:18,19,22,23 1684:5 1690:9
  1690:22 1691:7,7 1694:7,18
  1695:9,11 1696:14,16 1700:2,11
  1700:15,23 1701:10 1727:4

---

### I

**ICE** 1652:3
**idea** 1653:3
**identification** 1645:11 1672:17
**identifications** 1727:13
**identified** 1667:14
**identify** 1659:4
**ignore** 1698:1
**III** 1713:10 1714:1

**images** 1719:1,9
**imagine** 1713:21 1723:7
**immediately** 1729:20
**immigration** 1651:4 1686:17,18,21
  1729:10
**impact** 1716:24 1717:21,23 1723:9
  1726:15
**implementation** 1699:4
**important** 1702:10,14
**impose** 1712:9
**imposed** 1729:24 1730:4
**imposition** 1697:10
**impoverished** 1723:22
**imprisoned** 1728:16
**imprisonment** 1722:17 1728:23
  1729:11,22
**improper** 1657:17 1658:7 1659:11
  1669:14
**inapplicable** 1707:7
**incapacitate** 1722:18 1723:1
**incarcerated** 1651:25 1652:7,24
  1656:9 1689:22 1693:17
**incarceration** 1726:5
**incident** 1649:23 1661:14 1676:25
**include** 1716:9 1724:20
**included** 1694:7 1704:12 1723:16
  1723:19 1724:11,16
**including** 1646:20 1726:15 1729:9
**incorporated** 1648:2
**increase** 1700:9 1709:11
**indicated** 1653:13 1730:11,13
**indicating** 1692:7
**indict** 1702:11
**indicted** 1653:5 1656:10
**indictment** 1646:9 1648:17,18
  1650:21 1653:4 1668:9,12
  1671:18,21 1673:9 1702:1,19
  1703:2,3
**individuals** 1705:14
**inexperienced** 1721:9
**inflict** 1691:4
**influenced** 1704:18,23 1705:2
**influencing** 1706:13
**information** 1654:11,16 1722:8
**initial** 1647:22 1705:5
**initially** 1650:6 1657:4,10 1673:3
  1704:7 1710:9
**injuries** 1654:22 1667:17 1690:22
  1690:25 1691:1,3,4
**innocence** 1719:18 1725:12
**innocent** 1726:3
**inquire** 1679:13
**instill** 1651:15
**instruct** 1652:15
**instructions** 1695:25
**insufficient** 1706:7
**insurance** 1720:3
**intend** 1655:9
**intention** 1686:3
**intentions** 1719:20
**interaction** 1666:6 1669:23 1671:4
**interest** 1727:2
**interesting** 1697:19
**internet** 1705:9,16
**interpreter** 1664:3
**interview** 1660:7
**introduced** 1677:4 1728:2
**investigating** 1653:3
**investigation** 1646:18 1654:5
  1666:19 1669:23 1673:5
**involve** 1686:8 1707:25
**involved** 1650:2 1659:18 1695:19
  1697:8 1699:18 1702:18 1706:23
  1707:5,6,10,20 1708:11 1709:4
  1712:1
**involvement** 1668:22 1729:14
**involving** 1649:1 1671:12,14,18,21
  1672:2,21 1673:11 1706:15
  1715:22 1716:4
**ironically** 1727:2
**isn't** 1685:1,9 1690:7,10,16,19
  1691:7,11,13,17 1692:9
**isolated** 1718:22
**issue** 1647:18 1697:4,24 1698:20
  1698:24 1699:2
**it's** 1695:15 1718:15 1728:7
**I'll** 1678:18
**I'm** 1649:14 1654:14 1663:18
  1674:4 1686:15 1687:23 1695:3
  1703:11,14,14 1728:3

**I've** 1718:25

---

### J

**jail** 1652:1,12,24 1653:1 1676:23
  1677:1,3,8 1678:10 1681:6,15
  1682:15 1683:4,7 1686:12
  1687:17,18 1688:22 1693:19
**JAMES** 1644:11
**January** 1705:10,11
**jaw** 1720:3
**jealous** 1665:5 1680:19
**job** 1680:13,14,20 1720:1
**Joe** 1680:3
**judge** 1644:12 1647:8,18 1648:19
  1650:4 1651:21 1652:21 1653:12
  1655:3,5 1657:17 1660:5 1664:6
  1665:2 1666:11 1670:14,20,21
  1674:17 1675:13,15 1676:14,17
  1677:10 1678:7 1682:20 1684:11
  1684:13 1686:24 1693:25
  1694:13 1695:15 1697:20,20
  1699:11 1700:14,20 1701:9,15
  1701:18,25 1703:25 1704:16
  1706:9 1707:19 1709:14,21
  1711:7,25 1713:17 1714:18
  1715:5,9 1716:18,17 1717:3,3
  1722:16 1723:11,15 1724:7
  1730:9,17,18
**judgment** 1728:14 1730:5
**June** 1648:22 1649:2 1672:13
**jurisdiction** 1695:22,23 1696:2,3,6
  1696:10,22 1697:14 1698:6,21
  1699:1
**jury** 1646:8 1695:25 1702:12
  1712:13 1716:2 1722:20,22
**jury's** 1646:16
**justice** 1652:17 1721:15 1724:3,4
  1725:18,23
**J.D** 1647:24 1701:13 1704:8
**J.T** 1647:24 1701:13

---

### K

**keep** 1649:14 1670:10 1674:25
  1687:3,4,21 1689:18 1727:24
**kept** 1728:5
**key** 1680:3 1695:24
**kill** 1710:21 1728:4
**kills** 1721:4
**kind** 1680:18 1681:20,20 1728:6
**knew** 1656:2 1685:23 1692:11
**knock** 1692:5,7
**knocked** 1691:19
**knocking** 1692:6
**knocks** 1707:14
**know** 1653:10 1655:6 1659:12,18
  1659:22 1661:16 1662:3 1672:19
  1674:6,9 1677:16 1680:1,3
  1681:2,4,11 1682:4,9 1684:2
  1685:22 1687:15,15,16,20,21
  1687:22 1688:2 1689:19 1690:23
  1691:3,20,22 1696:15 1700:11
  1705:14 1706:10 1709:25 1717:5
  1720:7 1721:4,23 1724:21
  1725:6,7 1727:21 1730:15,18
**knowing** 1720:20 1725:8
**knowingly** 1726:3
**knows** 1718:18 1727:17
**Krome** 1653:2,8

---

### L

**lack** 1724:21 1710:4 1711:8
**lady** 1710:13
**laid** 1648:8
**language** 1702:1
**late** 1651:6 1718:16
**Lauderdale** 1644:2,6,22
**law** 1650:16 1655:6 1690:9 1724:4
  1725:20 1730:14,25
**lawyer** 1681:7,8,24 1693:18
  1725:20 1730:14,25
**lay** 1648:4 1695:13,15,24 1696:16
**lays** 1695:4
**lead** 1662:20
**leader** 1701:6 1711:12
**learn** 1720:9
**learned** 1685:8,11
**leave** 1684:24 1710:22 1730:6
**leaving** 1671:21
**led** 1654:8 1708:20 1724:15

**left** 1675:18 1680:8 1687:11 1701:9
  1710:18 1721:4
**legal** 1701:2 1704:25 1711:10
**leniency** 1725:1
**lenient** 1726:12
**letter** 1651:2 1656:7,8,10 1664:14
  1664:17,19,22,24,25 1675:23
  1676:8 1677:16,19,21 1681:15
  1685:18,20,21 1686:2 1692:8,19
  1692:22,24,25 1693:3,6,9,12,17
  1723:16
**letters** 1651:12,13 1652:16 1677:7
  1681:7,9 1682:14,16,16,24
  1683:3,6,8 1692:22 1693:15
**let's** 1658:22 1666:25 1689:17,18
  1696:18,19 1713:23 1730:24
**level** 1647:16,17 1695:8 1697:24
  1697:25 1701:7,10 1703:9,16
  1704:4,6 1706:12 1708:7,10,23
  1711:16 1713:9 1715:12
**levels** 1707:20
**liar** 1681:11
**licenses** 1727:13
**life** 1656:1 1692:21 1712:9,19
  1713:11,12 1717:1,13 1718:11
  1718:13 1719:15,19,21,22
  1720:13,21 1722:17 1723:1,4,6
  1723:13 1724:20,21 1725:2,9
  1728:13,16,17,25 1729:22,22
**light** 1694:25
**limitations** 1652:10
**limited** 1699:12
**line** 1654:12,12 1693:6,9,13 1709:3
  1727:25
**lion's** 1721:22
**list** 1647:10 1706:1
**listed** 1695:9
**listen** 1656:21 1687:3 1689:11
**listening** 1718:5
**literally** 1720:4
**little** 1683:24 1689:25 1727:10
**live** 1720:13
**lived** 1656:3
**lives** 1692:12
**living** 1689:23 1710:15
**located** 1709:23
**location** 1709:17 1711:2
**logically** 1648:24
**long** 1681:16 1685:18
**longer** 1649:24 1670:17 1718:7
  1722:11
**look** 1648:10,17 1649:19 1667:9
  1670:23 1678:18,22 1682:24
  1688:6,16 1698:17 1701:16
  1715:2 1716:25 1718:25 1719:4
  1722:20 1727:23
**looked** 1662:25 1720:15 1724:8
**looking** 1678:21 1710:19 1720:25
  1721:15 1724:23 1727:8
**lose** 1720:21
**losing** 1720:17
**losses** 1728:19
**lot** 1659:14 1684:24 1685:6,25
  1712:2 1713:22 1722:6
**loud** 1692:5
**love** 1681:17 1692:20 1720:7
  1727:10
**lowered** 1711:22
**Luckily** 1723:3

---

### M

**Mackenley** 1644:7 1645:6 1646:2
  1650:8,12,18 1656:7 1666:6
  1668:22 1669:1 1679:12 1699:6
  1699:15 1712:9 1717:1,10,13
  1728:15
**Madison** 1697:1,17 1698:1,15,19
  1699:3
**mailed** 1693:18
**main** 1723:15
**maintain** 1715:8
**maintaining** 1715:6 1725:12
**making** 1703:1 1713:4 1724:14
**man** 1717:16 1719:19 1728:17
  1723:2 1726:3
**manager** 1701:6 1711:12
**manipulate** 1652:14
**manipulating** 1651:15
**manipulation** 1728:11

manipulator 1727:17
manner 1730:1
**March** 1652:1 1676:23 1677:1
**maritime** 1695:22 1696:2,5,22
 1698:5,21 1699:1
**Marked** 1645:11
**Martiz** 1685:3
**master** 1727:17
material 1726:7
materials 1729:16
matter 1646:1 1705:16 1720:5
 1731:6
matters 1712:21
maximum 1721:17 1723:5
meals 1721:23
mean 1652:18
means 1719:13 1722:6
median 1724:19
medicine 1722:4
meet 1655:1,17 1666:17 1668:6
meeting 1672:25 1673:3,6 1686:19
 1687:3,5,7 1726:11
members 1727:7,18
memorandum 1648:6,10 1649:19
 1678:9 1694:6 1695:15 1696:25
 1697:18 1705:5,7 1717:24
 1722:16 1723:19 1724:7,12,16
memorandums 1723:14
memories 1720:22 1722:11
memory 1665:19
mental 1719:8 1729:12
**Mentally** 1717:8
mention 1692:16
mentioned 1672:21 1682:14
 1683:3,8 1685:14,18 1686:4
 1689:1,6
mercy 1724:4,5 1725:1 1726:13
met 1668:8,8 1674:7 1681:3,4
 1683:23 1684:1,9 1685:7 1687:5
 1689:19,21 1701:23
method 1701:4
**Miami** 1644:15 1669:20,24
military 1727:18
mine 1679:24 1720:16
minor 1701:17 1702:18 1703:3
 1704:18,24 1705:2 1706:13
minors 1729:14,14
minute 1712:11
minutes 1664:3 1675:5 1681:19
 1713:1
**Miramar** 1644:17,18
misery 1719:24
misinterpret 1686:15
misrepresented 1668:18
missing 1687:4
misspoke 1665:5
mistaken 1648:15
mom 1680:23
moment 1678:4
money 1681:2 1687:13 1691:11
 1709:20 1719:13 1721:17 1728:1
monster 1722:21,23
months 1650:11,15 1674:7 1693:3
 1724:19,19,20
morning 1728:2
mother 1656:8 1657:2,5,10 1658:6
 1658:12 1719:2 1728:3
mother's 1691:16
motion 1693:19 1730:16,20
mountain 1720:25
move 1658:15 1659:9 1660:17
 1670:2 1675:4 1676:9 1678:11
moves 1663:2
moving 1649:7 1718:9
multiple 1655:25

---

### N

naked 1680:1
name 1653:21 1679:10,10 1685:17
 1686:9,11 1687:13,19,23,24,25
 1688:1,2,4,19 1689:1,8 1693:16
 1717:6 1718:6
named 1667:13 1679:25 1680:2
 1684:4 1685:3 1689:20
names 1720:19
narcotics 1690:16
nature 1699:13 1712:22
**NCIC** 1665:14,16 1672:7
**NE** 1644:15

near 1648:18,23
nearly 1652:7
need 1665:19,20 1675:1 1682:18
 1685:25 1711:18 1712:11,25
 1713:3 1722:2 1730:16
needs 1721:6 1722:18
never 1665:11 1681:7 1682:3
 1684:6 1685:13 1686:10,19
 1687:5,6,25 1688:3,5 1692:16,24
 1718:9,11 1719:4,5 1721:9
new 1681:18 1721:25 1729:13
 1730:12,14,19,21
nightmares 1717:16 1718:10
 1719:10
notarized 1693:1,3
notation 1715:7
note 1711:3
noted 1712:13 1714:8 1729:17
notes 1649:21 1699:24 1701:16
 1709:13
notice 1730:4
**November** 1644:7 1649:14,15
 1650:7,11,16 1652:1 1654:23
 1659:25 1660:24 1662:21,25
 1664:21 1669:25 1673:12 1674:6
 1676:23,25 1691:13 1731:7
nuances 1699:25
number 1646:3 1656:24 1675:19
 1681:18 1682:24 1685:20
 1715:11
numerous 1721:5

---

oath 1675:11
object 1648:4 1655:4,8 1670:4
 1700:25 1701:3 1704:20 1706:6
 1706:19 1707:18,23 1709:2,21
 1711:8 1713:18 1729:25
objected 1647:13,15,20 1688:11
 1700:9 1701:18 1705:5
objection 1648:4 1655:4 1658:7,17
 1659:11 1660:1 1662:9,11
 1664:7 1665:2 1666:12,15
 1667:19 1676:11 1677:18
 1678:13 1688:8 1689:15 1690:3
 1694:4,23,24 1695:10,12
 1696:15 1697:4,7 1699:21,22
 1700:1,8 1701:15 1703:10,25
 1704:1,2,15 1705:4 1706:4,6,20
 1706:24 1707:16 1708:6,17
 1709:6,9 1711:4,5,15 1712:17
 1715:9
objections 1647:4,9,17,17 1648:9
 1677:25 1695:14 1696:16
 1701:16 1705:6 1714:6 1715:16
 1715:20 1716:17,18
objects 1708:19
obstruct 1650:24 1652:17
obtain 1662:20 1664:14 1667:6
 1669:18
obtained 1669:19
obvious 1669:16
occasions 1656:25
occur 1695:21 1696:1,21
occurred 1648:13,14,22 1649:2,13
 1652:22 1667:12 1671:4 1673:12
 1694:21 1698:21,25 1699:10,12
 1699:14
occurring 1696:10
**October** 1717:19
odd 1689:25
offender 1709:17 1729:15,17
offense 1647:11,14,16,17 1648:19
 1648:23 1649:1 1650:3 1671:11
 1671:14 1672:13,19 1695:8,19
 1695:24 1696:8 1698:3,4
 1699:18 1700:2 1701:10,19,25
 1703:9,15 1704:3,6 1706:12,15
 1706:23 1707:2,20 1708:7,10,11
 1708:23 1709:4 1712:23 1713:9
 1714:12,14 1715:22 1716:7,14
offenses 1647:23 1694:20,22
 1696:9 1724:9
offer 1653:14 1670:19
office 1675:24 1676:18 1686:18
 1729:2
officer 1657:18 1694:6 1703:11
 1711:19 1712:12 1713:2,16
 1714:20

officers 1726:2
**Official** 1644:20 1731:9
okay 1646:1 1647:3 1650:5
 1653:16 1660:25 1661:22
 1670:20,25 1672:15 1674:24
 1678:24 1682:12,19 1683:2,18
 1686:17 1690:14 1695:6 1701:12
 1701:14 1704:10 1707:16 1709:1
 1711:18,24 1717:22 1731:1
old 1717:9
once 1653:21 1660:1 1681:13
 1727:10
ones 1721:1
ongoing 1652:6
open 1725:23
opened 1689:16
opinion 1658:11 1665:2 1697:2
 1698:2,8
opportunity 1656:21 1658:9
 1665:14 1666:17 1667:9 1715:2
 1722:24
opposed 1702:7
opposes 1709:9
option 1678:22,23 1689:10
orange 1724:14,15,15
ordeal 1717:7
order 1695:4
ordered 1646:17 1691:4,7 1710:15
 1717:17 1729:19
orderly 1695:3
organizations 1729:15
organizer 1701:6 1711:12
outlook 1722:5
outright 1651:14
outs 1691:4
outside 1691:24
overlap 1671:11,14 1674:2,10,12
overrule 1658:13 1699:20
overruled 1655:11 1658:18
 1662:11 1665:3 1666:15 1667:23
 1688:10,11 1689:17 1694:23
 1697:7 1704:1,2 1705:3 1706:21
 1708:7 1709:6 1711:4,6,15
overrules 1706:24
overruling 1697:3

---

### P

**Pacer** 1724:8,10
page 1645:2,12,12 1695:7,7,9
 1701:14 1714:2,4,5,7 1715:20
pages 1663:11
pain 1718:17,24
palm 1651:25 1652:24 1676:22
 1677:3 1678:10 1710:10,18
 1727:11
panic 1719:11
papers 1648:4 1694:14 1695:24
 1696:13 1698:2 1715:5
paperwork 1686:1,17,21
paragraph 1695:11 1700:2,8,18
 1703:20,21 1704:6,11,17 1705:4
 1705:7 1706:5,8,13,14,20 1707:1
 1707:12,17,19,22,22,24 1708:14
 1708:18 1709:2,3,8,11 1711:5,7
 1714:2,17,18 1715:13,17
 1716:13
paragraphs 1647:12,13
parcel 1716:4
parking 1684:24 1685:6
**Parkway** 1644:17
parlor 1684:19 1722:1
part 1694:19 1716:4 1719:21,22
 1720:11 1724:7,11 1728:10
 1729:17
particular 1659:14 1697:23 1707:3
 1711:23
particularly 1724:23
parties 1646:19 1674:22 1726:15
party 1698:15
pass 1670:22
passed 1661:15
**Patrol** 1652:4
pattern 1695:25
**Pauline** 1644:20 1731:7,8
pauperis 1730:7
pause 1678:6,25 1698:23
pay 1717:12 1720:4 1721:12
 1726:21 1729:19 1730:6
**PBCC** 1680:10

pendency 1651:10 1652:12 1654:5
 1656:5 1692:8
pending 1668:10,12
people 1658:5 1670:9 1674:25
 1682:5 1691:20 1692:15 1693:15
 1710:19 1719:1,4,14 1720:8,10
 1720:24 1721:6,8,6,12 1722:23
 1727:8,19
perform 1725:14
period 1652:2 1707:5,6
periods 1648:17
permanent 1675:4
**Permission** 1663:6 1669:12
person 1682:4 1687:6 1698:11
 1701:20 1702:2,5 1718:13,17
 1719:14 1721:25 1725:7 1728:6
 1729:2
personal 1655:25 1725:15
perverted 1725:23
pets 1721:21
petty 1672:13
phone 1657:11 1680:11,15,17,18
 1681:5,14,19 1685:20 1686:15
 1687:4,10,10 1689:11 1691:22
 1691:22,25 1692:1,1
phones 1727:13
photograph 1716:1
photographs 1654:22 1660:14
 1662:19,24 1666:20,23 1669:6,7
 1669:15,18,19,21,24
picture 1727:22
pictures 1660:12 1661:23 1662:1,3
 1727:23
piece 1670:13
piecemeal 1666:2
piercings 1686:5
pious 1728:10
piss 1687:14,19
place 1681:1,1,3 1684:2,9 1685:2
 1719:6
placed 1728:24
placing 1698:10
**Plaintiff** 1644:5
plan 1722:3
play 1664:3
played 1653:2 1663:14,23 1686:12
 1688:22 1692:2
plea 1665:16
plead 1725:10
pleading 1647:9
pleadings 1647:7
please 1653:20,20 1679:6,7,9,10
 1698:17 1713:2 1726:12
pled 1672:12
point 1649:16,16 1651:21 1655:3
 1668:9 1670:8 1671:17 1674:9
 1687:1,2 1701:9 1704:3 1706:2,9
 1706:18 1707:10 1710:7,16
 1713:17 1714:17 1715:12
pointed 1723:15
points 1647:20 1713:18,24,25
 1715:18 1716:10,11,15
police 1669:19,20
position 1658:1 1715:6,9
positive 1722:5
possess 1729:6
possessing 1729:5
possession 1690:15 1714:15
 1715:18 1716:13 1719:24
 1729:16
posts 1706:1
praying 1681:10
predates 1648:21,21 1649:2
predicate 1658:7 1659:12,20
 1660:2,3 1669:14
preparation 1665:24 1650:2
prepared 1650:9,14 1670:18
preponderance 1694:16 1701:1
 1703:8,17 1704:22 1705:1
 1706:22 1708:8,11 1711:9,11
present 1646:4 1650:9,14 1651:9
 1659:13 1661:1 1664:4 1670:13
 1675:9 1678:12 1690:9,15,18
 1700:15 1702:10 1713:8 1716:25
presented 1651:24 1652:25
 1664:25 1665:11 1667:3 1682:17
 1683:19 1700:11 1703:4 1705:8
 1705:16 1707:4
presentencing 1648:3
press 1666:3

---

pressed 1697:24
pressing 1720:15
pretense 1710:11
pretenses 1710:10
prevent 1651:13
preyed 1721:22 1727:7
pre-sentence 1646:17,20 1647:1
1647:10,11,22 1648:9 1695:4,14
1714:9 1726:17 1729:18
print 1693:10
printout 1714:23
prior 1650:16 1668:21,23 1672:25
1674:8,8 1683:9 1708:2 1716:7,8
1716:9 1726:10
prison 1695:22 1696:1,10,23
1697:14 1698:22 1699:2 1723:4
1725:18 1726:3
prisoner 1722:12
prisoners 1722:12,13
Prisons 1728:16 1729:1
privileges 1721:18
probably 1727:18
probation 1647:20 1694:6 1695:17
1703:11 1711:19 1712:12 1713:2
1713:11,16 1714:20 1729:2
problem 1686:8 1699:8 1706:18
problems 1659:14
proceeding 1655:7
proceedings 1644:11 1652:4
1731:6
proffer 1650:13
profitable 1685:8
prohibited 1704:18,24 1706:11,14
1729:5
promote 1705:17,24
promoting 1706:11 1725:15
prong 1702:2,4
pronounced 1730:1
proof 1650:9
properly 1694:7
property 1651:3 1664:18 1665:17
1665:23 1727:12,19,21
prosecute 1664:15,20,23
prosecuted 1650:25 1652:19
prosecution 1726:9
prosecutor 1674:23
prostitute 1673:6 1684:5,8 1689:4
1689:13 1709:24 1710:13
1720:19
prostituted 1668:19 1673:2
prostituting 1685:13 1690:2,7
1726:10
prostitution 1650:24 1668:21
1672:25 1690:18 1719:25
prove 1655:9 1701:4
proven 1702:4 1726:4
provide 1658:1 1670:14 1678:18
1710:11 1722:8
provided 1658:25 1668:3 1669:21
1678:8
proving 1647:23 1666:13 1716:2
provision 1702:6
PSI 1713:25 1716:14
PSR 1703:12 1714:3 1723:20
public 1683:13 1715:14 1725:8
publish 1663:6,12,16,21 1669:12
1676:14
publishing 1663:10 1678:19
Publix 1705:14
pull 1665:14
pulled 1654:15
punched 1720:3
punish 1695:21
punishes 1706:13
punishing 1706:15
purported 1664:25
purposes 1649:6 1662:16 1663:3
1663:17 1713:21 1730:2,12
pursuant 1646:16 1695:25 1702:1
1728:19
put 1656:3 1666:11 1681:19 1682:5
1682:6 1687:13,19 1688:1
1699:3 1717:11,16 1728:7
putting 1687:23

## Q

qualify 1648:7
question 1655:13,15 1657:23,24
1688:14 1690:4

## R

questions 1670:24 1677:10
1682:13,25 1684:11 1720:22
quietly 1692:6
Quite 1648:13

## R

R 1731:4
railroad 1725:18
raise 1679:7 1695:10
raised 1698:24 1699:2
ran 1654:12
range 1713:10,12,12
rape 1695:20
rapes 1695:21
Raton 1709:23
reached 1666:3
read 1677:15,19,21 1716:24 1717:1
1717:21 1721:1
reading 1661:4
ready 1718:12
real 1686:16
reason 1664:19
reasonable 1723:4
reasons 1655:25 1709:7
rebut 1707:11
rebuttal 1694:1 1703:21
recall 1655:15 1665:21 1667:1
1673:23 1693:6 1705:12
recalls 1714:8,13
receive 1656:7
received 1645:11 1646:19,25
1654:25 1656:8 1658:19,20
1662:12,13 1663:4,5 1676:6
1676:12,13,16 1678:10,15,16
1682:14 1683:3 1723:16
recess 1670:9 1674:24 1675:1,7
1713:6
recognize 1656:17 1657:7 1675:20
recommendation 1677:22
Recommendations 1716:19
record 1647:11 1663:9 1666:11,12
1667:16,21,22,22 1668:3 1675:8
1679:3,11 1693:12 1704:5
1709:1 1713:7,21 1714:12,14
1717:23 1719:25 1726:5
recorded 1659:1 1660:10 1661:21
recording 1657:18,19 1674:5
recordings 1652:12,21,23 1653:2,9
1653:11
records 1667:6,10,20,25 1668:3
1677:3 1678:9 1714:9 1715:14
recover 1654:17,20,22
recovered 1652:16 1669:20,25
recovering 1668:7
recruit 1685:1
recruited 1689:14
red 1687:19
redirect 1677:11 1693:3
refer 1699:24 1709:13 1727:16
reference 1650:21 1655:1 1662:21
1664:5,14 1665:12 1678:8
1695:11,13,17 1696:12,18
1697:5,9,11,20 1699:12,18
1707:18,19,20,23 1708:5,9
1709:2 1711:20,22
references 1700:3 1714:17
1723:21
referencing 1697:4,22
referred 1697:18
referring 1647:7 1675:22 1683:6
1704:7
refers 1715:17
reflect 1657:14,24 1658:5 1665:16
1669:9 1675:8 1713:7 1723:3
reflects 1714:21
refresh 1665:19
refusing 1664:15
regard 1647:10 1648:7,20 1669:15
1671:3 1673:11 1675:23 1679:16
1679:18 1682:13 1683:15
1696:14 1704:4 1705:7 1707:22
1707:24 1708:20
regarding 1653:14 1654:16 1694:3
1695:10 1698:25 1706:24 1728:3
regardless 1712:8,9 1723:2,4
registration 1729:17
relapsed 1668:8
relate 1677:25
related 1648:19

relating 1647:8,24 1648:1
relation 1662:3
relationship 1679:22,23 1682:11
1683:21 1684:16
relationships 1720:8,10
release 1666:3 1713:11 1728:23,24
1729:1,4,8,23
released 1652:1,3,3 1718:12
1729:3
relegated 1648:1
relevance 1669:14
relevant 1648:7,11 1649:1,3,4,6
1650:10,10 1651:17 1664:11
1694:7,11,14,19 1702:10
1715:22 1716:3
reliable 1655:7
relied 1649:21 1662:10
religion 1686:4
religious 1682:4 1686:5
relive 1717:17 1719:9
rely 1674:9 1708:2
relying 1657:19
remain 1679:7 1702:11
remained 1676:22 1677:1
remaining 1664:2
Rembert 1644:7 1651:4 1652:14
1667:14 1691:4 1700:22 1707:5
1707:10 1710:15
Rembert's 1688:16
remember 1655:14 1679:18
1680:19 1686:6 1693:7,8
1698:19
remind 1651:24 1675:11 1692:11
reminded 1720:5
removal 1729:10
remove 1647:25
renting 1680:2
repeat 1655:13
replay 1719:10
report 1646:18,20 1647:1,10,12,22
1648:9 1669:19 1695:4,14
1714:9 1726:17 1729:2,18
reported 1644:20 1664:21
Reporter 1644:20 1731:9
reports 1654:8,15 1661:20 1662:7
represent 1730:14
represented 1646:4,5 1675:9
1713:8
requesting 1717:12
require 1697:13
required 1696:24
requirement 1729:12
reserved 1670:7
respect 1664:9 1673:8 1697:16
1706:5 1717:22 1716:15
respectable 1687:6
respective 1646:19
respond 1696:17
response 1712:12
rest 1720:13 1723:8 1728:12
restitution 1713:13 1717:12
1728:21 1730:21
restriction 1729:13,13,15
result 1711:22 1727:1
results 1711:21
retracted 1647:23
revenge 1721:15
review 1662:6 1669:7 1715:10
reviewed 1646:25 1669:8 1717:25
Ricardo 1683:5 1689:20
Rick 1685:3
ride 1684:3
right 1653:13,23 1660:8 1661:12
1664:8 1666:15 1671:18 1672:22
1673:14,19 1674:15 1675:8
1676:15,19 1677:20 1679:5,7,13
1683:4 1687:17 1688:20,21
1689:14 1694:24 1699:17,22,23
1700:17 1703:1,7,22 1705:21
1706:17 1708:6 1713:7,23 1714:4
1714:19,25 1715:10,16 1716:17
1719:3 1725:19,22 1730:3
rights 1725:25,25 1726:1 1727:2,3
1727:4,4
robber 1709:18
role 1647:15 1700:19,21 1701:3
1707:1,3,6
rolled 1720:17
Romash 1645:3 1653:18,19,22
1654:2 1656:16 1658:4,23

1659:22 1662:15 1664:14
1675:10 1677:13
room 1680:1 1690:9 1718:21
root 1720:2
RPR 1731:8
RPR-CM 1644:20
rude 1670:10
ruined 1720:9
ruling 1695:1
rulings 1711:19
run 1728:25
runaways 1727:8
R-O-M-A-S-H 1653:22

## S

s 1657:2,5,10 1658:12 1665:14
1667:2,4 1672:9 1688:6,17
1693:6 1717:23 1731:7
Sabrina 1667:13
sad 1727:6,6
safe 1717:11
safety 1656:4
sat 1679:16
satisfied 1699:20
saw 1677:3 1715:25
saying 1667:7 1692:20 1701:23
1703:12,14
says 1660:15 1664:22 1676:8
1693:9,13 1696:21 1710:1
1714:13 1717:3
scared 1728:4
scheme 1694:19
school 1680:9,10
scope 1688:8 1689:15 1690:20
screaming 1688:17
search 1664:18 1729:16
seated 1653:20 1679:9
second 1646:8 1649:23 1671:20
1702:4 1705:22
section 1646:12,15 1647:11 1696:4
1701:8 1703:8,18 1704:1
1706:10,19 1708:9,12 1709:15
1711:3,13 1726:19
see 1674:22 1681:12,17 1682:18
1686:17 1691:19,20 1692:1,19
1693:11,13 1698:8 1718:7,24
1718:25 1719:3,5,6 1721:20
1728:11
seeing 1720:21
seek 1712:19
seeking 1712:3,6
seen 1669:9 1684:24 1685:2,5
1714:25 1719:14
Seitz 1697:20
self 1729:12
selling 1684:3
Seltzer 1730:17
Seltzer's 1730:18
sense 1647:19 1718:14
sent 1656:10 1681:18
sentence 1646:18 1677:23 1697:10
1702:15 1712:9,20 1717:3,13
1722:17 1723:1,4,6,12 1724:18
1724:21,22 1725:2 1726:12
1728:16 1729:22,24 1730:1,4
sentences 1721:17 1724:17,20
sentencing 1644:11 1647:8 1648:5
1648:10 1649:19 1655:7 1662:16
1663:3,17 1670:17 1678:9
1685:23 1686:2 1694:6,12,15
1695:15 1696:25 1697:3 1705:5
1705:6 1717:24 1722:16 1723:5
1723:14,19 1724:7,12 1726:3
separate 1647:7 1716:14
served 1721:16 1728:17
set 1670:8 1686:18 1726:19
setting 1687:3
sex 1646:10,13 1650:8 1654:9
1665:11 1669:4 1681:2 1684:19
1684:21 1687:10 1694:18,21
1697:4,8,12 1699:14,16 1701:21
1701:22 1702:3,5,13 1703:6
1705:17,25 1706:11,16,23
1715:25 1718:7 1722:9 1724:21
1729:15,17
sexual 1669:3 1704:18,24 1706:12
1706:14 1725:14 1729:16
shadows 1719:8
share 1722:7

shed 1715:24
sheer 1652:7
sheet 1714:23
sheets 1715:11
Shelly 1689:21
Sherry 1685:16
shop 1681:1 1684:20,20
Shores 1669:20,24
short 1675:7 1713:6
show 1650:14 1652:13 1654:22
    1665:19 1674:21 1680:2 1681:7
    1702:17 1704:23 1719:25
    1722:22 1727:9,10,21
showed 1686:19 1694:9 1702:23
    1715:5
showing 1675:18 1682:23 1693:12
shown 1721:13
shows 1699:6
shut 1718:21
side 1670:18 1692:3
sign 1691:20 1693:7,10,13,16,16
similar 1692:22 1708:3 1724:9
similarities 1664:24
simply 1648:13
simultaneous 1657:14,25
sir 1646:24 1647:6 1649:9 1660:20
    1679:6 1715:1,4 1725:3
sit 1655:1 1691:25
sitting 1680:15
situation 1664:20 1666:5
six 1707:14
skip 1701:13
slapping 1720:19
sleep 1719:8
slept 1705:13
sober 1722:3
society 1727:7
sold 1718:22
solicit 1705:24
solicitation 1673:7
somebody 1682:8 1687:25
    1690:24 1701:21
somebody's 1725:9
son 1689:23
soon 1675:2
sorry 1654:14 1663:18,24 1686:15
    1692:18 1703:12,14,14 1725:12
sort 1714:11
soul 1720:10
SOUTHERN 1644:1
speak 1656:6 1658:10 1715:8
    1721:6
speaking 1658:5 1661:6
special 1675:10 1695:22 1696:2,5
    1696:21 1698:5,21 1699:1,1
    1713:14 1729:9,20,23
specific 1647:17 1650:20 1700:2
    1701:25 1711:21 1726:2
specifically 1698:20
spell 1679:10
spoke 1661:8,11 1723:8
spoken 1656:24 1657:2
spot 1675:5
stand 1675:10 1679:6 1694:5,13
    1721:4 1725:7
standard 1729:8
standing 1679:7
start 1680:24
started 1674:5 1680:6 1681:6
    1684:16 1686:25 1689:23
    1727:11
starting 1704:3
starts 1695:7 1706:12
state 1664:19 1665:4,8 1675:24
    1683:13
stated 1656:2 1722:15
statement 1654:20 1659:1,2,12,15
    1659:17,22 1660:10 1661:1,12
    1661:14,21 1663:16,21,23
    1668:20 1674:7 1676:4 1683:15
    1716:24 1717:21,23 1723:9
statements 1726:14,15 1728:9
States 1644:1,4,12,20 1646:2,6,12
    1646:15 1695:23 1696:2,3,6,11
    1696:22 1697:1 1698:6,22
    1699:1 1722:16 1724:1 1726:19
    1729:20 1731:9
stating 1667:25 1668:25
statute 1698:14 1699:9
statutes 1695:21

statutory 1712:22 1723:6
stay 1722:3 1730:22,24
step 1679:17 1693:23
stereo 1663:13
Stipes 1644:20 1675:1 1713:4
    1731:7,8
stipulate 1700:14 1706:3
stipulates 1708:15
stole 1680:15
stolen 1665:17,23
stood 1722:19
stop 1717:14
stopping 1664:7
store 1681:14
stories 1722:10
story 1721:10 1722:7
strangulation 1654:14
Street 1644:15
streets 1652:3
strength 1721:7 1726:23
strenuously 1710:6
strict 1721:18
strike 1676:21 1677:6 1700:23
    1712:15,17
strip 1684:16
stronger 1721:25
strongly 1718:19
stuff 1683:24 1684:3
submit 1694:11
submits 1722:16
submitted 1676:16 1677:16
    1716:24
subsection 1709:15
substance 1729:7
suffer 1718:20,20,20 1719:23
suffering 1718:18,23 1721:2
sufficient 1704:23 1707:2
Suite 1644:15,17
sum 1707:19
superseding 1646:9 1668:9,12
    1671:17,20
supervised 1713:11 1728:24
    1729:4,8,23
supervision 1729:13
supervisor 1701:7 1711:13
supervisory 1704:14
supplement 1661:8
supplemental 1724:16
supplemented 1648:5 1723:15
support 1648:25 1650:2 1698:13
    1699:4 1704:21 1717:2
supported 1715:14
supporting 1699:8 1711:9
supposed 1680:16 1686:16 1688:4
sure 1648:15 1651:15 1675:16
    1676:15 1714:11 1721:8 1725:5
    1727:25 1730:10
surprise 1689:11,12
Surrendering 1729:10
surrounded 1690:1,6
surrounding 1648:13,22,24
    1649:13
survivor 1718:8 1721:3
Susan 1645:3
Susan 1653:18,19,22 1681:20,20
sustain 1657:23
sustained 1659:19 1669:16 1690:4
    1690:20 1700:7,17 1704:15
    1706:5 1707:12 1708:17,22
    1709:10
swallows 1695:16
sworn 1653:19 1654:20 1659:2,17
    1660:10 1663:16,21,23 1679:8
S.D 1648:2 1649:10,11,13 1650:2,6
    1650:7,15 1651:11 1653:14
    1654:8,16,18 1655:1,9,17 1656:6
    1656:24 1657:2,5,10,10 1658:5,6
    1658:12,12 1659:1,8 1660:7
    1662:19,25 1663:22 1664:14,15
    1664:17 1665:12,14 1673:11,11
    1674:3,4,10,13 1675:23 1676:25
    1677:7 1678:10 1679:18,19,22
    1679:23,23 1682:13 1683:4,15
    1684:7,7,8,16 1685:9,18 1690:25
    1691:10,13 1692:9,25 1693:9
    1694:7,18 1707:17 1708:4,20
    1709:7 1727:5 1728:3,3

T 1731:4,4
table 1645:1 1680:6
tackle 1647:19 1696:20
tailored 1689:18
take 1660:12 1670:8 1675:1,2
    1679:17 1680:17 1686:11
    1687:12 1688:3,4 1692:15
    1698:17 1709:19 1713:3 1719:22
    1722:4
taken 1659:22,24,25 1660:14
    1661:23 1662:1,3 1666:20
    1669:21,24 1675:7 1690:9
    1713:6 1719:17,18,19
takes 1710:10 1721:12
talk 1651:5 1655:20 1658:22
    1666:25 1684:25 1722:10
talking 1678:23 1717:5
talks 1727:2
tangerine 1724:14
tape 1657:18 1658:25 1660:10,15
    1661:5,5,6,7,21 1662:10 1664:1
    1664:3,4,5,7
taped 1654:20 1663:16
tattoo 1686:10,13,14,20,22
    1687:13,19 1688:6,16,20
tattooed 1689:2,8
tattoos 1682:3,6 1686:5,8
teaching 1720:18
teeth 1720:2
telephone 1656:24
tell 1654:11 1655:22 1656:8
    1662:24 1667:12 1668:5 1669:3
    1681:8,17 1687:15,25 1720:8,8
teller 1709:19
telling 1681:10 1688:7 1721:10
    1726:24
temper 1724:4
ten 1675:5
term 1709:14 1728:24
terms 1647:18 1650:10 1655:4
    1728:17
terrified 1717:10
territorial 1695:22 1696:3,5,10,22
    1697:14 1698:6,21
terror 1728:4
testified 1649:22 1658:9 1660:23
    1673:23 1705:12 1715:23,25
    1727:15
testify 1651:12 1667:21 1670:15
    1679:1,2,4 1681:21,22,22 1686:3
    1725:19,21,22 1726:8
testifying 1678:22 1679:4
testimony 1649:19,25 1650:13
    1658:2 1661:4,9 1662:6 1673:21
    1675:23 1705:12 1710:1
thank 1653:24 1655:12 1670:21
    1674:19 1675:13 1677:13
    1693:23 1715:4 1718:2,4
    1721:25 1722:14 1731:2
That's 1674:14
theft 1672:13
theme 1695:12 1696:19
therapy 1722:4
thing 1686:25 1730:9
things 1656:1 1685:25 1718:15
    1719:21 1722:5
think 1647:18,22,25 1649:18,21
    1650:19 1652:9 1653:11 1658:1
    1674:24 1684:3 1685:16 1690:23
    1690:24 1692:10 1694:6,7,9,25
    1695:11 1698:9,12,13
    1699:13,17 1700:4,12,20 1702:9
    1702:25 1703:19 1704:11
    1705:14,23,25 1706:18 1708:3
    1709:21 1710:8 1715:7 1717:9
    1720:20 1721:13 1724:4,24
    1728:13
thinking 1721:2
thinks 1720:14,18
thought 1687:18 1710:24 1718:9
    1718:11,12 1719:19 1721:9
    1724:13
thousand 1687:11 1727:22
threat 1688:25
threaten 1651:14 1688:19,22
threatened 1710:18
threatening 1688:17 1698:10
threats 1646:11,14
three 1647:7 1713:14 1715:18
    1716:15

three-count 1646:8
throat 1719:11 1720:16
thumbs 1720:16
tight 1719:11
time 1648:17 1650:17,23 1651:6,17
    1652:24 1653:17 1656:2 1657:12
    1657:22 1658:15 1659:9,18,19
    1661:14,14,15 1663:2,12,15
    1670:24 1674:4 1676:9 1677:10
    1677:17 1678:1,7 1679:17,17
    1682:8 1683:9 1687:7 1694:10
    1701:23 1707:5,6 1710:1,12
    1711:18 1712:15,17 1713:3
    1716:23 1717:20 1718:1 1726:5
timely 1712:19
times 1723:24,25
today 1647:8 1650:9 1661:9
    1667:20 1685:23 1718:10
    1720:23 1721:4,7,19,25 1725:10
    1725:11 1726:2
today's 1646:18
told 1655:25 1667:12 1680:12,13
    1681:19 1687:8,12,17,20 1688:3
    1688:19 1692:14 1719:15 1721:6
Tompkins 1728:21
top 1685:5 1719:3 1720:25
torment 1719:7
torture 1718:25 1728:7
total 1713:9,15 1729:21,22
trafficking 1646:10,13 1654:9
    1665:11 1697:5 1718:7 1722:9
    1725:14
TRANSCRIPT 1644:11
transcription 1731:6
transported 1710:2
traumatized 1717:8,18
treated 1719:15
treating 1721:19
treatment 1721:18 1729:11,12,15
trespass 1726:13
trial 1649:21,25 1651:1,25 1652:13
    1665:1 1667:4 1673:17 1677:4
    1688:23 1694:9,11 1702:12
    1703:4 1705:9 1706:1 1709:21
    1710:8 1716:8 1719:2 1721:14
    1722:18
tried 1691:22 1718:14
triple 1706:17
true 1658:6 1685:1,10 1690:7,10,16
    1690:19 1691:5,8,9,11,12,14,17
    1692:9,12
trust 1719:18
trying 1649:14 1651:7,10 1652:16
    1681:24 1687:14 1720:1 1722:20
    1722:22
tuned 1705:10
turn 1683:18 1722:5
turned 1683:8 1705:10,11,18
    1706:2 1718:13
two 1651:5 1652:8 1661:17 1685:3
    1687:9 1701:7,19 1719:3 1720:2
    1723:14 1724:8
two-level 1700:19 1702:17,20
    1705:19 1711:14
two-story 1685:5
two-year 1652:2
type 1699:13 1725:6,7
typed 1724:9
types 1724:9

U

unable 1726:21 1730:6
unanswered 1725:21
uncertain 1674:4
unchallenged 1725:24
uncharged 1647:12,19,23 1664:9
    1666:13 1694:4
uncontested 1701:24
underlying 1698:9,13 1699:8,8
    1701:4,5 1704:20 1706:7 1711:8
underneath 1693:10
understand 1659:15 1670:12
    1704:4
understanding 1661:18,19
unduly 1704:18,23 1705:2
unfaithful 1676:6
United 1644:1,4,12,20 1646:2,5,12
    1646:14 1695:23 1696:2,3,6,11
    1696:22,25 1698:6,22 1699:1

1722:16 1724:1 1726:19 1729:20
1731:9
**untimely** 1712:16
**upbringing** 1724:6
**upheld** 1697:10
**upset** 1681:12 1682:7 1686:16,20
1686:20,21 1687:2,9,20 1691:10
**upstairs** 1685:5
**use** 1694:4,17 1701:20 1702:19
1705:24 1709:24
**utterance** 1659:16
**U.S** 1697:17
**U.S.C** 1695:20 1696:4,11 1698:7
1701:19 1707:25 1708:12 1709:5
1724:10 1728:19

**V**

**v** 1697:17
**vague** 1674:5
**Val** 1730:18
**various** 1647:17 1705:14
**vault** 1709:19
**verdict** 1646:16
**Vermont** 1721:10
**versus** 1646:2 1697:1
**Viamontes** 1644:14 1645:4,8
1646:6,21,22 1650:6 1652:11
1653:1,13,15,17,23,24 1654:1
1655:14,16 1656:13,15 1657:12
1657:13,21 1658:3,9,15,21
1659:9,21 1660:6,17 1662:14
1663:2,6,9,15,24 1664:2,10,12
1664:13 1665:7 1666:9,16
1667:24 1669:12,17 1670:2,12
1670:21 1676:11 1677:12,15,22
1678:2,14 1684:13,15 1688:15
1689:16,24 1690:5,21 1693:20
1694:2,5 1696:24 1698:16,18
1699:5,11 1700:6,14,24 1702:8,9
1703:1,19,24 1704:13 1705:21
1705:22 1707:9 1708:2,16,21
1710:6 1712:6,15,24 1716:6,7,23
1717:6 1722:15
**victim** 1648:1,2,25 1649:1,2,7,10
1649:11,20 1650:6,7,11,15
1651:11 1654:9,16,18 1665:14
1666:1,2,14 1671:3 1673:11
1674:3 1677:15 1678:10 1679:17
1695:1,9,11 1700:2,10 1704:6,8
1707:17 1708:20,25 1709:1,7,16
1710:12 1711:20,23 1712:13
1716:24 1717:6,20,23 1718:6,7
1723:9 1726:15
**victimized** 1650:7,18 1651:18
**victims** 1647:24 1648:20 1654:6
1695:5,13 1697:12 1705:24
1727:11 1728:19
**violate** 1722:24
**violates** 1725:25
**violation** 1646:11,14
**violence** 1649:23 1654:13,14
1664:20 1665:9 1673:24 1697:8
1699:15 1729:11
**vivid** 1719:9
**voice** 1659:4 1728:5
**voices** 1657:7,9 1658:6,12 1721:7
**voir** 1660:1,4,19,21
**VOLUME** 1644:10
**voluntarily** 1668:19 1709:22
**vs** 1644:6
**vulnerable** 1712:13 1721:9 1727:7

**W**

**wait** 1691:21,21,22
**waiting** 1670:10 1674:25 1691:19
1691:21,23
**wake** 1719:11 1722:1
**walk** 1722:23
**walking** 1684:23
**wall** 1667:17
**Walsh** 1729:16
**want** 1648:15 1651:24 1655:20,25
1656:3 1666:11 1670:16 1677:16
1679:3,6 1681:25 1683:18
1686:13,14 1687:18,19 1688:19
1696:15 1706:9,17 1717:3,17
1716:25,25 1717:13 1718:11
1722:5,7 1724:13 1730:19,22
**wanted** 1664:4 1666:5 1676:1

1680:12 1682:1 1684:25 1686:22
1688:6,16 1717:1 1718:14
1724:14
**wanting** 1664:20
**wants** 1664:3 1670:15 1679:4
1681:22
**washed** 1727:14
**washing** 1727:18
**wasn't** 1652:2,19 1659:13,17
1680:17,22,22 1686:21 1691:18
1692:5 1698:7 1701:23 1702:4
1707:4 1719:14,22
**water** 1722:2
**waved** 1684:24
**way** 1648:25 1649:5 1651:14
1662:25 1669:9 1692:19 1702:10
1710:21 1719:4,5 1722:3
**ways** 1701:19
**weak** 1662:13 1721:9
**week** 1648:6 1681:13 1723:17
**welcome** 1675:14 1718:3
**went** 1679:24 1680:5,5,7,9,9,10,10
1680:11,14,16,16,19,20 1681:5,6
1681:13,13 1685:1 1687:12
1691:24 1709:22,22 1726:25
**weren't** 1661:1,11 1662:1 1686:12
1686:20
**whispering** 1663:18 1670:15
**willingly** 1710:25
**window** 1684:23 1685:2
**wish** 1653:14 1664:23,23 1681:17
1718:17 1725:3 1730:13
**wishes** 1670:19
**withdraw** 1730:16,20
**withheld** 1714:22 1726:9
**witness** 1653:19,22 1655:13
1658:14 1665:4 1667:21 1675:15
1679:6,12 1681:25 1682:1,20
1686:25 1688:14 1689:19 1718:2
1718:4 1726:7
**witnessed** 1685:13
**woman** 1686:10 1690:1 1692:20
**women** 1651:8 1665:6 1667:13
1681:2 1686:8 1690:6 1721:19
1721:20 1722:8,12,24 1725:14
1727:20,23 1728:7,12
**won** 1720:24
**wonder** 1720:14,18
**words** 1723:23 1727:22
**work** 1679:25 1680:4,8,23 1685:9
1685:14
**working** 1671:25 1684:9 1727:25
**world** 1722:25 1728:9
**worth** 1722:22
**wouldn't** 1718:19
**write** 1693:15
**writing** 1651:4,12 1681:6,8
1693:15
**written** 1651:2 1694:5 1723:9
**wrong** 1649:20
**wrote** 1675:23 1677:7 1681:15
1685:18,20 1692:8,13,13,18,19
1692:22,24,25 1693:3,9,17
1723:18

**X**

**X** 1693:6

**Y**

**yeah** 1683:7
**year** 1646:7 1672:13 1718:22
**years** 1651:19 1652:8 1681:3,4
1684:9 1688:4 1702:12 1706:2
1713:12 1718:6 1724:8,17,19
**yelled** 1722:19
**yelling** 1666:11
**yielding** 1708:3
**young** 1690:1,6 1710:13 1717:15
1722:7,8 1727:20,23
**youth** 1729:14
**you'd** 1676:18

**$**

**$100** 1713:13 1729:20
**$25,000** 1713:12
**$250,000** 1713:13
**$300** 1687:13 1713:15 1729:21,23

**1**

**1** 1644:7 1645:13,14 1646:8,10,17
1656:16 1657:4 1658:16,18,20
1663:13 1674:21 1675:19 1676:9
1676:12,13 1711:3 1717:19
1728:17,25 1729:21
**1A** 1709:15
**1B1.1** 1709:15 1711:3
**1B1.3** 1648:8
**1.1B** 1694:15
**10** 1688:4 1695:7 1724:8,17
1715:17 1716:13
**11** 1662:21,25 1664:21 1676:25
1691:13 1695:7,9 1705:11,11
1714:7 1731:7
**11th** 1650:16 1654:23
**11:30** 1674:22 1728:22
**12** 1644:10 1701:14 1715:20
**12-60312-CR** 1646:3
**12-60312-CR-COHN** 1644:3
**12781** 1644:17
**13** 1645:14,15
**1312** 1697:1
**14** 1730:5
**148** 1724:19,20
**15** 1647:12 1724:19
**1591** 1701:19 1724:9,10,17
**1591(a)(1)** 1646:15
**1594(c)** 1646:12
**16** 1645:16 1647:12,13 1714:5
**1654** 1645:3,4
**1658** 1645:13
**1662** 1645:15
**1663** 1645:17
**1670** 1645:18
**1671** 1645:5
**1676** 1645:14
**1678** 1645:16
**1679** 1645:6,7
**1684** 1645:8
**17** 1647:13 1701:23 1702:12
1703:4,5
**18** 1646:12,14 1695:20 1696:4,11
1698:7 1701:19,21 1702:5
1705:10,10,11,18 1706:2
1707:25 1708:12 1709:5 1714:2
1724:9,10 1726:19 1728:19
**180** 1724:19
**19** 1705:11

**2**

**2** 1645:15,16 1646:8,13,17 1658:22
1658:24,25 1659:5,10 1660:18
1662:11,13 1663:13,17,21
1678:11,15,16 1682:17,24
1716:2 1728:17,25 1729:21
**2A** 1700:1
**2A1.3(1)** 1695:16
**2A3.1** 1695:13 1696:19 1697:6
1699:4,24 1708:9 1709:2,3,14
1711:20
**2A3.1(b)(1)** 1708:13
**2A3.1(b)(5)** 1700:9 1709:14
**2A3.1(3)(b)** 1700:3
**2G1.1** 1695:16 1696:14,19 1702:7
1703:8 1704:1
**2G1.1(c)(1)** 1699:17
**2G1.3** 1702:7 1703:12,17 1704:2
1706:10
**2G1.3(a)(1)** 1703:15
**2G1.3(b)(2)(B)** 1705:2
**20** 1645:13 1718:7
**2003-CT-031703A** 1715:12
**2006** 1665:17
**2007** 1690:7
**2008** 1649:14,15 1650:7,11,16
1652:1 1653:12 1654:14,23
1659:25 1660:24 1662:21,25
1664:21 1665:12 1673:12,24
1674:6 1676:23,25 1677:1
1691:13 1705:11
**2009** 1649:23 1653:11 1674:6
**2010** 1652:2,5 1653:11 1671:4
1676:23 1677:1
**2011** 1648:15,18,21 1649:3
1654:14 1666:20 1667:4 1669:1
1669:25 1671:5,7,9
**2012** 1648:22 1649:2 1651:6,6,7
**2013** 1644:7 1717:19 1731:7

**21** 1718:6
**2241** 1695:20 1696:9 1698:3,10
1699:18,19 1708:1 1709:5
**2241(a)** 1707:21 1708:4,12
**2242** 1695:20 1696:9 1698:3,10
1699:19,19
**268** 1647:9
**29** 1647:13
**29th** 1646:7
**299** 1644:21

**3**

**3** 1645:17 1646:8,13,17 1647:12
1662:16,18,19 1663:3,4,5,10
1728:17,25 1729:21
**3B1.1(c)** 1701:8 1711:13
**30** 1708:10
**303** 1644:17
**32** 1701:10
**33027-2908** 1644:18
**33132** 1644:15
**33301** 1644:22
**34** 1703:9 1708:23
**3553(a)** 1726:19
**3634(d)(5)** 1728:19
**38** 1707:14
**39** 1695:11

**4**

**4** 1645:18 1669:6,13,18 1670:3,6
**4th** 1644:15
**40** 1700:2 1711:17
**41** 1700:8,17
**43** 1700:18 1713:9
**44** 1724:10
**46** 1702:25 1704:7
**477** 1697:1

**5**

**5** 1645:17
**561** 1685:20
**57** 1724:10
**58** 1701:14 1704:6
**59** 1704:11,14

**6**

**6** 1645:18 1713:25
**60** 1703:20,21 1704:17 1706:13
**600** 1644:15
**61** 1705:4,7 1706:5
**62** 1706:8,14,20
**64** 1707:1,13
**67** 1707:17,22 1708:7,8
**68** 1707:19,22,24 1708:7,10
**69** 1708:14,17

**7**

**7** 1696:4,11 1698:7
**71** 1708:18,22
**72** 1729:1
**74** 1709:2
**75** 1709:3
**76** 1709:8,10
**77** 1709:11 1711:5
**79** 1711:7

**8**

**8** 1663:11

**9**

**9th** 1728:22 1730:22
**911** 1654:17 1656:20,21 1657:4,14
1657:21,24 1658:4 1659:15
1660:7 1662:21 1692:2 1728:2
**954-769-5496** 1644:22
**98** 1714:2,17,18 1715:13
**99** 1644:15